**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE") Products
Liability Litigation

**MDL No. 1358**
**Master File C.A. No.**
**1:00-1898 (SAS)**

**This document relates to the following case**:
*Commonwealth of Pennsylvania v.*
*Exxon Mobil Corp. et al.*
Case No. 1:14-cv-06228

**MEMORANDUM IN SUPPORT OF DEFENDANT LUKOIL AMERICAS
CORPORATION'S MOTION TO DISMISS FOR
<u>LACK OF PERSONAL JURISDICTION</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF THE CASE ................................................................................... 1

        A.     LAC and GPMI .......................................................................... 1

        B.     The Lawsuit ................................................................................ 3

ARGUMENT ............................................................................................................ 4

    I.     This Court May Not Exercise Personal Jurisdiction Over LAC. ............................. 4

        A.     Pennsylvania Must Show That the Exercise of Personal
                 Jurisdiction Would Have Been Proper in a Pennsylvania Court. ................. 4

        B.     Pennsylvania Has Not Demonstrated That LAC Has "Minimum
                 Contacts" with the Commonwealth. .......................................................... 6

        C.     LAC May Not Be Haled into Court Based on the Alleged Conduct
                 of Former Defendant GPMI. ...................................................................... 11

    II.    LAC Adopts Joint Defense Group 12(b)(6) Motions to Dismiss ......................... 14

CONCLUSION ........................................................................................................ 14

CERTIFICATE OF SERVICE ................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*,
    480 U.S. 102 (1987)........................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................5

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999)...........................................................................4

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...........................................................................6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................7

*Burnet v. Clark*,
    287 U.S. 410 (1932).......................................................................................12

*Cannon Manufacturing Co. v. Cudahy Packing Co.*,
    267 U.S. 333 (1925).......................................................................................12

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)...........................................................................7

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009).............................................................................9

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)..................................................................................7, 8

*Doe v. Delaware State Police*,
    939 F. Supp. 2d 313 (S.D.N.Y. 2013)...........................................................9

*Doron Precision Sys. V. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)...........................................................3

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ...................................................................10

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*,
    255 F. App'x 775 (5th Cir. 2007) .................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)...........................................................................6, 7, 8

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...................................................................................7

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*
    818 F.2d 145 (2d Cir. 1987)........................................................................5

*In re Auto. Refinishing Paint Antitrust Litig.*,
    358 F.3d 288 (3d Cir. 2004)........................................................................5

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*,
    1:00-1898, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005)....................................6, 11

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
    959 F. Supp. 2d 476 (S.D.N.Y. 2013)..................................................6, 12, 13

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
    230 F. Supp. 2d 403 (S.D.N.Y. 2002)..................................................................13

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
    342 F. Supp. 2d 207 (S.D.N.Y. 2004)..........................................................12, 13

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
    343 F. Supp. 2d 208 (S.D.N.Y. 2004)..................................................................13

*In re Terrorist Attacks on September 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)........................................................................8

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................6, 7

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011).....................................................................8, 10, 11

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)........................................................................5

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)..................................................................9

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)................................................................................12

*Kehm Oil Co. v. Texaco, Inc.*,
    537 F.3d 290 (3d Cir. 2008)........................................................................6

*King Cnty., Wash. v. IKB Deutsche Industriebank, AG*,
    769 F. Supp. 2d 309 (S.D.N.Y. 2011)..................................................................13

*Kubik v. Letteri*,
  532 Pa. 10 (1992)..................................................................................................6

*Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*,
  26 F. Supp. 2d 593 (S.D.N.Y. 1998)....................................................................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)........................................................................4, 5, 13

*Ltd. v. Insta-Mix, Inc.*,
  438 F.3d 465 (5th Cir. 2006) ...............................................................................11

*Malin v. XL Capital Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007)....................................................................1

*Marks v. United States*,
  430 U.S. 188 (1977).............................................................................................10

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
  960 F.2d 1217 (3d Cir. 1992)........................................................................4, 5, 6, 13

