```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE METHYL TERTIARY BUTYL ETHER ("MTBE")
PRODUCTS LIABILITY LITIGATION

COMMONWEALTH OF PENNSYLVANIA ,

             Plaintiff,

        v.                              14 Civ. 6228

EXXON MOBIL CORPORATION, et al.,

             Defendants.

------------------------------x
                                        New York, N.Y.
                                        March 5, 2015
                                        4:00 p.m.

Before:

                HON. SHIRA A. SCHEINDLIN,

                                        District Judge

                      APPEARANCES

MILLER, AXLINE & SAWYER
     Attorneys for Plaintiff
BY:  MICHAEL AXLINE, ESQ.

AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
     Attorneys for Defendant Lukoil Americas Corp
BY:  JAMES P. TUITE, ESQ.

RAWLE & HENDERSON, LLP (via telephone)
     Attorneys for Defendant Getty Properties Corp
BY:  SUSAN M. DEAN, ESQ.
```

1                  (Case called)
2                  THE COURT:  Good afternoon.
3                  I studied your various papers and I ended up
4     scratching my head a little bit, because I am look at the
5     Maryland law.  I am up here trying to figure out whether the
6     specific transaction that appears relates to the below-market
7     sale of the stations in Pennsylvania or whether use of MTBE in
8     general.
9                  Which event or transaction does that have to relate
10    to?  Do you both have the same answer to that?  That would be
11    nice.
12                 Mr. Axline?
13                 MR. AXLINE:  I suspect we have different answers to
14    that, your Honor.  We also have a different opinion about what
15    law applies.
16                 THE COURT:  I thought you agreed with Maryland.
17                 MR. AXLINE:  That was in Mr. Tuite's papers.  We
18    didn't file --
19                 THE COURT:  I know he says it is Maryland.  I thought
20    you agree?
21                 MR. AXLINE:  We do not agree.  We believe it is Third
22    Circuit law.
23                 THE COURT:  You believe it is Third Circuit law?
24                 MR. AXLINE:  We are in your courtroom on subject
25    matter jurisdiction.

1          THE COURT:  Of course.

2          MR. AXLINE:  You apply state law in diversity cases,
3    but this isn't a diversity case.  You applied federal common
4    law to the veil piercing question in the Total motion in Puerto
5    Rico some time ago, but I checked it and you did.  I think that
6    is the reason.

7          I think that because we are here on subject matter
8    jurisdiction, you applied the federal common law rules on veil
9    piercing, and because this case originated in Pennsylvania, I
10   believe the appropriate veil-piercing authority to look at is
11   Pennsylvania, Third Circuit.

12         THE COURT:  Already I learned something.  I thought
13   you agreed it was a Maryland.  That would be the first issue on
14   the briefing is which is the controlling law.  What did you say
15   I did in the Puerto Rico case?  Say that again.

16         MR. AXLINE:  You applied, I believe it was, Second
17   Circuit --

18         THE COURT:  I see.

19         MR. AXLINE:  -- veil-piercing law.  The opinion --

20         THE COURT:  Why did I apply Second Circuit as opposed
21   to First Circuit?

22         MR. AXLINE:  I am not sure, your Honor.  The choice of
23   laws question wasn't really addressed in your opinion.  I am
24   not sure it was addressed in the briefing, frankly.

25         THE COURT:  You mean I just might have used the law of

1  the transferee court?

2          MR. AXLINE:  I think you may have.

3          THE COURT:  Which I actually wrote about years ago, 10
4  or 15 years ago in this MTBE thing.  The notion of applying the
5  law of the transferal court is not really required.  It was an
6  understanding MDL type opinion as to what the controlling law
7  is.  I don't remember any of the details.  You probably didn't
8  take on that opinion too.  It was a long time ago.  That would
9  have been argument of Second Circuit law.

10          In any event, you don't think it is Maryland.  Remind
11 me, Mr. Tuite, why you say it is definitely Maryland, just that
12 one point?  Why did you say it was Maryland?

