UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898 (SAS) MDL 1358 |
| **This document relates to:** | |
| *Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*, Case No. 14-cv-06228 | |

## MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    INJUNCTIVE RELIEF IS NOT AVAILABLE FOR PAST CONDUCT
      UNDER THE UTPCPL ........................................................................................ 2

II.   COUNT VI FAILS BECAUSE THE MATERIAL SAFETY DATA SHEETS
      DID NOT INFLUENCE PURCHASING DECISIONS AND WERE NOT
      FALSE, DISPARAGING OR DECEPTIVE ......................................................... 7

      A.    The MSDSs Did Not Influence Purchasing Decisions. .......................... 8

      B.    The MSDSs Did Not Contain False Statements ...................................... 9

      C.    The MSDSs Do Not Disparage the "Goods, Services or Business of
            Another." ............................................................................................... 10

      D.    The "Catch-All Provision" Claim Fails Because the SAC Does Not Allege
            How the MSDSs Likely Caused Confusion. .......................................... 12

III.  COUNT VII FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF HAS
      NOT IDENTIFIED ANY DECEPTIVE OR MISLEADING CONDUCT .............. 13

      A.    The "Government Gas" Ad Is Non-Actionable Political Speech ........... 14

      B.    The Statements Attributed to Shell, Conoco and Others Are Not
            Actionable Because They Are Not False or Deceptive. .......................... 16

      C.    The Commonwealth Cannot State a Claim Under the "Catch-All"
            Provision Because It Cannot Satisfy the Standard for Pleading Fraud .... 20

IV.   THE COMMONWEALTH'S STORAGE TANK AND SPILL PREVENTION
      ACT CLAIM FAILS BECAUSE THE FUND HAS NOT PLED IT SOUGHT
      INSURANCE INFORMATION FROM DEFENDANTS. .................................... 22

V.    THE COMMONWEALTH IMPROPERLY CONTINUES TO ALLEGE
      PUBLIC NUISANCE BASED ON THE MANUFACTURE OR
      DISTRIBUTION OF MTBE GASOLINE. ........................................................ 25

CONCLUSION .............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Afontanez v. HSBC Mortgage Corp. (USA)*,
  876 F. Supp. 2d 504 (E.D. Pa. 2012) ................................................. 12

*In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  2013 WL 3463503 (E.D. Pa. July 10, 2013) ......................................... 3

*In re Asbestos Sch. Litig.*,
  46 F.3d 1284 (3d Cir. 1994) ............................................................ 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 3

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
  839 F.2d 155 (3d Cir. 1988) ........................................................... 15

*Carvel v. Scarpino*,
  2010 WL 5174392 (S.D.N.Y. Dec. 16, 2010) ...................................... 25

*Choose Energy, Inc. v. Am. Petroleum Inst.*,
  87 F. Supp. 3d 1218 (N.D. Cal. 2015) .............................................. 14

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) ................................................. 4

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ............................................................ 14, 15, 16

*Geesey v. CitiMortgage, Inc.*,
  2015 WL 5714494 (W.D. Pa. Sept. 29, 2015) ..................................... 20

*Gidley v. Allstate Ins. Co.*,
  2009 WL 4893567 (E.D. Pa. Dec. 17, 2009) .................................. 19, 21

*Goleman v. York Int'l Corp.*,
  2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ................................ 12, 19, 22

*In re Hyperion Secs. Litig.*,
  1995 WL 422480 (S.D.N.Y. July 14, 1995) ........................................ 24

*JBCHoldings NY, LLC v. Pakter*,
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ................................................. 4

*Karlsson v. FDIC,*
    942 F. Supp. 1022 (E.D. Pa. 1996) ............................................................................. 10, 19

*Klatch-Maynard v. Sugarloaf Twp.,*
    2010 WL 5789390 (M.D. Pa. Nov. 8, 2010) ................................................................. 15

*Knit With v. Knitting Fever, Inc.,*
    2010 WL 3792200 (E.D. Pa. Sept. 28, 2010) ............................................................... 11

*Lee v. United States,*
    1999 WL 335830 (S.D.N.Y. May 25, 1999) ................................................................. 25

*Loften v. Diolosa,*
    2008 WL 2994823 (M.D. Pa. July 31, 2008) ............................................................... 13

*McNulty v. Citadel Broad. Co.,*
    58 F. App'x 556 (3d Cir. 2003) .................................................................................... 11

*Mertz v. Donzi Marine, Inc.,*
    2007 WL 710263 (W.D. Pa. Mar. 6, 2007) ................................................................. 18

*Moore v. Angie's List, Inc.,*
    2015 WL 4669209 (E.D. Pa. Aug. 7, 2015) .......................................................... 12, 20, 21

*In re MTBE Prods. Liab. Litig.,*
    2008 WL 2676278 (S.D.N.Y. July 8, 2008) ................................................................. 13

*In re MTBE Prods Liab. Litig.,*
    2015 WL 4092326 (S.D.N.Y. Jul. 2, 2015) ............................................................ *passim*

*In re MTBE Prods. Liab. Litig,*
    725 F.3d 65 (2d Cir. 2013) ............................................................................................. 4

*In re MTBE Prods. Liab. Litig.,*
    2015 WL 2354582 (S.D.N.Y. May 14, 2015) ...................................................... 2, 23, 24

*Post v. Liberty Mut. Ins. Grp.,*
    2014 WL 2777396 (E.D. Pa. June 18, 2014) ............................................................... 12

*Sabol v. Ford Motor Co.,*
    2015 WL 4378504 (E.D. Pa. July 16, 2015) ............................................................... 20

*Seldon v. Home Loan Servs., Inc.,*
    647 F. Supp. 2d 451 (E.D. Pa. 2009) ................................................................. 10, 18, 21

*Sicherman v. Nationwide Life Ins. Co.,*
    2012 WL 1122737 (E.D. Pa. Apr. 4, 2012) ................................................................. 19

*Slapikas v. First Am. Title Ins. Co.,*
    298 F.R.D. 285 (W.D. Pa. 2014) ................................................................. 12

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.,*
    955 F. Supp. 2d 452 (E.D. Pa. 2013) .......................................................... 12

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965) .................................................................................... 14

*Vassalotti v. Wells Fargo Bank, N.A.,*
    732 F. Supp. 2d 503 (E.D. Pa. 2010) .......................................................... 12

*VIM, Inc. v. Somerset Hotel Ass'n,*
    19 F. Supp. 2d 422 (W.D. Pa. 1998) ........................................................... 15

*Weisblatt v. Minn. Mut. Life Ins. Co.,*
    4 F. Supp. 2d 371 (E.D. Pa. 1998) ....................................................... 10, 19

**State Cases**

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,*
    40 A.3d 145 (Pa. Super. 2012) .................................................................... 20

*Berkebile v. Brantly Helicopter Corp.,*
    337 A.2d 893 (Pa. 1975) ............................................................................. 19

*Commw. v. Hush-Tone Indus., Inc.,*
    4 Pa. Commw. 1 (1971) .............................................................................. 19

*Commw. v. Percudani,*
    844 A.2d 35 (Pa. Commw. Ct. 2004) ........................................................... 6

*Commw. v. TAP Pharm. Prods., Inc.,*
    36 A.3d 1112 (Pa. Commw. Ct. 2011) ..................................................... 3, 4

*Commw. v. TAP Pharm. Prods., Inc.,*
    36 A.3d 1197 (Pa. Commw. Ct. 2011) .......................................................... 3

*Delmarva Power & Light Co. v. Commw.,*
    870 A.2d 901 (Pa. 2005) ............................................................................... 6