*Mesalic v. Fiberfloat Corp.*,
  897 F.2d 696 (3d Cir. 1990)..................................................................................7

*Pearce v. Labella*,
  473 F. App'x 16 (2d Cir. 2012) .............................................................................9

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)..................................................................................5

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984)...............................................................................5, 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988).............................................................................................12

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)...........................................................................................7

*Whitaker v. Fresno Telsat, Inc.*,
  87 F. Supp. 2d 227 (S.D.N.Y. 1999).....................................................................13

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).............................................................................................7, 8

STATUTES

42 Pa. Cons. Stat § 5322(b) ..............................................................................6

28 U.S.C. § 1407 ......................................................................................................3, 5

28 U.S.C. § 2072(a) ......................................................................................................5

**OTHER AUTHORITIES**

CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (4th ed.) ...............5

FED. R. CIV. P. 4(k)(1)(A) ..................................................................................................5

FED. R. CIV. P. 12(b)(2) .........................................................................................1, 4, 14

FED. R. CIV. P. 12(d) ......................................................................................................1

## STATEMENT OF THE CASE

Pennsylvania's Amended Complaint names over 50 defendants, suing each of them individually "and/or" in *fourteen* other capacities.  Compl. ¶ 108.  Included among the defendants is LUKOIL Americas Corporation ("LAC"), a holding company named "individually and as f/k/a, d/b/a and/or successor in liability to Getty Petroleum Marketing Inc." ("GPMI").  Compl. p. 5.  Pennsylvania has already voluntarily dismissed GPMI from this lawsuit.  *See* Dkt. 15.  LAC now moves to dismiss each count against LAC for want of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).

### A.    LAC and GPMI

In October 2000, LAC was incorporated under the laws of the State of Delaware.  Decl. ¶ 15(a).[1]  By January 2001, LAC had acquired 100% of the stock of GPMI, which before the acquisition had been an independent, publicly traded company.  Decl. ¶¶ 12, 15(g).[2]  Incorporated in October 1996 under the laws of the State of Maryland, GPMI was engaged in the petroleum marketing business, serving retail and wholesale customers through a distribution and marketing network in a number of Northeastern and Mid-Atlantic states.  Decl. ¶¶ 9–11.

---

[1] The "Decl." citations in this memo are to the Declaration of Vincent De Laurentis, an officer and former director of LAC.  Some of the exhibits attached to that Declaration have been excerpted to conform with this Court's Rule IV.H, but a full version of each excerpted document was included in the set of documents sent to Plaintiff's counsel during the parties' pre-motion letter exchange.

Although a 12(b)(6) motion to dismiss must generally be converted to one for summary judgment if it relies on matters outside the pleadings, *see* Fed. R. Civ. P. 12(d), this Court may consider supporting evidence when ruling on a 12(b)(2) motion, *see In re Methyl Tertiary butyl Ether (MTBE) Products Liability Litig.*, 14 CIV. 1014, 2014 WL 1778984, at *1 n.2 (S.D.N.Y. May 5, 2014) (Scheindlin, J.) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013)).

[2] Securities and Exchange Commission filings describing the transaction are available at http://www.sec.gov/cgi-bin/browse-edgar?company=lukoil+americas+&owner=exclude&action=getcompany.  *See also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 133 (D. Conn. 2007) *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (discussing judicial notice).

Unlike GPMI, LAC is and always has been a holding company.  Decl. ¶ 13.  Although it has officers and directors, it has never had a single non-officer employee, Decl. ¶ 13, and it has never tested, "designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, stored, marketed and/or otherwise supplied (directly or indirectly)" any product to anyone in any place.  Compl. ¶ 14; *see* Decl. ¶¶ 17, 20, 21.  Nor has it ever "owned or operated" an underground storage tank or "associated dispensing equipment," Compl. ¶ 21; participated in Pennsylvania's Underground Storage Tank Indemnification Fund, Compl. ¶ 22; or made any claim to or of that Fund, Compl. ¶ 31.  Decl. ¶¶ 17, 20, 22.  LAC's limited activities—holding stock and facilitating financing for its subsidiaries—are managed from its headquarters in New York, Decl. ¶ 19, and LAC has never owned or leased property or had a mailing address or a telephone listing in Pennsylvania, Decl. ¶ 18; *see also* Decl. ¶¶ 17–24 (detailing LAC's lack of operations and lack of contacts with Pennsylvania).