13         MR. TUITE:  James Tuite for Lukoil Americas.  We
14 believe this is a case that started in Pennsylvania, and if it
15 had proceeded in Pennsylvania, the Pennsylvania state court
16 would have --

17         THE COURT:  It is not state court.  We are in federal.

18         MR. TUITE:  We understand.  It has been removed to
19 federal court.

20         THE COURT:  I know.

21         MR. TUITE:  We believe it would apply, Pennsylvania
22 law.

23         THE COURT:  Who would apply Pennsylvania law?

24         MR. TUITE:  The federal court.  Pennsylvania would
25 look to the law of the jurisdiction in which the corporation

1  whose veil you are trying to pierce was incorporated.  That is
2  what I understand.
3           THE COURT:  You say that is Third Circuit law?
4           MR. TUITE:  That is what it I understand it to be.
5           THE COURT:  Let's go back to Mr. Axline.
6           The Third Circuit law says you apply the veil-piercing
7  law of the place where the corporation is that you wish to
8  pierce.  Third Circuit only takes us back to Maryland anyway.
9  Is that your understanding of Third Circuit law?
10          MR. AXLINE:  Mr. Tuite is missing a step there.  The
11 case was removed.
12          THE COURT:  He knows that.  He said the third Circuit
13 in a federal case would apply the law of the jurisdiction in
14 which the corporation resides.  Is that whose veil you wish to
15 pierce?
16          MR. AXLINE:  In a diversity case.  This is not a
17 diversity case.
18          THE COURT:  What would the Third Circuit do in a
19 non-diversity case?
20          MR. AXLINE:  Apply federal law as interpreted by the
21 Third Circuit.
22          THE COURT:  What is that law?  Let me just jump ahead.
23 If you are right, which is many steps away, if you are right, I
24 would apply the Third Circuit law, which is that in a federal
25 jurisdiction case as opposed to diversity, federal question

1    case as opposed to diversity, they would apply federal common

2    law which would be the law of the jurisdiction in which they

3    are assuming.  What is that law?

4              MR. AXLINE:  It is federal common law, your Honor.

5              THE COURT:  What is the federal common law?

6              MR. AXLINE:  Well, I have two citations for you that

7    will give it more detail.  I thought I would share them today.

8    The first is U.S. v Pisani at 646 F.2d 86, and the pinpoint

9    cite is page 88.  It is Third Circuit 1981.

10             Then the sort of leading case in the District of

11   Pennsylvania is a case called Galgay v. Gangloff, which is at

12   677 F.Supp. 295.

13             THE COURT:  What is it?

14             MR. AXLINE:  To boil it down in a nutshell, all of

15   these veil-piercing tests use various elements, but the federal

16   test is much more lax.  In other words, it doesn't require as

17   much of a showing.  The bottom line is that the court looks to

18   see whether denying veil piercing would result in an unjustice.

19   It is a very broad general standard.  You still look at some of

20   the same things.

21             THE COURT:  If you turn out to be right, what do you

22   need this additional discovery for?  Why do you need to get the

23   whole record of the adversary proceeding, which is a million

24   pages or something, when you already have a good deal of

25   information about this company, this below market sale, this

1   transaction, the public record documents in the adversary
2   proceeding?
3           Maybe you should brief which law controls really fast,
4   and if you do it, I will take you out of turn and decide it
5   really fast, like maybe a week after it is fully submitted, and
6   then we would have a better hand on the discovery dispute.
7   Because if you turn out to be right -- I don't know, I don't
8   want to worry Mr. Tuite yet, I have no idea if he is right --
9   let's just say theoretically that you're right, Mr. Axline.  It
10  may be that you have enough under this far more lax test to
11  satisfy and we move on to the merits and get going.
12          What about separating out which law controls?  Because
13  you may actually have a stronger argument for the discovery if
14  it is the Maryland law and much less strong argument for the
15  discovery if it is the federal common law.  You may already be
16  where you need to be under federal common law.
17          Really, I am sure you're, because you're a
18  commonsensical lawyer, I have known you a few years, you don't
19  want to waste your time or mine if you don't need this
20  material.  You don't want to do it just to win the point, so to
21  speak.  If you don't need these million pages from this
22  adversary proceeding, then you don't need it.
23          MR. AXLINE:  Your Honor, let me clarify something,
24  because Mr. Tuite didn't put this into his papers.  We didn't
25  get a reply.  We asked him, and you will see this in our

1     letter, we asked him for an index.

2              THE COURT:  Yes.

3              MR. AXLINE:  He didn't give us an index.  We would
4     like an index --

5              THE COURT:  Okay.  But you're segwaying and diverting
6     away from my question, which is very pointed.  You know me, I
7     know you.  Should we simply brief which is the controlling law
8     fast and short, really short?  We don't need to get into any of
9     the facts of this case to do it, other than the removal and
10    where it is, things like that.  We do that, if you are right,
11    it may change your request.

12             MR. AXLINE:  Our discovery request?

13             THE COURT:  Yes.  It may affect your discovery
14    request.  You are going be to be ready under federal common law
15    to brief the issue and possibly win it.

16             MR. AXLINE:  I'm not sure we would be, your Honor.  I
17    am pretty sure we are still going to want the best shot that we
18    have at winning the motion.