*Eiser v. Brown & Williamson Tobacco Co.,*
    2005 WL 1323030 (Phila. Comm. Pl. Feb. 1, 2005) ................................. 15

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,*
    809 A.2d 243 (Pa. 2002) ............................................................................. 11

*Schwartz v. Rockey,*
    932 A.2d 885 (Pa. 2007) ............................................................................... 6

*Thompson v. Glenmede Trust Co.*,
  2003 WL 1848011 (Pa. Comm. Pl. Feb. 18, 2003) ....................................................... 18

*Underground Storage Tank Indemnification Fund v. Morris & Clemm, PC*,
  107 A.3d 269 (Pa. Commw. Ct. 2014) ...................................................................... 24

*Wagner v. Erie Ins. Co.*,
  801 A.2d 1226 (Pa. Commw. Ct. 2002) ................................................................... 24

*Weinberg v. Sun Co., Inc.*,
  777 A.2d 442 (Pa. 2001) ....................................................................................... 8, 18

*White v. Conestoga Title Ins. Co.*,
  53 A.3d 720 (Pa. 2012) ............................................................................................. 6

*Yenchi v. Ameriprise Fin. Inc.*,
  2015 WL 5430353 (Pa. Super. Sept. 15, 2015) ....................................................... 20

**Statutes**

1 P.S. § 1903 .................................................................................................................. 6

1 P.S. § 1921 .................................................................................................................. 6

1 P.S. § 1953 ................................................................................................................ 20

73 P.S. § 201-2 ............................................................................................. 9, 12, 14, 20

73 P.S. § 201-4 ................................................................................................. 2, 3, 5, 6

**Other Authorities**

29 C.F.R. § 1910.1200(g) ........................................................................................... 7, 8

40 C.F.R. § 80.35 ........................................................................................................ 18

71 Fed. Reg. 55552, 55612 (Sept. 22, 2006) .................................................................. 4

77 Fed. Reg. 17574, 17577 (Mar. 26, 2012) ................................................................... 7

25 Pa. Code § 126.104 ................................................................................................. 18

25 Pa. Code § 977.32 ................................................................................................... 23

## PRELIMINARY STATEMENT

The moving Defendants[1] (hereinafter, "Defendants") hereby move the Court for an order dismissing with prejudice from the Second Amended Complaint ("SAC"):   (i) Count VI (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against the "MTBE MSDS Defendants"), (ii) Count VII (Violation of the Pennsylvania UTPCPL against certain "MTBE Defendants"), (iii) Count IX (Violation of the Pennsylvania Storage Tank and Spill Prevention Act against the "Insurance Defendants"), and (iv) to the extent previously Ordered by the Court, Count III (Nuisance).

The Commonwealth once again has failed to plead a viable claim under the UTPCPL. Although the Commonwealth's claim is now split into two separate "counts" and contains wholly different allegations than its previous effort, the Commonwealth's latest attempt to conjure up UTPCPL claims merely confirms its inability to do so.   In both counts, the Commonwealth fails to plead any legitimate basis for seeking injunctive relief under UTPCPL Section 4.   In Count VI, the Commonwealth tries to base a claim on safety data sheets Defendants provided to bulk purchasers to comply with OSHA requirements, none of which contained false, disparaging or deceptive statements.   In Count VII, the Commonwealth relies on muddled allegations involving 25-year-old newspaper articles and public advocacy pieces, none of which was false, disparaging or deceptive either.   The allegations are wholly insufficient and dismissal is once again appropriate.

Likewise, on May 14, 2015, the Court dismissed the Commonwealth's claim that the Insurance Defendants violated the Pennsylvania Storage Tank and Spill Prevention Act

---

[1] See Attachment A to the *Certain Defendants' Notice of Motion to Dismiss*.   Pursuant to the Court's Individual Rule IV(B), Defendants certify that their pre-motion letter was served on Plaintiff on December 22, 2015.   However, as of the time of filing, Plaintiff had not responded.

("STSPA") because "nothing in the Complaint supports the notion that it is plausible that the Insurance Defendants concealed the existence of additional insurance in response to a request by the Fund." *In re MTBE Prods. Liab. Litig. ("In re MTBE")*, 2015 WL 2354582, at *5 (S.D.N.Y. May 14, 2015). Count IX of the SAC again alleges a violation of the STSPA, but the claim suffers from the same deficiency: it does not allege that the Fund asked any of the Insurance Defendants about their insurance policies. SAC at ¶¶ 520–31. Because the Fund does not and cannot make this necessary allegation—despite two opportunities to do so—the STSPA claim should be dismissed with prejudice.

## ARGUMENT

### I.   INJUNCTIVE RELIEF IS NOT AVAILABLE FOR PAST CONDUCT UNDER THE UTPCPL.

The Commonwealth's UTPCPL claims rely on Section 4 of that statute, which allows the Attorney General[2] to bring an action "in the public interest" seeking injunctive relief when a defendant "is using or is about to use [a] method, act or practice" declared unlawful by the UTPCPL. 73 P.S. § 201-4. The Commonwealth, however, does not and cannot plead sufficient facts to support an action under Section 4. The SAC does nothing more than parrot the language of Section 4, including an unadorned allegation that the Office of the Attorney General "has reason to believe" that Defendants are engaging or about to engage in UTPCPL violations in connection with a product, MTBE gasoline, that has not been marketed in Pennsylvania (or elsewhere in the United States) for nearly a decade. SAC ¶¶ 400, 408. But simply reciting the statutory language is not enough; such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" have been deemed insufficient under Rules 8(a) and

---

[2] The Act requires findings by the Attorney General, not, as the SAC alleges, "*the Office of the Attorney General.*" *Compare* SAC ¶¶ 398, 400, 406 *with* Am. Compl. ¶ 295 ("[t]he Pennsylvania Attorney General has reason to believe…"); ¶ 297 ("the Attorney General believes…").

12(b)(6).  *See In re MTBE*, 2015 WL 4092326, at *2 (S.D.N.Y. Jul. 2, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Because the Commonwealth's claim is not "plausible on its face," dismissal is the appropriate remedy.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]

Section 4 sets forth the elements that the Attorney General must plead and prove in a suit for injunctive relief under the UTPCPL:

> Whenever the Attorney General or a District Attorney *has reason to believe that any person is using or is about to use* any method, act or practice declared by section 3 of this act [§ 201-3] to be unlawful, and that proceedings would be in the public interest, [s]he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. § 201-4 (emphasis added).  "By the plain terms of the statute, the Attorney General must prove ... that a person is using or about to use a practice declared unlawful by the CPL." *Commw. v. TAP Pharm. Prods., Inc.*, 36 A.3d 1197, 1221 (Pa. Commw. Ct. 2011), *vacated on other grounds*, 94 A.3d 350 (Pa. 2014).  In determining whether the Attorney General may pursue a claim, a court "should consider whether the alleged offending conduct is likely to reoccur absent the grant of an injunction." *Commw. v. TAP Pharm. Prods., Inc.*, 36 A.3d 1112, 1172 (Pa. Commw. Ct. 2011), *vacated on other grounds*, 94 A.3d 350 (Pa. 2014).  And under

---

[3] The Commonwealth again asks for "restoration" relief in the SAC (SAC ¶ 410(c)), although it acknowledges that this Court dismissed that claim.  (SAC ¶ 410(c) n.4; *In re MTBE*, 2015 WL 4092326, at *5-6 (S.D.N.Y. Jul. 2, 2015)).  Undeterred, the Commonwealth now demands that the Court "[e]nter an order requiring MTBE Defendants to render an accounting and thereafter disgorge all moneys or other property obtained as a result of their violations of the UTPCPL." (SAC ¶ 410(e)).  It cites no statutory provision authorizing "disgorgement" from Defendants, because there is none.  Indeed, "the law is clear": to the extent any UTPCPL restitutionary remedy exists, "the money ultimately belongs to the claimant individuals, not the government." *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Prac. Litig.*, 2013 WL 3463503, at *6 (E.D. Pa. July 10, 2013).  Further, the SAC (like its predecessor) fails to identify a single transaction with any Defendant for which "any person in interest" is entitled to "restoration" or "restitution."