On February 28, 2011, LAC sold its entire interest in GPMI.  Decl. ¶ 26.  During the time LAC owned GPMI, it held GPMI as a wholly owned subsidiary.  Decl. ¶¶ 15(g), 26.  Both companies observed all corporate formalities, Decl. ¶ 27, and LAC did not make or influence GPMI's day-to-day operating decisions, Decl. ¶ 24.  Indeed, after the acquisition, several of GPMI's key decision-makers stayed with the company and continued to operate it in accordance with its historical policies and practices.  *See* Decl. ¶ 24.  In particular, LAC did not affect (or even attempt to affect) GPMI's decisions concerning when, if ever, to use MTBE, Decl. ¶ 25; GPMI's policy concerning the use of MTBE had been set before LAC acquired the company, Decl. ¶ 25.

2

### B.     The Lawsuit

In June 2014, the Commonwealth of Pennsylvania filed this suit in the Court of Common Pleas of Philadelphia County.  Dkt. 1 at 5.  The case was removed to federal court soon after, Dkt. 1, and later transferred to this multidistrict litigation under 28 U.S.C. § 1407, Dkt. 8, 11.

Pennsylvania brought the action in part "to redress injury, and the threat of injury, resulting from [alleged] contamination of the waters of the Commonwealth by methyl tertiary butyl ether ("MTBE"), a chemical additive used in gasoline that was widely distributed in Pennsylvania, and its derivative and breakdown products."  Compl. ¶ 1a.[3]  The Commonwealth's more than 120-page Amended Complaint names LAC in only three paragraphs, one of which asserts:

> Defendant Lukoil Americas Corporation is a Delaware corporation with its principal place of business at 1500 Hempstead Turnpike, East Meadow, New York 11554.  Defendant Lukoil Americas Corporation was formerly known as, did business as, and/or is the successor in liability to Defendant Getty Petroleum Marketing, Inc.  The term "Lukoil" as used in this Complaint refers to Defendants Lukoil Americas Corporation and Getty Petroleum Marketing, Inc.

Compl. ¶ 72.  The other two paragraphs simply lump LAC into two large groups of defendants.  *See* Compl. ¶ 100 ("MTBE Defendants"), ¶ 101 ("Insurance Defendants").

The Complaint also refers once to the group of Defendants dubbed "Lukoil," alleging that "[a]t all times material hereto, Defendants Cumberland Farms, El Paso, Getty, GOLP, Lukoil,

---

[3] The Complaint alleges that the Clean Air Act "requires the use of some oxygenate" in gasoline.  Compl. ¶ 141.  The Energy Policy Act of 2005 (P.L. 109-58) eliminated the "oxygen content requirement for reformulated gasoline," § 1504, effective no later than May 6, 2006, *see* § 1504(a)(2)(B).  In a press release concerning this lawsuit, Pennsylvania admitted that MTBE "was phased out as a gasoline additive in Pennsylvania in 2005."  *See* http://perma.cc/WRH7-2SMV?type=pdf at 2 (PDF of Pennsylvania Department of Environmental Protection website); *cf. Doron Precision Sys. V. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination" (internal quotation marks omitted)).

NuSTar and Vitol distributed, stored, and sold MTBE gasoline in Pennsylvania."  Compl. ¶ 106. The Complaint nowhere specifically alleges that LAC itself engaged in any particular conduct.