19             THE COURT:  Of course, but given the standard, as you
20    began to articulate it, you may have enough.  It is not like
21    you don't have any information from the adversary proceeding.
22    You have a lot of information from that adversary proceeding.

23             Surely not the whole record, surely not one million
24    documents, surely not every page, but there is a lot that is
25    publically available, I assume much of the trial transcript,

1    many exhibits. I know some is under seal, some is not. I
2    remember that now.
3         You have material to make your points. There are
4    things you know about these companies anyway. Actually, judges
5    are like that. I kind of like my suggestion, not surprisingly.
6    Why don't we do it? Why don't we figure out the controlling
7    law and then you can make a far more pointed argument?
8         MR. AXLINE: About the need for the discovery?
9         THE COURT: Of course, because you can be specific.
10   Had you said, oh, I agree that it is Maryland law, I was going
11   to ask this next question very specifically. Would it have to
12   relate to the alleged fraudulent transaction of the underprice
13   sale of these stations, or does it relate to these MTBE, or
14   does it relate to and very specifically how the documents, you
15   don't have go to that issue? You were saying I don't have to
16   do that, and really I need to make a far more general showing
17   of overlapping directors and controlling. The usual test, I am
18   far more used to than the Maryland test.
19        Why don't you figure out the controlling law. You
20   have nothing to lose. After we do that, if you still make your
21   argument for everything under federal common law, I would be
22   surprised, you may be able to be more pointed. While we are at
23   it, Mr. Tuite, why don't you give him the index at least. I
24   think it is a distraction right now. I might as well ask you.
25        MR. TUITE: Your Honor, we are happy to give him the

1  index.

2  THE COURT:  Why don't you do it then.  We can do that.
3  We cured the index problem.  Now let's set a quick little
4  briefing schedule.

5  MR. AXLINE:  I think that is a good idea, your Honor.
6  Please understand, I am not opposed to that idea.

7  THE COURT:  Then let's do it.  Who is the moving party
8  as to which is the controlling law?  I guess it is the
9  plaintiff's motion on veil-piercing.  You want to pierce the
10 veil, so you would file the motion saying which is good anyway.
11 You get the reply that way, so you like it.

12 You should file the moving papers saying the
13 controlling law to decide the veil-piercing issue is federal
14 common law and federal common law in Pennsylvania is -- you
15 will cite the same two cases -- then the response will be no,
16 it is not, it is Maryland, here is why.  You will reply and I
17 will decide.  It should be very short briefs, ten and five.
18 There is no reason for 25 pages on this.  It is a single issue
19 with no record.  There is nothing to attach, no affidavits, no
20 records.  This is a pure question of law.

21 MR. AXLINE:  Understood, your Honor.  My concern is
22 this.  We have a deadline of April 15 to complete discovery.
23 Should it be necessary to conduct additional discovery --

24 THE COURT:  Don't worry.  I will allow it.  That is my
25 deadline, right?

1             MR. AXLINE:  Yes, that is yours.

2             THE COURT:  It is not Pennsylvania or something?

3             MR. AXLINE:  No.

4             THE COURT:  To complete all discovery in an MTBE case?

5             MR. AXLINE:  No, just for on this jurisdiction.

6             THE COURT:  On this issue, don't worry.  We will get

7    it done.

8             MR. AXLINE:  I do want to give you a very quick answer

9    to the question that you didn't ask, because I want to be clear

10   that we are not replying completely on veil piercing to assert

11   personal jurisdiction over Lukoil Americas corporation.  They

12   engaged directly in acts in Pennsylvania, including negotiating

13   the environmental liability and underlying lease when getting

14   properties before --

15            THE COURT:  I know, but you want both prongs, don't

16   you?  You want veil-piercing and that?

17            MR. AXLINE:  Yes.

18            THE COURT:  Let's get this prong done.  When you then

19   brief, when you move to dismiss for lack of personal

20   jurisdiction, you are ready to go on both theories?

21            MR. AXLINE:  He has already moved, your Honor.  That

22   motion is pending.

23            THE COURT:  I will have to put that off because that

24   is the whole point.  We decided to have this limited discovery,

25   didn't we?