3

*Twombly* and *Iqbal*, the Attorney General must plead sufficient facts to show that her claim is "plausible"; conclusory allegations are not entitled to a presumption of truth.

Here, the SAC contains nothing more than the kind of insufficient conclusory statements rejected by the Supreme Court in *Twombly* and *Iqbal*. It alleges that "[u]nless restrained, [Defendants] will likely engage in methods, acts or practices which have a likelihood to deceive, mislead and confuse the public...." SAC ¶ 399; *see also id.* ¶ 407. Yet the Commonwealth never even identifies which illicit "methods, acts or practices" it supposedly believes any of the Defendants "likely will engage in," or what activity it seeks to enjoin. Nor does the SAC offer anything to support the "belief" that any Defendant "is using or is about to use" any such method, act or practice, for obvious reasons; as the Commonwealth is well aware, Defendants have not sold MTBE gasoline in Pennsylvania, or generally in the United States, since at least 2006.[4] Although "*Twombly* does not prevent a plaintiff from pleading facts 'on information and belief'..., such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 536-37 (S.D.N.Y. 2013) (citations omitted). None of the Commonwealth's allegations supports the Attorney General's "belief," or gives rise to a plausible claim that "the alleged offending conduct is likely to reoccur absent the grant of an injunction." *TAP*, 36 A.3d at 1172.

---

[4] *See, e.g., In re MTBE*, 725 F.3d 65, 80 (2d Cir. 2013) ("Until the mid–2000s, MTBE was widely used in certain regions of the United States ... as a fuel oxygenate, *i.e.*, an additive that reduces harmful tailpipe emissions by increasing the octane level in gasoline"); 71 Fed. Reg. 55552, 55612 (Sept. 22, 2006) (Energy Policy Act of 2005 "rescinded the oxygen standard for RFG and when the provision took effect, U.S. refiners stopped blending MTBE into gasoline"); *see also Pennsylvania DEP Website, Commonwealth Sues Major Oil Companies for Environmental Damages Inflicted on Pennsylvania's Natural Resources*, available at http://wallaby.telicon.com/PA/library/2014/2014062641.HTM ("[MTBE] was phased out as a gasoline additive in Pennsylvania in 2005"); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 (S.D.N.Y. 2006) (on 12(b)(6) motion, "court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.").

Count VI is premised on the MSDS Defendants' dissemination of allegedly deceptive Material Safety Data Sheets ("MSDSs") for gasoline containing MTBE.  SAC ¶ 396.  The SAC identifies MSDSs issued by Defendants mainly in the 1990s, but in no case later than 2006.  *See* SAC ¶ 286 (identifying Amoco MSDSs from 1993, 1995, 1998 and 1999), ¶ 288 (Shell 1988 MSDS), ¶ 291 (listing MSDS dates for each MSDS Defendant with latest date of September 2006).  The UTPCPL claim in Count VII is based on newspaper interviews and an API political advocacy piece published over 25 years ago.  *See* SAC ¶¶ 266-74.  Thus, the SAC does not identify any conduct within the last nine years that plausibly could support a "belie[f] that [defendant] is using or is about to use" an unlawful practice, or that "Defendants will likely engage" in deceptive conduct in the future.  The Court need not, and should not, simply accept Plaintiff's conclusory allegation that Defendants are engaging in or are likely to engage in conduct deemed unlawful by the UTPCPL.  *Iqbal*, 556 U.S. at 679 ("pleadings that … are no more than conclusions, are not entitled to the assumption of truth").

The failure to allege any facts to support its allegation that Defendants currently are engaging or likely will engage in deceptive conduct in the future is fatal to the Commonwealth's UTPCPL claims.  Even if the facts pled in the SAC sufficiently alleged past violations of the UTPCPL – and as demonstrated *infra*, they do not – Section 4 unambiguously requires the Attorney General to have "reason to believe that [a] person *is using or is about to use* any method, act or practice declared … to be unlawful…."  73 P.S. § 201-4 (emphasis added).  The plain language of the statute does not permit injunctive relief to issue based on past conduct.[5]

---

[5] When the Pennsylvania Legislature wanted to permit for the restraint of past and/or present conduct, it knew how to do so.  *See, e.g.,* Loan Interest and Protection Law of 1974, 41 P.S. § 506 (Attorney General may bring action for injunctive relief when he or she "has reason to believe that any person *has violated* the provisions of this act") (emphasis added).  The fact that it used different language in the UTPCPL demonstrates the Legislature's intent to limit

Pennsylvania's rules of statutory construction dictate that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 P.S. § 1921(b); *see also* 1 P.S. § 1903 ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage"). Here, there is no ambiguity or reason to question the Legislature's limitation of injunctive relief to ongoing and future conduct only; indeed, there is little reason to expend resources seeking to enjoin actions that ceased long ago.[6] The Commonwealth has not provided any plausible factual basis for alleging that any Defendant is currently violating the UTPCPL or will do so in the future, and Counts VI and VII should be dismissed.[7]

---

injunctive claims to current or future violations. *See White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa. 2012) ("the best indication of the General Assembly's intent in enacting a statute may be found in its plain language"); *Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007) ("it is best to adhere as closely as possible to the plain language of the [UTPCPL]").

[6] *Commw. v. Percudani*, 844 A.2d 35, 45-46 (Pa. Commw. Ct. 2004), is distinguishable on that basis. It involved a defendant who surrendered his license a mere two months prior to the Attorney General's filing of the action – a far cry from the facts here, where Defendants ceased selling the product at issue in Pennsylvania nearly a decade ago, and the allegedly offending conduct took place as much as 25 years ago. Moreover, although recognizing that the plain language of Section 4 did not provide for injunctive relief based solely on past conduct, the *Percudani* court ignored a fundamental precept of statutory construction under Pennsylvania law, set forth in 1 P.S. § 1921(b): it disregarded the plain language of the statute "under the pretext of pursuing its spirit." *See Percudani*, 844 A.2d at 46 ("if we adopted [defendant's] interpretation of Section 4 ... the purpose of the Law would be frustrated"). It also improperly relied on section 1921(c) for the proposition that it may "consider the consequences of a particular interpretation," ignoring that subsection (c) is to be applied only "[w]hen the words of the statute are not explicit[.]" 1 P.S. § 1921(c); *see Delmarva Power & Light Co. v. Commw.*, 870 A.2d 901, 909 (Pa. 2005) ("It is only when the words of [a] statute are not explicit that the intention of the legislature may be ascertained by considering other means of statutory interpretation and construction"). In short, *Percudani* was wrongly decided, as the dissent in that case notes, and is inapposite.

[7] Plaintiff also provides no factual support for its conclusory allegation that its Section 4 claims would be "in the public interest." *See* SAC ¶¶ 400, 408; *see also* 73 P.S. § 201-4. Absent ongoing or recent deceptive conduct, it is difficult to imagine how Counts VI and VII could be in the public interest.