## ARGUMENT

Pennsylvania sued scores of defendants, all in the same Pennsylvania court.  At least one of those defendants (LAC) is not amenable to suit in that forum.  Because the Complaint does not—and cannot—assert facts that would justify the exercise of personal jurisdiction over LAC, Pennsylvania's claims against LAC must be dismissed.  *See* FED. R. CIV. P. 12(b)(2).

## I.     THIS COURT MAY NOT EXERCISE PERSONAL JURISDICTION OVER LAC.

Whether this Court may exercise personal jurisdiction over LAC depends on whether a court of general jurisdiction in Pennsylvania could have done so.  None could.  Simply put, the Complaint fails to allege the "minimum contacts" between LAC and Pennsylvania that the Due Process Clause of the Fourteenth Amendment requires.  LAC is a holding company incorporated in Delaware and headquartered in New York.  It has not purposefully availed itself of the benefits of the Pennsylvania forum, let alone done so in a way giving rise to the Commonwealth's alleged injuries.  Whether GPMI (or any other defendant) has done so is of no moment, because its contacts may not be attributed to LAC.

### A.     Pennsylvania Must Show That the Exercise of Personal Jurisdiction Would Have Been Proper in a Pennsylvania Court.

**1.**     Even on a motion to dismiss, the plaintiff must establish that the exercise of personal jurisdiction would be proper.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  To satisfy that burden, the plaintiff must at least allege facts that, taken as true, would make out a *prima facie* case of jurisdiction.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012); *Mellon Bank*, 960 F.2d at 1223.  The focus is always

4

on the facts at issue:  legal conclusions "couched as *** factual allegation[s]" are of no import.

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (citation omitted); *see also*

*Mellon Bank*, 960 F.2d at 1223; *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65

(3d Cir. 1984) (rejecting "allegation" as "no more than a conclusory statement"); *cf. Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.").

    **2.**    Whether this Court may exercise personal jurisdiction over LAC turns on whether

a Pennsylvania court could have done so.

    When, as here, a case is transferred under section 1407, the personal-jurisdiction inquiry

focuses on the power of the *transferor* court.  *See In re Agent Orange Prod. Liab. Litig*. MDL

No. 381, 818 F.2d 145, 163 (2d Cir. 1987); *see also In re Auto. Refinishing Paint Antitrust Litig.*,

358 F.3d 288, 297 n.11 (3d Cir. 2004); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND

PROCEDURE § 3866 n.42 (4th ed.).  Here, that court is the United States District Court for the

Eastern District of Pennsylvania ("EDPA").

    Federal courts, including the EDPA, may exercise personal jurisdiction over a defendant

only if authorized to do so by federal law.  *See Remick v. Manfredy*, 238 F.3d 248, 254 (3d Cir.

2001); *Licci* 673 F.3d at 60.  The only authorization relevant here is Federal Rule of Civil

Procedure 4, which extends federal jurisdiction to persons "subject to the jurisdiction of a court

of general jurisdiction in the state where the district court is located."  FED. R. CIV. P. 4(k)(1)(A);

*see also* 28 U.S.C. § 2072(a) (Rules Enabling Act).  The question then becomes whether a

Pennsylvania court of general jurisdiction could have exercised personal jurisdiction over LAC.

A Pennsylvania court could have exercised jurisdiction over LAC only if (1) authorized to do so by the Commonwealth's long-arm statute, *Kubik v. Letteri*, 532 Pa. 10, 14 (1992), and (2) permitted to do so by the federal Constitution, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850 (2011).  Because Pennsylvania's long-arm statute reaches as far as the Constitution permits, *see* 42 Pa. Cons. Stat § 5322(b); *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299–300 (3d Cir. 2008), the inquiry collapses into a single step: whether a Pennsylvania court could *constitutionally* exercise jurisdiction over LAC, *see Mellon Bank*, 960 F.2d at 1221; *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

In short, this Court may exercise personal jurisdiction over LAC only if the EDPA could have done so; the EDPA could have done so only if a Pennsylvania state court could have done so; and a Pennsylvania state court could have done so only if permitted by the United States Constitution.[4]