1           MR. AXLINE:  Yes.
2           THE COURT:  You haven't responded to that motion
3   because you want to respond to both prongs.
4           MR. AXLINE:  With all the arrows we can put in our
5   quiver.
6           THE COURT:  The world isn't perfect, but there is many
7   arrows you can put into your quiver.  I don't know about all.
8   Life is too short for all.  You want one million documents or
9   pages?
10          MR. AXLINE:  I think once we look at the index, we
11  will be able to pare it down.
12          THE COURT:  He says you are getting that.  Look, this
13  brief, which is so narrow and so short, should be in in a week
14  from today.  Let's just do it.
15          MR. AXLINE:  No problem.
16          THE COURT:  Explain why is it federal common law.
17  Maybe the person on the phone will help you on this issue since
18  she is in agreement with you.  Between the two of you, maybe
19  you can get it in on time.
20          Today is March 5.  I think it should be in March 12.
21  I think the response should be in March 19, a week later, and
22  then the reply March 24.  A weekend and two days and that is
23  the end of it.  It is one limited issue.  Force yourselves to
24  be concise and focused.  Don't bring up anything else.  I just
25  want to know which applies.

1            MR. TUITE:  Yes.  Excuse me, your Honor.  Just to make
2   sure, defendants' response is due March 19, is that what you
3   said?
4            THE COURT:  I did.  I said 12, 19, 24.
5            MR. TUITE:  Thank you.
6            THE COURT:  Then, as I said, I will take it out of
7   turn, it will get decided, then you can renew the discovery
8   request, if you think you need to.  Because if you win your
9   point, as I said, you may not think you need everything.  You
10  can be very pointed because you will have the index by then,
11  you will have the decision by then, you will know under which
12  law you are operating.
13           Hopefully you will be very pointed and hopefully it
14  won't be litigated a lot, just by letters, because there
15  already was letters for discovery issues.  We don't have
16  motions in the Southern District; we do it by letter.  I will
17  decide and you get what you get, and we will finish up briefing
18  his motion to dismiss.
19           MR. AXLINE:  That sounds good, your Honor.  We do have
20  another conference, all cases conference, scheduled for
21  April 24.
22           THE COURT:  I should be done.  If you guys stick to
23  the schedule, which you are now ordered to do, I promise to
24  stick to the schedule too.  We should be able to move forward.
25  I will extend the discovery, obviously, if need be.  Hopefully

F35SMTBC

1     minimally, but if need be to take care of any new ruling.
2             MR. AXLINE:  Thank you, your Honor.
3             THE COURT:  When is he going to get that index,
4     Mr. Tuite?
5             MR. TUITE:  We will have it produced tomorrow.
6             THE COURT:  Fair enough.  I don't know where he is
7     going to be tomorrow, New York or California, but one or the
8     other safely, I hope.
9             Ms. Dean, is there is anything you want to add?
10            MS. DEAN:  No, your Honor.  Only that there is a
11    request that whatever Lukoil is producing to the plaintiffs,
12    that we will be provided with copies as well.
13            There was earlier exchange by Lukoil that was sent
14    only to the plaintiffs and was not distributed to the entire
15    group, and I would ask for that as well as the index.
16            THE COURT:  Mr. Tuite?
17            MR. TUITE:  Is the request that our briefing be shared
18    with --
19            THE COURT:  No, no, no, not just the briefing.
20            MR. TUITE:  The documents?
21            THE COURT:  The briefing will be documented on ECF.
22    She wants the index and whatever you previously produced by way
23    of discovery.
24            MR. TUITE:  I don't understand why Getty Properties
25    needs that he information.  They are not --

1            THE COURT:  Because it wants it.  They're not a party?
2    They are a defendant.
3            MR. TUITE:  They are a defendant in the case.  They
4    are not prosecuting the claims.
5            THE COURT:  You never know about cross claims.  They
6    are a defendant here, they may have cross claims.
7            MR. TUITE:  Cross claims in this litigation, your
8    Honor?
9            THE COURT:  Yes, exactly.  They may say "not us," it
10   is you who are responsible.  That wouldn't really surprise you,
11   would it, Mr. Tuite?
12           MR. TUITE:  Nothing surprises me.
13           THE COURT:  That is right.  That is exactly the right
14   answer.  It wouldn't surprise you.
15           They want the index and they want the discovery
16   produced.  They are entitled to it.  They are a party.
17   Ms. Dean, I don't think you should speak for the other 10, 15,
18   20 defendants, but for yourself, yes, he will get it to you.
19           MS. DEAN:  Thank you, your Honor.  Yes, I am only
20   speaking on behalf of my client.
21           THE COURT:  You don't need to send it, at this point,
22   to all defendants.  If somebody asks, we will find out.
23           The briefs will be docketed anyway on ECF.  Briefs
24   aren't the issue.
25           MR. TUITE:  Okay, your Honor.

F35SMTBC

1          THE COURT:  If there is nothing further, it was good
2     to see you.  Have a safe trip back.
3          MR. AXLINE:  Thank you, your Honor.
4                              o0o