II.  **COUNT VI FAILS BECAUSE THE MATERIAL SAFETY DATA SHEETS DID NOT INFLUENCE PURCHASING DECISIONS AND WERE NOT FALSE, DISPARAGING OR DECEPTIVE.**

Count VI of the SAC alleges violations of the UTPCPL based on the so-called MSDS Defendants' MSDSs.  As it did in its last complaint, the Commonwealth continues to engage in "group pleading," but now targets a subset of nineteen "MTBE MSDS Defendants," without making specific allegations as to most of them.  MSDSs are technical hazard communications for chemicals that manufacturers must provide to employers and distributors to comply with workplace safety regulations of the U.S. Occupational Safety and Health Administration ("OSHA").  29 C.F.R. § 1910.1200(g)(6)(i).[8]  They describe the chemical constituents and characteristics of a product and provide guidance to first responders in possible hazardous situations, such as first aid and emergency response procedures for clean-up of spills and leaks. 29 C.F.R. § 1910.1200(g)(2).  The Commonwealth's attempt to use Defendants' MSDSs to fashion a claim fails because it would require this Court to stretch the UTPCPL far beyond the limits of its consumer protection mission and repurpose MSDSs altogether.

The SAC describes only a few MSDSs from Amoco and Shell.  SAC ¶¶ 286, 288, 290. As shown below, even for Amoco and Shell, the Commonwealth's MSDS-based allegations are insufficient to state a UTPCPL claim.  For other Defendants, the Commonwealth simply provides a table listing the dates they allegedly issued or revised MSDSs and generally alleges that their MSDSs omitted material regarding the heightened precautions it contends were

---

[8] The OSHA regulations cited here underwent some changes during and after the time MTBE was used in gasoline.  OSHA initially required distribution of MSDSs to the manufacturing industry, and expanded coverage in 1987 to apply to all industries where employees potentially were exposed to hazardous chemicals.  77 Fed. Reg. 17574, 17577 (Mar. 26, 2012).  In 2012, after gasoline no longer included MTBE, OSHA standardized the format for MSDSs, which included a non-mandatory section on ecological information. *Id.* at 17686.  The regulations now refer to MSDSs as "safety data sheets." *Id.* at 17577.

required for MTBE gasoline.   SAC ¶ 291.   Just as the Court found that the initial UTPCPL allegations constituted improper group pleading and were "simply too vague as to each defendant under *Twombly* and its progeny to state a claim," the Court should dismiss Count VI on the same basis.   *In re MTBE*, 2015 WL 4092326, at *5.

**A.   The MSDSs Did Not Influence Purchasing Decisions.**

The Commonwealth's claims also fail because the MSDSs at issue were not advertisements, did not influence purchasing decisions, and were not intended for retail customers.   Under the UTPCPL provisions at issue here, the Commonwealth must show that a Defendant's statement "actually deceives or has a tendency to deceive a substantial segment of its audience" and is "likely to make a difference in the purchasing decision."   *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 445-46 (Pa. 2001).   In other words, the Commonwealth must plead facts showing that Defendants' allegedly unfair or deceptive MSDSs likely made a difference in inducing customers to buy Defendants' products.

Beyond conclusory allegations that Defendants' MSDSs were used to market MTBE gasoline, the SAC is bereft of allegations explaining how the MSDSs served as advertisements or possibly could have impacted purchasing decisions.   This is not surprising given that MSDSs generally are provided to buyers *after* a purchase.   Pursuant to OSHA regulations, manufacturers must provide MSDSs "*with their initial shipment*" of a chemical or product and then, subsequently, if an MSDS is updated.   29 C.F.R. § 1910.1200(g)(6)(i) (emphasis added).   In addition, federal regulations do not require MSDSs to be provided to retail customers, and the Commonwealth makes no allegations that they were.   The Commonwealth cannot plausibly contend that gasoline consumers were misled or confused by documents they did not receive.

*See In re MTBE*, 2015 WL 4092326, at *5 ("Commonwealth does not allege [comments in UTPCPL claim] were directed at consumers").

Furthermore, the Commonwealth makes only conclusory statements, supported by no facts, that the MSDSs deceived anyone else about MTBE gasoline or that the MSDSs somehow "interfered with legitimate trade and commerce" by Defendants' competitors or "caused and facilitated the widespread introduction, acceptance, distribution and sale of MTBE gasoline." SAC ¶ 295. The Commonwealth has alleged no facts that the MSDSs had any impact on anyone's purchasing decision. As the Court has noted, "mere conclusory statements…do not suffice." 2015 WL 4092326, at *2 (citing *Iqbal*, 556 U.S. at 678).

**B.      The MSDSs Did Not Contain False Statements.**

Quite apart from the problem that the MSDSs here were not used as advertisements, did not influence purchasing decisions, and were not directed to retail customers, the Commonwealth's claim does not fit within any of the relied-on subsections of the UTPCPL. The Commonwealth strains, and fails, to fit its allegations into one of four UTPCPL subsections:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
>
> (viii) Disparaging the goods, services or business of another by false or misleading representation of fact; and
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

SAC ¶ 395; 73 P.S. §§ 201-2(4)(v), (vii), (viii), (xxi). The Commonwealth's allegations fail to state a valid claim under any of these subsections.

This Court already has found that claims brought under § 201-2(4)(v) "require allegations

9

of false advertising" and "false information."  *In re MTBE*, 2015 WL 4092326, at \*5 (citing *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009)).   To set forth a claim under subsection (v), a plaintiff must allege that defendant's representation "qualif[ies] as advertising" and that it is false.  *Seldon*, 647 F. Supp. 2d at 466; *see also Karlsson v. FDIC*, 942 F. Supp. 1022, 1024 (E.D. Pa. 1996) (dismissing UTPCPL 201-2(4)(v) claim where "Plaintiffs have failed to allege any misrepresentation of fact contained in Defendants' advertising"), *aff'd*, 107 F.3d 862 (3d Cir. 1997).   The SAC does not plausibly allege that the MSDSs were advertisements, nor identify any false representation of fact about MTBE or gasoline containing MTBE within the MSDSs.  Its claims under § 201-2(4)(v) therefore should be dismissed.

Likewise, the Commonwealth also fails to properly plead a claim against Defendants under § 201-2(4)(vii), which requires a false representation that goods or services are "of a particular standard, quality or grade" or of "a particular style or model."  As with subsection (v), a plaintiff bringing claims under subsection (vii) must plead and prove an affirmative false representation of fact.  *See Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 385 (E.D. Pa. 1998) (omissions do not suffice where "the plain language of [§§ 201-2(4)(v) & (vii)] requires an affirmative representation as a predicate for liability").  Again, the Commonwealth has not identified any affirmative falsehood in any Defendant's MSDS – it alleges only that information was "omitted."  *See* SAC ¶¶ 275-95, 392-402.  The claims brought under § 201-2(4)(v) and (vii) should be dismissed.

**C.      The MSDSs Do Not Disparage the "Goods, Services or Business of Another."**

Without identifying any facts supporting its claim, the Commonwealth alleges that the MSDS Defendants violated UTPCPL subsection (viii), 73 P.S. § 201-2(4)(viii), which requires the Commonwealth to plead that Defendants "[d]isparag[ed] the goods, services or business of

another by false or misleading representation of fact."  Pennsylvania courts consistently define "disparagement" as "'the false and malicious representation of the title or quality of another's interest in goods or property.'"  *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (quoting *Triester v. 191 Tenants Ass'n,* 272 Pa. Super. 271 (1979)).