## B.    Pennsylvania Has Not Demonstrated That LAC Has "Minimum Contacts" with the Commonwealth.

**1.**    Due process permits Pennsylvania to hale LAC into a Commonwealth court only if LAC has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  The Second and Third Circuits apply that requirement in essentially the same way, asking at the outset whether minimum contacts

---

[4] The question remains whether this Court's interpretation of the federal Constitution is controlled by the law of the Second or Third Circuits.  *Compare In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 959 F. Supp. 2d 476, 488–89 (S.D.N.Y. 2013) (Scheindlin, J.) (applying the First Circuit's interpretation of *Asahi* to a case filed in Puerto Rico) *with In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 1:00-1898, 2005 WL 106936, at *2-4 (S.D.N.Y. Jan. 18, 2005) (Scheindlin, J.) ("Second Circuit precedent controls this Court's interpretation of federal law in this multi-district litigation.").  Fortunately, this remaining question requires no answer here, for under the law of this circuit or any other, Pennsylvania has not demonstrated that the exercise of personal jurisdiction is proper.

exist and, if they do, asking whether the exercise of jurisdiction would be "reasonable." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *accord Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990). There is no need to reach the reasonableness question here, because LAC lacks minimum contacts with Pennsylvania.

2.      Adequate "minimum contacts" come in two forms. First, a defendant's contacts with a forum may be so "systematic and continuous," *International Shoe*, 326 U.S. at 320, "as to render [the defendant] essentially at home in the forum ***." *Goodyear*, 131 S. Ct. at 2851. If so, adequate contacts exist to support the exercise of "general or all-purpose jurisdiction," *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014), and the court may "hear any and all claims against" the defendant, *Goodyear*, 131 S. Ct. at 2851.

Second, a defendant may "*purposefully* avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("purposefully"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (same); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (same). If the defendant does so, adequate contacts exist to support the exercise of "specific or case-linked jurisdiction." *Goodyear*, 131 S. Ct. at 285. Specific jurisdiction extends *only* to "litigation [that] results from alleged injuries that 'arise out of or relate to'" the activities at issue, *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); unlike general jurisdiction, specific jurisdiction does not authorize a court to "hear any and all claims against" the defendant, *Goodyear*, 131 S. Ct. at 2851.

3.      There can be no serious contention that LAC's contacts subject it to general jurisdiction in Pennsylvania. "For an individual, the paradigm forum for the exercise of general

jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54 (2011). "By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality).

In the absence of "exceptional" circumstances, a corporation is at home only in "its formal place of incorporation or principal place of business." *Daimler*, 134 S. Ct. at 761 n. 19. Even proof that a corporation "'engages in a substantial, continuous, and systematic course of business'" in a particular forum is not enough. *Daimler*, 134 S. Ct. at 761; *see also Goodyear*, 131 S. Ct. at 2851–53.

The Complaint acknowledges that LAC is a Delaware corporation headquartered in New York. Compl. ¶ 58. No allegations, well-pleaded or otherwise, even hint that LAC was somehow "at home" in Pennsylvania. *Goodyear*, 131 S. Ct. at 2854. And rightly so. *See, e.g.*, Decl. ¶ 18 ("LAC has never had any physical presence in Pennsylvania. It has neither owned nor leased any real property or office space in the Commonwealth *** and it has never had a mailing address or a telephone listing in Pennsylvania. *** [T]o the extent that LAC engages in activities ***, it does so exclusively from its principal place of business in New York."). Accordingly, the exercise of general jurisdiction by this Court would be improper.

**4.**     To establish specific personal jurisdiction, Pennsylvania must demonstrate that LAC directed its activities at the Commonwealth. *See supra* § I.B.2. The touchstone of the inquiry is *purposeful* availment; "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295; *accord In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013);

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 105 (3d Cir. 2009). Against that backdrop, the Complaint fails to make out a *prima facie* case of specific personal jurisdiction.