As a threshold matter, a plaintiff must identify a statement concerning the business of another.  *Id.* (quotations omitted); *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 566 (3d Cir. 2003).  To qualify as "disparagement," the statement must "on its face [be] directed against the goods or products" of a competitor.  *Knit With v. Knitting Fever, Inc.*, 2010 WL 3792200, at *7 (E.D. Pa. Sept. 28, 2010) (quoting *U.S. Healthcare, Inc. v. Blue Cross,* 898 F.2d 914, 924 (3d Cir.1988)).  The Commonwealth cannot get past that threshold.  It does not identify any statement, much less a disparaging one, that is directed, on its face, against any business's ethanol or other alternative fuel products in any MSDS.  It does not cite a single statement in any MSDS that qualifies as a "representation of the title or quality of another's interest in goods or property" or any kind of "false and malicious representation" about ethanol or other alternative fuels.  *Pro Golf*, 809 A.2d at 246.  Instead, it appears to premise its subsection (viii) claim on allegations that Defendants' MSDSs somehow "gave MTBE gasoline an unfair competitive advantage over ethanol and other alternative fuels."  SAC ¶ 292.  That, however, is not disparagement.  *See Knit With*, 2010 WL 3792200, at *7 (noting that "no reasonable juror" could find that statements unrelated to the claimant, or to the goods and services it provided, entitle it to recovery).  Accordingly, the § 201-2(4)(viii) claim based on the MSDSs is fundamentally flawed and should be dismissed.

**D.     The "Catch-All Provision" Claim Fails Because the SAC Does Not Allege How the MSDSs Likely Caused Confusion.**

The Commonwealth once again purports to bring a claim under the so-called "catch-all" provision of the UTPCPL, 73 P.S. § 201-2(4)(xxi), which requires a plaintiff to satisfy the elements of common-law fraud or otherwise allege deceptive conduct in order to state a valid claim.[9] *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 463 (E.D. Pa. 2013); *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010). The SAC, however, does little to improve upon the prior complaint, because the Commonwealth still fails to plead "specific information" about how the MSDSs "create[d] … a likelihood of confusion or of misunderstanding." *In re MTBE*, 2015 WL 4092326, at *5 (quotations omitted).

To state a claim under the "catch-all" provision, a plaintiff must plead that a defendant committed "a deceptive act that is likely to deceive a consumer acting reasonably under the circumstances." *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014). This deception must be "an intentional misleading by falsehood spoken or acted." *Afontanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (dismissing UTPCPL claim where "[p]laintiffs have not alleged that HSBC Services engaged in any conduct that could be described as deceptive"); *Goleman v. York Int'l Corp.*, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3, 2011) ("[a] plaintiff must plead facts alleging a specific deceptive act rather than a general failure to disclose information"); *Post v. Liberty Mut. Ins. Grp.*, 2014 WL 2777396, at *4 (E.D. Pa. June 18, 2014). The Commonwealth continues to ignore this line of case law—as well as this Court's prior order—and offers no specific factual allegations "to 'nudge[ ] the[ ] claim

---

[9] As demonstrated more fully *infra*, at § III.C, to assert a claim under the "catch-all" provision based on MSDSs that predate the 1997 amendment (expanding that provision's scope to "deceptive," rather than only "fraudulent," conduct), a plaintiff must plead all the elements of common-law fraud. *Moore v. Angie's List, Inc.*, 2015 WL 4669209, at *12 (E.D. Pa. Aug. 7, 2015). The Commonwealth has not met that burden here.

across the line from conceivable to plausible.'" *In re MTBE*, 2015 WL 4092326, at *5 (citing

*Twombly*, 550 U.S. at 570). The SAC makes conclusory statements about the purported impact

on consumers, but nowhere in the 531 paragraph SAC does the Commonwealth allege how the

MSDSs "'create[d] [for consumers, Pennsylvania residents, or the Commonwealth] a likelihood

of confusion or of misunderstanding' under the catchall provision." *Id.* (citing 73 P.S. § 201-

2(4)(xxi)).[10]  Count VI should be dismissed.

**III.   COUNT VII FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF HAS NOT IDENTIFIED ANY DECEPTIVE OR MISLEADING CONDUCT.**

In Count VII, Plaintiff has failed to specify the subsection(s) of the UTPCPL allegedly

violated or the statements which were supposedly false and deceptive.  Nor does Plaintiff

identify which count in the SAC applies to Exhibit 1, an American Petroleum Institute advocacy

piece addressed only at ¶¶ 267 and 274.  Defendants should not be required to guess what

allegedly wrongful conduct is at issue.  These deficiencies alone merit dismissal. *See Loften v.*

*Diolosa*, 2008 WL 2994823, at *8 (M.D. Pa. July 31, 2008) (dismissing claim that "failed to

articulate the conduct of each Defendant alleged to constitute a violation of the UTPCPL," and

did not allege "the particular provisions of the UTPCPL violated by a particular Defendant"); *see*

---

[10]  The SAC provides no allegations of any specific fraudulent or deceptive behavior directed toward a Pennsylvania consumer, which is not surprising given that MSDSs were not directed to consumers.  *See supra* § II.A (discussing OSHA requirements).  The Commonwealth merely alleges that the MSDS Defendants "asked customers who resold or distributed MTBE and MTBE gasoline to furnish copies of the MSDS to their respective downstream handlers and customers." SAC ¶ 275.  The Commonwealth never alleges that consumers actually read the MSDS or that they influenced anyone's gasoline purchases.  Moreover, the Commonwealth offers only speculative conclusions that Pennsylvania consumers (or anyone else) acted or refrained from action due to the MSDSs.  As noted above, MSDSs generally were provided to bulk purchasers only *after* they made the decision to purchase gasoline with MTBE.  Thus, the MSDSs would not have created confusion or misunderstanding for anyone, including consumers, looking to purchase gasoline.  *See supra* § II.A.

*also In re MTBE*, 2008 WL 2676278, at \*5 (S.D.N.Y. July 8, 2008) (complaint "so lacking in specificity that it fails to give defendants sufficient notice of the grounds for the claim….").

## A.   The "Government Gas" Ad Is Non-Actionable Political Speech.

The Commonwealth apparently predicates part of its UTPCPL claim on a 1990 political advocacy piece paid for by the American Petroleum Institute as part of a lobbying campaign against legislation that would have established a federal ethanol mandate.  SAC ¶¶ 267, 274 & Ex. 1.  Although far from clear, it appears that the Commonwealth claims that this 25-year-old ad "disparag[ed] the goods, services or business of another" – presumably ethanol producers – "by false or misleading representations of fact."  73 P.S. § 201-2(4)(viii).