*First*, most of the Complaint refers to the conduct of the *groups* of defendants sued. Those general allegations cannot establish jurisdiction over LAC in particular.  *See, e.g.*, *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) ("There is nothing in the First Amended Complaint that ascribes specific conduct or statements to these individuals. Contrary to General Retail's argument, it is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations."); *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013) ("Plaintiffs['] general allegations lump both [defendants] together ***.  [W]hatever may be said about Plaintiffs' generalized claims about [the defendants] collectively, they have offered nothing by way of a specific allegation of [a particular defendant's] contacts with New York."); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) (Sotomayor, J.) ("The Complaint is completely devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played."); *cf. Pearce v. Labella*, 473 F. App'x 16, 20 (2d Cir. 2012) ("[T]he plaintiffs' broad and conclusory allegations against 'the defendants' as a group do not suffice to overcome Roefaro's individual qualified immunity.").

*Second*, the Complaint alleges conduct with no apparent connection to Pennsylvania's claims.  In particular, the Commonwealth asserts that "[e]ach of the defendants has done, or is doing, business in Pennsylvania at all times material hereto."  Compl. ¶ 102.  True or not,[5] there is simply no allegation that LAC's "doing business" (whatever that means) was conduct from

---

[5] Not.  *See* Decl. ¶¶ 17–24.

which the Complaint arose.  And, if Pennsylvania meant "doing business" as an assertion of a *legal* conclusion, the assertion is not one of fact and thus not one of import.

*Third*, the two paragraphs that name "Lukoil" and do more than lump it into a group of defendants (of 425 paragraphs total) do not suffice.  The first paragraph identifies LAC's headquarters and state of incorporation.  Compl. ¶ 72.[6]  That paragraph also concedes that "[t]he term 'Lukoil' as used in this Complaint refers to Defendants Lukoil Americas Corporation *and* [GPMI]."  Compl. ¶ 72 (emphasis added).  Accordingly, the second paragraph's allegation that "[a]t all times material hereto, *** Lukoil *** distributed, stored and sold MTBE gasoline in Pennsylvania," is *not* an assertion that *LAC* distributed, stored, or sold anything.  Compl. ¶ 106.  As the affidavit of Vincent De Laurentis makes clear, LAC did nothing of the sort.  Decl. ¶¶ 17–24.  Accordingly, Pennsylvania has failed to allege—"plausibl[y]" or otherwise—facts adequate to hale LAC into a Commonwealth court.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (explaining that well-pled facts are "plausible, non-conclusory, and non-speculative").

On a related note, the Complaint never alleges that LAC distributed, stored, or sold more than a *de minimis* amount of gasoline—let alone gasoline allegedly affecting Pennsylvania.  While the stream of commerce may sweep a defendant into an out-of-state court, the eddy of "a single isolated sale" cannot.  *J. McIntyre*, 131 S. Ct. at 2792 (Breyer, J., concurring); *see also id.* at 2788 (plurality) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); *Marks v. United States*, 430 U.S. 188, 193 (1977) (narrowest opinion has precedential force;

---

[6] Subsection C, *infra*, addresses the paragraph's assertion that LAC "was formerly known as, did business as, and/or is the successor in liability to [GPMI]."  Compl. ¶ 72.

here, Breyer's).  Because the Complaint does not identify facts establishing that LAC made, *e.g.*, "regular and extensive sales" of gasoline headed toward Pennsylvania, *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 121 (1987) (Brennan, J., concurring), the Complaint's allegations are insufficient.