The "Government Gas" ad did not seek to sell consumers a product or service.  Rather, it was a political advocacy statement – a paid "op-ed" piece – encouraging citizens to oppose an ethanol mandate in the 1990 Clean Air Act Amendments.  Indeed, the closing line states, "If you agree, please ask your U.S. Representative to reject 'Government Gas' amendments to the Clean Air Act."  SAC, at Ex. 1.  The piece therefore falls outside the ambit of the UTPCPL, which applies only to actions taken in the conduct of "trade or commerce," not political speech.  73 P.S. § 201-2(3) ("trade" and "commerce" mean "the advertising, offering for sale, sale or distribution of any services and any property…, article, commodity or thing of value …").[11]

Further, no liability can attach to efforts to influence legislators or regulators for the purpose of encouraging government action because of the First Amendment right to petition the

---

[11] *Accord* Restatement (Third) of Unfair Competition § 2, cmt. a (utility company flier stating that "nuclear power plants are safe, clean, and economical and that use of nuclear energy reduces the nation's dependence on foreign energy sources" falls outside scope of unfair competition laws); *Choose Energy, Inc. v. Am. Petroleum Inst.*, 87 F. Supp. 3d 1218, 1222 & n.25 (N.D. Cal. 2015) (API political ads not actionable under Lanham Act because "[w]hile API may be financed by or represent—in some capacity—corporations that sell petroleum, … no individual statements in API's political campaign materials … advertise the sale of petroleum to consumers").

government. This bedrock principle was recognized in *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965), and *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961). Although *Noerr-Pennington* protection originated in antitrust litigation, it applies with equal force to other kinds of claims, including claims under the UTPCPL. *Klatch-Maynard v. Sugarloaf Twp.,* 2010 WL 5789390, at *5 (M.D. Pa. Nov. 8, 2010) ("courts have now expanded *Noerr-Pennington* immunity far beyond the narrow confines of anti-trust litigation"); *Eiser v. Brown & Williamson Tobacco Co.*, 2005 WL 1323030 (Phila. Comm. Pl. Feb. 1, 2005) (in case involving UTPCPL claim, evidence of "Defendant's lobbying and advocacy activity" ruled "clearly inadmissible as violative of the Defendant's First Amendment rights"); *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir. 1988) (applying *Noerr-Pennington* to bar claims for civil conspiracy, tortious interference and malicious use of process); *VIM, Inc. v. Somerset Hotel Ass'n,* 19 F. Supp. 2d 422, 430 (W.D. Pa. 1998) (*Noerr-Pennington* barred claims for civil conspiracy, wrongful use of civil process, abuse of process and intentional interference with contractual and prospective business relationships).

Here, the Commonwealth's attempt to turn political advocacy into a UTPCPL violation is no different than the *Noerr* plaintiffs' futile effort to turn a public relations campaign geared at influencing legislation into a Sherman Act offense. In *Noerr*, the plaintiffs alleged that railroads conspired to destroy the long-haul trucking business by "conduct[ing] a publicity campaign against the truckers designed to foster the adoption and retention of laws and law enforcement practices destructive of the trucking business, to create an atmosphere of distaste for truckers among the general public, and to impair the relationships existing between truckers and their customers," a campaign plaintiffs described as "vicious, corrupt, and fraudulent." 365 U.S. at 129. The Supreme Court nevertheless held that the claims were barred, holding that "a publicity

campaign to influence governmental action falls clearly into the category of political activity." *Id.* at 140-41.  As the Court further noted, "[i]t is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon the interests of the target of that campaign."  *Id.* at 143.  Like the Sherman Act, the purpose of the UTPCPL is to regulate commerce, not political speech.  Allowing the Commonwealth's claim to go forward based on a political advocacy piece would trample on a fundamental freedom protected by the Bill of Rights.  *Id.* at 137-38.

Nor does the Commonwealth identify a single untrue or deceptive statement in the "Government Gas" ad.  It makes no reference whatsoever to MTBE, groundwater, or any of the Defendants.  And, as noted above, Plaintiff fails to identify which statements are supposedly false and deceptive or how they violate the UTPCPL, which once again requires dismissal.

Finally, none of the Defendants published the "Government Gas" piece.  It was placed by API, a trade association to which certain Defendants belonged at certain times.  Membership in a trade association cannot form the basis of legal liability because it would violate the First Amendment right to freely associate and petition the government.  *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1289-91 (3d Cir. 1994).  The "Government Gas" piece is not actionable as a matter of law and any UTPCPL claim based on it should be dismissed.

**B.     The Statements Attributed to Shell, Conoco and Others Are Not Actionable Because They Are Not False or Deceptive.**

The Commonwealth further alleges that statements made to the press by personnel of certain Defendants in connection with their launches of emissions-reducing gasolines in 1989 and 1990 violated the UTPCPL because those statements "failed to disclose the significant environmental dangers that MTBE and MTBE gasoline posed to the public and private water supplies in the event of a spill or leak of MTBE or MTBE gasoline...."  SAC ¶ 267.  Thus, the

Commonwealth's complaint is not that the gasolines did not reduce emissions or that any of the statements themselves were false; rather, the Commonwealth alleges that, when asked by the press about the emissions benefits of their gasolines, the company representatives should have discussed all alleged risks associated with spills of their products to present a "fair and not-misleading" picture.  SAC ¶ 271-72.  These allegations fail to state a claim under the UTPCPL.

First, although Count VII is asserted against ConocoPhillips, Valero, ExxonMobil, Marathon, Shell and Sunoco, and alleges that their "public statements and marketing of their respective MTBE gasoline" were supposedly deceptive (SAC ¶ 405), the SAC does not identify any public or marketing statement at all by Valero, ExxonMobil, Marathon or Sunoco.  This failure alone requires dismissal of Count VII as to those four defendants.[12]

As to Conoco and Shell, only one remark, contained in a May 1990 *Philadelphia Inquirer* article, is attributed to Conoco:

- "There is no doubt about it," said Clayton Adams, a spokesman for Conoco, "the future is in gasolines, in fuels that are more environmentally compatible."  SAC ¶ 269; *see also Decl. of Lisa A. Gerson* (Gerson Decl.), Ex. 1 (attaching cited article).

Three remarks are attributed to Shell:

- Shell vice president Steve Miller was quoted in the same May 1990 *Philadelphia Inquirer* article stating, "But we came to the conclusion that the customer now . . . really wanted an environmentally enhanced fuel." *Id.*;

- Shell's president, Frank H. Richardson, in a quote from an April 1990 *New York Times* article, described Shell's SU2000E gasoline as "an important step in the right direction" for cleaner air.  SAC ¶ 270; *see also* Gerson Decl. Ex., 2 (attaching cited article); and

- Richardson was quoted in an April 1990 *Oil & Gas Journal* article, stating that "This new gasoline reflects Shell's commitment to make environmental considerations a priority in development of our new products and processes."  SAC ¶ 270; *see also* Gerson Decl., Ex. 3 (attaching cited article).

---

[12] This Court previously held that the failure to make specific allegations as to each defendant merited dismissal. *In re MTBE*, 2015 WL 4092326, at *5 (S.D.N.Y. 2015).  Having now failed a second time, the UTPCPL claim should be dismissed with prejudice.

The Commonwealth never specifies the particular sections of the UTPCPL these statements allegedly violate, and it makes only generalized allegations against the other Defendants.  SAC ¶ 405; *see also supra* n.12 (group pleading not sufficient).  Moreover, none of the quoted statements from the news articles is false, misleading or actionable, nor are they advertising.[13]  *Thompson v. Glenmede Trust Co.*, 2003 WL 1848011, at *1 (Pa. Comm. Pl. Feb. 18, 2003) ("individual representations" by corporate employees "do not constitute 'advertising' as intended by the UTPCPL").  Each statement reflects the speaker's opinions on what consumers wanted fuels to be – "environmentally enhanced" or "environmentally compatible" – or the air quality benefits provided by the new gasolines.  None of the quotes even mentions MTBE.  Each of the speakers quoted in these 25-year-old articles was referencing the positive impact of new gasoline products on air quality and tailpipe emissions, and the Commonwealth does not plead that the quoted statements are false, inaccurate or even misleading.  Nor could it; the Commonwealth itself required every gasoline dispenser from which oxygenated fuel – including MTBE gasoline – was sold to carry a "legible and conspicuous label which contains the following statement: 'The gasoline dispensed from this pump is oxygenated and will reduce carbon monoxide pollution from motor vehicles.'"  25 Pa. Code § 126.104.[14]

Recognizing its predicament, the Commonwealth tries to make its claim one of omission, arguing that the statements are actionable because they did not include additional information needed to present a "fair and not-misleading" picture, *i.e.*, that MTBE gasoline if spilled "could contaminate and create taste and odor problems in public drinking water supplies."  SAC ¶ 271.