*Fourth*, and finally, even if Pennsylvania had pleaded a (counterfactual) stream-of-commerce basis for jurisdiction, due process requires allegations of "additional conduct" indicating "an intent or purpose to serve the market in the forum State."  *Asahi*, 480 U.S. at 112 (plurality); *see also J. McIntyre*, 131 S. Ct. at 2785–91 (plurality); *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 475 (5th Cir. 2006) (DeMoss, J., concurring).  Those allegations are not present here.[7]

## C.    LAC May Not Be Haled into Court Based on the Alleged Conduct of Former Defendant GPMI.

As the foregoing makes plain, LAC lacks the "minimum contacts" necessary to support an exercise of personal jurisdiction.  Perhaps for that reason, the Commonwealth makes a fleeting suggestion that the contacts of GPMI may be attributed to LAC, claiming that LAC "was formerly known as, did business as, and/or is the successor in liability to" GPMI.  Compl. ¶ 72.  While Pennsylvania's failure to pursue timely claims against GPMI makes these allegations understandable, *see* Dkt. 15,[8] it does not make them sufficient to withstand a motion to dismiss.

---

[7] This Court has already rejected this "stream-of-commerce-plus" requirement in an earlier case.  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 1:00-1898, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005).  LAC respectfully asks this Court to reach a different result here, as LAC must to preserve the issue for appellate or certiorari review.

[8] On July 24, 2014, GPMI's Liquidating Trustee filed a motion in the GPMI federal bankruptcy court proceeding, explaining that, despite being notified of that proceeding, the Commonwealth failed to file a timely proof of claim against GPMI and was therefore barred from receiving any distributions from GPMI's Liquidating Trust.  *See* Liquidating Tr.'s Mot. to Enforce the Bar Date in Aid of Confirmation Concerning Liquidation Trust Distributions, *In re Getty Petroleum Marketing Inc., et al.*, No. 11-15606 (Bankr. S.D.N.Y. July. 24, 2014), ECF No.

11

"A corporation and its stockholders are generally to be treated as separate entities.  Only under exceptional circumstances—not present here—can the difference be disregarded." *Burnet v. Clark*, 287 U.S. 410, 415 (1932); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 n.\* (1988) ("[T]he activities of a subsidiary are not necessarily enough to render a parent subject to a court's jurisdiction, for service of process or otherwise."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925).

This Court has explained unequivocally that "mere ownership of a subsidiary is insufficient to justify asserting personal jurisdiction over the parent wherever the subsidiary is present." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 959 F. Supp. 2d 476, 495 (S.D.N.Y. 2013) (Scheindlin, J.); *see also id.* at 491-92 ("Because Total Umbrella is a holding company that has never operated in Puerto Rico or participated directly in the MTBE market, Puerto Rico lacks personal jurisdiction over it with respect to the claims alleged."); *id.* at 495 ("The Commonwealth argues that [another company's] *taking* an ownership stake in a Puerto Rico operating company should confer jurisdiction over the parent.  But this position is contrary to law, as it would subject a foreign holding company to personal jurisdiction wherever it acquired new investments.").

This Court has likewise noted, for example, that even allegations of "sole ownership, overlapping directors, consolidated financial statements, and reference to [a] subsidiary as a department [have been held] insufficient to establish the type of day-to-day control necessary to disregard corporate separateness." *In re Ski Train Fire in Kaprun, Austria on November 11,*

---

1226 at 3.  Less than a month later, the Commonwealth gave this Court notice of the voluntary dismissal of GPMI from this action.  *See* Dkt. 15.

*2000*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004) (Scheindlin, J.).  And it has held, on several

occasions, that 12(b)(2) dismissal was proper when a plaintiff sought to hale a defendant into

court based on the conduct of a different corporate entity.  *See, e.g.*, *In re Methyl Tertiary Butyl*

*Ether (MTBE) Products Liab. Litig.*, 959 F. Supp. 2d 476  (S.D.N.Y. 2013) (Scheindlin, J.); *In re*

*Ski Train Fire in Kaprun, Austria on November 11, 2000*, 342 F. Supp. 2d 207 (S.D.N.Y. 2004)

(Scheindlin, J.); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d

208 (S.D.N.Y. 2004) (Scheindlin, J.); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,

230 F. Supp. 2d 403, 413 (S.D.N.Y. 2002) (Scheindlin, J.); *Whitaker v. Fresno Telsat, Inc.*, 87 F.

Supp. 2d 227  (S.D.N.Y. 1999) (Scheindlin, J.) (subsequent history omitted); *Laborers Local 17*

*Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998) (Scheindlin, J.);

*cf. King Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 320 (S.D.N.Y.