---

[13] *See Seldon*, 647 F. Supp. 2d at 466 ("Pennsylvania state and federal courts have ruled that [§§ (v) and (ix)] apply only to claims of false advertising"); *Mertz v. Donzi Marine, Inc.*, 2007 WL 710263*8 (W.D. Pa. Mar. 6, 2007) (subsections (v), (vii) and (ix) "address false advertising"); *Thompson*, 2003 WL 1848011, at *1 (subsection (vii) "relates to claims for false advertising").

[14] The U.S. EPA adopted an identical regulation.  40 C.F.R. § 80.35.

Sections (v) and (vii) of the UTPCPL, however, require affirmative false representations of fact; alleged omissions do not suffice. *Weinberg*, 777 A.2d at 446 (advertisement must be false); *Weisblatt*, 4 F. Supp. 2d at 385 ("the plain language of [sections (v) and (vii)] requires an affirmative representation as a predicate for liability"); *Commw. v. Hush-Tone Indus., Inc.*, 4 Pa. Commw. 1, 21 (1971) ("to establish a violation of Section 201-4(v)…, the Attorney General must show… that defendants' advertisement is a false representation of a fact"); *Karlsson*, 942 F. Supp. at 1023 (dismissing UTPCPL claim where "Plaintiffs have not articulated any misrepresentation of fact contained in Defendants' advertising"), *aff'd*, 107 F.3d 862 (3d Cir. 1997); *Goleman*, 2011 WL 3330423, at *8 ("[a] plaintiff must plead facts alleging a specific deceptive act rather than a general failure to disclose information"). The law does not require "complete disclosure" of all of a product's myriad qualities or characteristics in advertising, much less at a press conference or interview.

Moreover, none of the statements provides specific facts, qualities or data regarding the characteristics of gasoline containing MTBE. Even if the quoted statements could be deemed "advertising," generalized statements or opinions about the benefits or quality of a company's products, known as "puffery," are not actionable under the UTPCPL. *Sicherman v. Nationwide Life Ins. Co.*, 2012 WL 1122737 (E.D. Pa. Apr. 4, 2012) (dismissing UTPCPL claim based on slogan "Nationwide is on your side"); *Gidley v. Allstate Ins. Co.*, 2009 WL 4893567 (E.D. Pa. Dec. 17, 2009) (dismissing UTPCPL claim based on slogan "You're in good hands with Allstate"). And indeed, the Pennsylvania Supreme Court long ago held that statements just like those the Commonwealth cites – *e.g.*, that a product is "safe," or "dependable" – are not actionable. *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (affirming dismissal of misrepresentation claims for allegedly defective helicopter based on brochure

stating that "you are assured of a safe, dependable helicopter" that was "easy to operate," because such statements were "mere 'puffing'"); *Sabol v. Ford Motor Co.*, 2015 WL 4378504 (E.D. Pa. July 16, 2015) (dismissing warranty claim because advertising statements that car was "safe" and "reliable" were not objectively measurable).  Count VII should be dismissed.

**C.     The Commonwealth Cannot State a Claim Under the "Catch-All" Provision Because It Cannot Satisfy the Standard for Pleading Fraud.**

Count VII further fails to the extent premised on the UTPCPL "catch-all" provision, 73 P.S. § 201-2(4)(xxi).  Although the catch-all provision *currently* defines "[u]nfair methods of competition" and "unfair or deceptive acts or practices" to include "[e]ngaging in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding," 73 P.S. § 201-2(4)(xxi) (emphasis added), the amendment adding "deceptive" conduct as a basis for liability was not enacted until December 1996 and did not become effective until February 2, 1997. *See* Act of Dec. 4, 1996, P.L. 906, No. 146, § 1.  Prior to that date, the catch-all provision proscribed only "fraudulent conduct" (*Geesey v. CitiMortgage, Inc.*, 2015 WL 5714494, at *16 (W.D. Pa. Sept. 29, 2015)), and because the "deceptive conduct" provision does not apply retroactively, Plaintiff was required to plead the elements of fraud, which it has failed to do. *Yenchi v. Ameriprise Fin. Inc.*, 2015 WL 5430353 at *9 (Pa. Super. Sept. 15, 2015) ("[t]he amended language of Section 201-2(4)(xxi) created a new, substantive cause of action based upon 'deceptive conduct'" that may not be applied retroactively) (citations omitted). *Cf.* 1 P.S. § 1953 (new provisions of amended statute "shall be construed as effective only from the date when the amendment became effective").

For a claim arising from pre-1996 amendment conduct to be actionable under the catch-all provision, a plaintiff must plead and prove all the elements of common-law fraud. *Moore*, 2015 WL 4669209, at *12; *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d

20

145, 152 (Pa. Super. 2012) ("[p]re-amendment decisions from this Court relied on the plain language of the UTPCPL to hold proof of common law fraud was necessary to state a claim under the catch-all provision").[15]

Under Pennsylvania law, a plaintiff alleging fraud must plead and prove: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Moore*, 2015 WL 4669209, at *12 (citation omitted). In addition, "Rule 9(b) requires heightened particularity in fraud pleadings to place a defendant on notice of the precise misconduct with which he or she is charged and to safeguard a defendant against spurious charges of immoral and fraudulent behavior." *Id.* (internal citation and quotation marks omitted). A plaintiff may satisfy Rule 9(b) by pleading "'the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

Here, the only conduct by any Defendants that the Commonwealth specifically identifies in the SAC as being allegedly deceptive, unfair or misleading are a few statements attributed to representatives of a few Defendants in newspaper articles and a political advocacy piece paid for by a third-party trade association, all of which were published in 1990 (*see* SAC ¶¶ 269-70, 274 & Exh. 1), long before the Pennsylvania legislature added "deceptive" conduct as a basis for

---

[15] Although there is some disagreement among Pennsylvania federal courts as to whether Rule 9(b) applies to post-1996 amendment catch-all claims alleging "deceptive" conduct (*see* Memo. of Law in Support of Defs.' Motion to Dismiss, at 9 n.2), there is no question that Rule 9(b) applies to pre-1997 conduct. *Gidley*, 2009 WL 4893567, at *4 (catch-all provision "requires pleading all of the elements of common law fraud with particularity if plaintiffs allege fraudulent conduct"); *Seldon*, 647 F. Supp. 2d at 469 (same).

liability under the UTPCPL. Thus, the Commonwealth must plead and prove that these pre-1997 activities satisfy the elements of common-law fraud, which it cannot do because it cannot allege that the statements at issue were (1) material to any transaction at issue; (2) made falsely; (3) made with the intent to mislead; (4) justifiably relied upon by any Pennsylvania resident or consumer; or (5) the proximate cause of any injury alleged in the SAC. Instead, all the Commonwealth can say is that, when making the statements attributed to them, the companies' representatives failed to disclose alleged "significant environmental dangers that MTBE and MTBE gasoline posed to the public and private water supplies in the event of a spill or leak of MTBE or MTBE gasoline" (SAC ¶ 267), and should have discussed the alleged risks associated with environmental releases of the products to present a "fair and not-misleading" picture. SAC ¶ 271-72. But that is not what the law requires; "a general failure to disclose information" is insufficient to state a claim under the catch-all provision. *Goleman,* 2011 WL 3330423, at *8.