2011) (Scheindlin, J.).

Dismissal is likewise appropriate here.  As noted, to survive a 12(b)(2) motion to dismiss,

a Complaint must include "an averment *of facts* that, if credited \*\*\*, would suffice to establish

jurisdiction."  *Licci*, 673 F.3d at 60 (emphasis added); *see also Mellon Bank*, 960 F.2d at 1223;

*Time Share*, 735 F.2d at 65.  No factual content supports the Complaint's conclusory assertion

that LAC is a "successor" to GPMI (which, incidentally, existed for years after LAC acquired it

and was recently voluntarily dismissed as a defendant in this case).  *See* Decl. ¶¶ 13, 26.

Nothing suggests that LAC was "doing business as" GPMI, or even that LAC was "doing

business" at all—perhaps because it was not.  Decl. ¶¶ 17–24, 28.  Finally, there is no basis, in

the Complaint or in reality, for believing that LAC was "formerly known as" GPMI, a company

13

that existed before LAC acquired it and existed after LAC sold it in 2011.  Decl. ¶ 27; *see also* Decl. ¶¶ 9, 15(a).[9]

## II.   LAC ADOPTS JOINT DEFENSE GROUP 12(B)(6) MOTIONS TO DISMISS

LAC's understanding is that on December 23, 2014, groups of defendants named in this action will file Rule 12(b)(6) motions to dismiss noting that LAC will join in their arguments by separate motion.  Those groups of defendants include both "MTBE Defendants" and "Insurance Defendants."  LAC joins those motions to dismiss, and adopts by reference any briefing and oral argument supporting those motions.[10]  LAC's joinder of those motions in no way depends on the factual information contained in the declaration filed with this memorandum, and LAC neither joins nor opposes any defendant's request for severance.

### CONCLUSION

For the foregoing reasons, LAC's motion to dismiss under Rule 12(b)(2) should be granted.  The Rule 12(b)(6) motions joined by LAC should also be granted.

---

[9] The further suggestion that Lukoil is liable individually "and/or" in *fourteen* other capacities borders on frivolous—at best.  Compl. ¶ 108.  Lukoil is not, for example, the "patent holder[]" of Texaco Inc.  Compl. ¶ 108.

[10] Collectively, the motions seek an order dismissing (1) Counts V (trespass) and VI (Unfair Trade Practices & Consumer Protection Law), *see* Dkt. 81, 82; (2) Count III (public nuisance) to the extent premised on the manufacturer and/or distribution of MTBE or MTBE gasoline, *see* Dkt. 81, 82; and (3) Plaintiff's Insurance Claims.

14

Respectfully submitted,

       /s/ James P. Tuite

Katherine M. Katchen
   AKIN GUMP STRAUSS
   HAUER & FELD LLP
2001 Market Street
Suite 4100
Philadelphia, PA 19103
Phone: 215-965-1239
Fax: 215-965-1210
kkatchen@akingump.com

James P. Tuite
Matthew A. Scarola
   AKIN GUMP STRAUSS
   HAUER & FELD LLP
1333 New Hampshire Ave., NW
Washington, D.C. 20036
Phone:  202-887-4406
Fax:  202-887-4288
jtuite@akingump.com
mscarola@akingump.com

*Attorneys for LUKOIL Americas Corporation*

Date:  December 23, 2014

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2014, a true and correct copy of this memorandum was electronically served on all counsel of record via LexisNexis File & Serve.  A hard copy of this memorandum will be sent to opposing counsel by overnight delivery.

/s/ James P. Tuite

Date:  December 23, 2014