Moreover, even if other allegations in the SAC could be construed to plead the elements of common law fraud, the Commonwealth has not met the heightened pleading standard that fraud claims require pursuant to Rule 9(b). The Commonwealth has failed to identify any specific intentionally false statement(s), material transactions, justifiable reliance, or proximate cause as to each Defendant, or any Defendant, against which it asserts the claim. In sum, insofar as the Commonwealth relies on the catch-all provision of the UTPCPL, Count VII of the SAC fails to state a claim upon which relief can be granted.

## IV. THE COMMONWEALTH'S STORAGE TANK AND SPILL PREVENTION ACT CLAIM FAILS BECAUSE THE FUND HAS NOT PLED IT SOUGHT INSURANCE INFORMATION FROM DEFENDANTS.

Count IX alleges that the Insurance Defendants violated the STSPA. SAC ¶¶ 521–23. As in its first complaint, the Commonwealth claims the Insurance Defendants violated the

STSPA by "[f]ailing to disclose the existence and potential applicability of their various insurance policies." *Id.* ¶ 530(b).  The amended STSPA claim fails for the same reason that the Court dismissed its initial claim – the Commonwealth has not pled facts sufficient to establish that Insurance Defendants were obligated to disclose their insurance policies.

In dismissing this claim previously, the Court held that the STSPA—and specifically 25 Pa. Code § 977.32—does not impose an affirmative obligation to disclose insurance policies. Instead, as the Court explained, *Gnagey Gas & Oil Co. v. PA Underground Storage Tank Indemnification Fund*, 82 A.3d 485 (Pa. Commw. Ct. 2005) "confirms what the plain language of Section 977.32 states—*disclosure is required upon a 'request' from the Fund*." *In re MTBE*, 2015 WL 2354582, at *5 & n.67 (emphasis added).  Because the initial complaint made no allegation of such a request, the Court dismissed the STSPA count without prejudice, giving the Commonwealth an opportunity to cure this deficiency. *Id.* at 5.

The SAC reasserts the STSPA count, but again contains *no* allegation that the Fund asked any Defendant about its private insurance coverage.  The only additional allegation offered by the Commonwealth is that the Fund's third-party claim administrator, ICF International ("ICF"), made an inquiry into "subrogation" in processing Fund applications.  *See* SAC ¶ 526 (ICF "contacts the Insurance Defendant . . . and requests information . . . with respect to . . . the following areas: 1) description of tanks; 2) site description; 3) description of loss; and 4) subrogation."); *see also id.* ¶¶ 527-30 (alleging that ICF investigated potential subrogation).

A mere reference to "subrogation," however, absent any specific inquiry regarding insurance, did not impose a duty on the Insurance Defendants to disclose their insurance policies. Indeed, this Court has already recognized that there is no "implied duty on the Insurance Defendants to protect the Commonwealth's subrogation rights." *In re MTBE*, 2015 WL

2354582, at *5.

If ICF had inquired about the Defendants' insurance policies, the Commonwealth could have alleged as much in the SAC. The reality, however, is that it would have been perfectly rational for ICF *not* to have asked about private insurance. The absolute pollution exclusion, which became a standard part of commercial general liability insurance policies in the mid-1980s, "clearly and unambiguously excludes [an] owner's claim for coverage due to harm caused by gasoline leakage into the soil." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1234 (Pa. Commw. Ct. 2002). Moreover, a traditional subrogation claim does not involve insurance at all. Rather, it consists of the Fund standing in the shoes of a UST owner to bring a claim against a third-party tortfeasor who caused a UST release. *See, e.g., Underground Storage Tank Indemnification Fund v. Morris & Clemm, PC*, 107 A.3d 269, 270 (Pa. Commw. Ct. 2014) (discussing the Fund protecting its subrogation interests when a third party caused a UST release).

As with the Commonwealth's initial complaint, nothing in the SAC makes it ***plausible*** that the Fund or ICF actually asked about the Defendants' insurance policies so that the Fund could protect its subrogation rights. *See In re MTBE*, 2015 WL 2354582, at *5; *see also id.* at *3 (explaining that, in order to state a claim, "a court must find that the plaintiff's complaint has 'nudged' his or her claims 'across the line from the conceivable to the plausible'") (internal citations omitted). Because the Commonwealth has failed once again to make the allegations necessary to support this claim, Count IX should be dismissed with prejudice. *See In re Hyperion Secs. Litig.*, 1995 WL 422480, at *8 (S.D.N.Y. July 14, 1995) ("[after] filing a second consolidated amended complaint, plaintiffs have taken more than two bites at an apple they have not been able to get their teeth into.... Accordingly, the second consolidated amended complaint is dismissed without leave to replead") (internal quotation marks omitted).

## V.   THE COMMONWEALTH IMPROPERLY CONTINUES TO ALLEGE PUBLIC NUISANCE BASED ON THE MANUFACTURE OR DISTRIBUTION OF MTBE GASOLINE.

In its July 2, 2015 Opinion & Order, the Court dismissed Plaintiff's public nuisance claim with prejudice "to the extent it is premised on defendants' manufacture or distribution of MTBE or MTBE gasoline." *In re MTBE*, 2015 WL 4092326, at *4 ("nuisance actions cannot lie against defendants who allegedly contribute to MTBE contamination merely as refiners, manufacturers, marketers, distributors, or suppliers"); *see also id.* (public nuisance claim fails against defendants that did not own or operate release sites). Despite this ruling, Count III has not been amended. The Commonwealth continues to plead public nuisance against all MTBE defendants, regardless of whether such defendants owned or operated service stations, and continues to allege liability based on refining, compounding, formulation, marketing, distribution and supply. SAC ¶¶ 372-74. Plaintiff should be ordered to properly amend its complaint to conform to the Court's prior Order.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss Counts VI, VII and IX of the SAC, and Count III to the extent previously ordered, with prejudice. Dismissal with prejudice is appropriate because the Commonwealth has repeatedly failed to adequately plead these claims and further amendment would be futile.[16] The UTPCPL simply is not designed to address the sorts of claims made by the Commonwealth, and the Commonwealth has not – and cannot – make the necessary allegations to sustain its STSPA claim.

---

[16] *See Carvel v. Scarpino*, 2010 WL 5174392, at *10 (S.D.N.Y. Dec. 16, 2010) (Scheindlin, J.) (dismissed with prejudice where amended complaint "was drafted after this Court instructed plaintiff on what was needed to state a cognizable conspiracy claim. Despite this precise direction, plaintiff has again failed to plead a plausible conspiracy claim. It does not appear that plaintiff will ever be able to do so"); *Lee v. United States*, 1999 WL 335830, at *2 (S.D.N.Y. May 25, 1999) (Scheindlin, J.) (defendants dismissed with prejudice where plaintiff filed an "equally incomprehensible" amended complaint).

January 8, 2016                    By: _____
New York, New York                     James A. Pardo
                                       Lisa A. Gerson
                                       MCDERMOTT WILL & EMERY LLP
                                       340 Madison Avenue
                                       New York, NY  10017-4613
                                       Tel. (212) 547-5400
                                       Fax  (212) 547-5444

                                       *Counsel for Defendants Exxon Mobil Corporation
                                       and ExxonMobil Oil Corporation, and on behalf
                                       of Defendants Listed on Attachment A to
                                       Defendants' Notice of Motion*