## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE; METHYL TERTIARY BUTYL ETHER | * | Master File No. 1:00-1898 |
| ("MTBE") PRODUCTS LIABILITY | * | MDL NO. 1358 (SAS) |
| LITIGATION | * | |
| | * | |
| This document relates to | * | |
| | * | |
| *Commonwealth of Pennsylvania, etc. v. Exxon* | * | |
| *Mobil Corporation, et al*, No.  1:14-cv-06228- | * | |
| SAS | | |

## MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S SECOND AMENDED COMPLAINT

**Table of Contents**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ....................................................................................................... 1

II.     STANDARD .............................................................................................................. 2

III.    ARGUMENT .............................................................................................................. 3

        A.      The Commonwealth is Entitled to Injunctive Relief under the UTPCPL ................. 4

                1.      The Commonwealth Has Properly Pleaded the Necessary Elements of a
                        Section 4 UTPCPL Claim. ................................................................................. 5

                2.      Under Section 4, Injunctive Relief to Restrain Future Illegal Conduct is
                        Available Based on Defendants' Past Unlawful Conduct. .............................. 6

                3.      The Commonwealth's Claim for Injunctive Relief is "Plausible" and Satisfies
                        the Pleading Standards Articulated in *Twombly* and *Iqbal*. ............................ 9

        B.      Count VI Sets Forth Viable UTPCPL Claims against the MSDS Defendants ........ 11

        C.      The SAC Properly Alleges That the MSDSs Were Advertisements and that They
                Influenced Purchasing Decisions .............................................................................. 12

        D.      Although the UTPCPL Does Not Require Pleading Affirmative False
                Representations of Fact, the SAC in Fact Pleads that Defendants' MSDSs
                Contained Such False Representations ...................................................................... 15

        E.      Defendants Are Incorrect in their Contention that the SAC Alleges that the
                Defendants' *MSDSs* Disparaged the Goods or Products of Another in Violation of
                the UTPCPL; the SAC in Fact Properly Allege that the Defendants' *Advertising*
                Disparaged Their Competitors' Products .................................................................. 17

        F.      The SAC Adequately Alleges that the MSDSs Created a Likelihood of Confusion
                or Misunderstanding ................................................................................................. 18

        G.      Defendants' Advertisements Disparaging Ethanol Are Not Protected Political
                Speech ....................................................................................................................... 20

        H.      The SAC Adequately Alleges that Certain Defendants Made False and
                Deceptive Public Statements about MTBE Gasoline ................................................ 21

        I.      The Commonwealth Is Not Required to Plead the Elements of Fraud under the
                Catch-All Provision of the UTPCPL ........................................................................ 22

        J.      Count IX Sets Forth a Viable Claim against the Insurance Defendants for
                Violations of the Storage Tank and Spill Prevention Act........................................ 23

IV.     CONCLUSION.......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Angermeir v. Cohen*,
  14 F. Supp.3d 134, 147 (S.D.N.Y. 2014) ...............................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................3, 9

*Com. by Zimmerman v. National Apartment Leasing Co.*,
  519 A.2d 1050 (Pa. Cmwlth. 1986) ......................................................................11

*Com., Office of Governor v. Donahue*,
  59 A.3d 1165, 1168 (Pa. Cmwlth. 2013) ................................................................9

*Com. v. McCoy*,
  962 A.2d 1160, 599 Pa. 599 (Pa. 2009) ..................................................................9

*Commonwealth by Zimmerman v. Bell Tel. Co.*,
  551 A.2d 602 (Pa. Cmwlth 1988) ...................................................................15, 16

*Commonwealth by Zimmerman v. Society of 28th Div., A.E.F., Corp.*,
  538 A.2d 76 (Pa. Cmwlth. 1987) .....................................................................15, 16

*Commonwealth v. Hush-Tone Industries, Inc.*,
  1971 WL 13030 (Pa. Cmwlth. 1971) ....................................................................16

*Commonwealth v. Monumental Properties, Inc.*,
  329 A.2d 812 (Pa. 1974) ...............................................................................13, 16

*Commw. v. Percudani*,
  844 A.2d 35 ............................................................................................... *passim*

*Commw. v. TAP Pharm. Prods, Inc.*,
  36 A.3d 1197, 1227 (Pa. Cmwlth. 2011), *vacated on other grounds,* 94 A.3d
  350 (Pa. 2014) ............................................................................................ *passim*

*Com. ex rel. Corbett v. Snyder*,
  977 A.2d 28 (Pa. Cmwlth. 2009) ......................................................................5, 6

*DiLucido v. Terminix Int'l*,
  450 Pa. Super. 393, 676 A.2d 1237 .....................................................................16

*Erickson v. Pardus*,
  551 U.S. 89 (2007)................................................................................................3

ii

*Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund*,
82 A3.d 485 (Pa. Cmwlth. 2013) ...........................................................................25

*Hockenberry v. Diversified Ventures, Inc.*,
2005 U.S. Dist. LEXIS 47808 (E.D. Pa. June 20, 2005) ......................................19

*Karlsson v. FDIC*,
942 F. Supp. 1022 (E.D. Pa. 1996) *affd.* 107 F.3d 862 (3d Cir. 1997)....................15

*Kuwait & Gulf Link Transportation Co. v. Doe*,
92 A.3d 41, 46-48 (Pa. Super. 2014) ....................................................................20

*In Re MTBE*,
July 2, 2015, Slip Op...............................................................................................1

*In Re MTBE*,
May 4, 2015, Slip Op...............................................................................................23

*In Re MTBE*,
May 4, 2015, Slip Op...............................................................................................1

*Rubenstein v. Dovenmuehle Mortg., Inc*,
2009 WL 3467769 (E.D. Pa. 2009) .......................................................................19

*Seldon v. Home Loan Services, Inc.*,
No. 07–4480, 2009 WL 2394182 (E.D. Pa. Aug. 4, 2009) (Yohn, J.) ...................19

*Seldon v. Home Loan Servs., Inc.*,
647 F. Supp.2d 451 (E.D. Pa. 2009) ......................................................................15

*United Health Group, Inc. v. State*,
2007 Minn.App. Unpub. ........................................................................................13

*Warren Gen. Hosp. v. Amgen, Inc.*,
643 F.3d 77 (3d Cir. 2011)........................................................................................2

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001) .........................................................................................23

*Weisblatt v. Minn. Mut. Life Ins. Co.*,
4 F. Supp.2d 371 (E.D. Pa. 1998) ..........................................................................15

**Statutes**

73 P.S. § 201-4.........................................................................................................4

73 P.S. § 201-5.........................................................................................................8

1 Pa.C.S. § 1922(1) ...................................................................................................................9

**Other Authorities**

16 CFR 238.0 .........................................................................................................................13

25 Pa. Code 977.32 ...........................................................................................................23, 24

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................................2

Fed. R. Civ. P. Rule 8(a)(2) ....................................................................................................3

Fed. R. Civ. P. Rule 8 .............................................................................................................3

Red. R. Civ. P. Rule 9(b) ......................................................................................................23

## I.      INTRODUCTION

On November 6, 2015, the Commonwealth filed its Second Amended Complaint ("SAC"). The SAC addresses the deficiencies identified by this Court when it granted Defendants' motions to dismiss Counts VI (Unfair Trade Practice and Consumer Protection Law (UTPCPL)) and IX (Storage Tank and Spill Prevention Act (STSPA)) of the First Amended Complaint.  The Court's Opinions and Orders provided that the dismissals were without prejudice to repleading each count. *See In Re MTBE*, July 2, 2015, Slip Op. at 18 ("leave to replead the UTPCPL claim is merited because . . . 'additional substantive information [could] cure the deficient pleading'"); *In Re MTBE*, May 4, 2015, Slip Op. at 18-19 ("the Commonwealth's claim that the Insurance Defendants violated Section 977.32 by failing to disclose additional insurance coverage for environmental remediation costs is dismissed with leave to replead").  The SAC adds considerable additional substantive information in support of the Commonwealth's claims and now should pass muster.

Nevertheless, Defendants' latest motion to dismiss argues that the SAC still fails to state a cause of action with respect to the UTPCPL and the STSPA. *See* Motion at 7-13 (Count VI - UTPCPL); 13-21 (Count VII - UTPCPL) and 22-25 (Count IX - STSPA). The Motion also argues that the injunctive relief authorized by the UTPCPL is not available under the facts of this case (Motion at 2-7) and the Commonwealth improperly repleaded its nuisance claim.  Motion at 25.  Each of these arguments is without merit.

The SAC addresses the issues in the Court's initial Opinion and Order by adding specific allegations regarding the conduct of each defendant charged with a UTPCPL violation.  The SAC's specific, well-pleaded facts also state a meritorious claim for injunctive relief authorized by the UTPCPL.  The SAC also amplifies the STSPA claims by specifically pleading that the Commonwealth investigated every claim filed by an Insurance Defendant and each Insurance

Defendant failed to properly respond to those investigations.  The SAC's specific, well-pleaded facts also support a meritorious claim for injunctive relief authorized by the UTPCPL. Defendants argue that an injunction is not available because they voluntarily ceased the claimed conduct years ago.  These assertions of fact by Defendants outside the complaint are, of course, improper in this a motion to dismiss.  But even if these factual claims are considered, Defendants' position ignores well-established Pennsylvania case law recognizing that injunctive relief under the UTPCPL may be awarded even though a defendant claims to have voluntarily ceased the challenged conduct.  Injunctive relief is particularly available when, as here, Defendants have not acknowledged their misleading conduct or entered into a voluntary compliance agreement that would enjoin the conduct in the future.

Finally, Defendants cite no authority for their argument that the Commonwealth should not be allowed to replead its public nuisance claim.  Since new defendants have been joined, the Commonwealth is entitled to preserve this claim for appeal by including it again in the SAC.[1]

For the reasons set forth below, Defendants' arguments are without merit, and their motion to dismiss should be denied.

## II.    STANDARD

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all well-pleaded allegations in the complaint, along with all reasonable inferences that can be drawn therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff.  *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Pinker v.*

---

[1]  In any event, the Court dismissed the Commonwealth's public nuisance claims *only* to the extent they were based on "refin[ing], compound[ing], formulat[ing], market[ing], and/or otherwise supply[ing] MTBE or MTBE gasoline."  July 2, 2015, Slip Op. at 3.

*Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" giving "the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not required, Rule 8 does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Commonwealth has more than met this standard in the SAC.

## III.   ARGUMENT

The Court's July 2, 2015, Opinion and Order applied the two pronged test established in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) to the Commonwealth's UTPCPL claims. As stated by the Court: "[T]he complaint [(1)] must provide a plausible factual basis to distinguish the conduct of each of the defendants,' and, more generally, (2) set forth allegations that 'plausibly give rise to an entitlement for relief.'" July 2, 2015, Slip Op. at 17 (citations omitted). The Court found that the First Amended Complaint did not contain adequate defendant-specific allegations, and did not adequately allege how defendants' conduct created the confusion or misunderstandings necessary for liability under the UTPCPL. *Id.*

The SAC cures any deficiency in this regard by alleging two types of conduct that both "plausibly give rise to an entitlement for relief" under the UTPCPL. First, the SAC alleges in detail how defendants' marketing and promotional material misleadingly disparaged alternative oxygenates, such as ethanol, in order to gain a competitive advantage for MTBE gasoline. SAC ¶¶ 239-40; 267, 273-74. Second, the SAC alleges in detail how defendants' marketing and

3

promotional material misrepresented or omitted information on the true environmental impacts of MTBE gasoline in order to gain a competitive advantage and greater profits.  SAC ¶¶ 237-240, 275-295, 396, 404-404.

The SAC also identifies specific defendants who engaged in misleading and confusing conduct, and the specific conduct of each such defendant.  The SAC, for example, now lists the specific Material Safety Data Sheets (MSDSs) at issue as published by specific defendants.  SAC ¶291, Table 1.  The SAC then alleges how each MSDS misrepresented and omitted material information.  SAC ¶ 275-76, 279, 284-85, 291-95.

The SAC also identifies the specific defendants who engaged in a marketing and promotional campaign to discredit alternatives to MTBE, including ethanol.  SAC ¶¶ 266-274 (identifying Defendants ARCO, ConocoPhillips, ExxonMobil, Marathon, Shell Oil and Sunoco).  The SAC, after describing the misrepresentations in and omissions from defendants' marketing and promotional materials, specifically alleges that defendants' conduct "was intended to and did deceive, mislead and confuse the public, including gasoline refiners, distributors, jobbers, retailers and consumers . . .."  SAC ¶ 397.

### A.      The Commonwealth is Entitled to Injunctive Relief under the UTPCPL

The UTPCPL "specifically contemplates issuance of an injunction as the primary form of relief in an action brought by the Attorney General in the public interest."  *Commw. v. TAP Pharm. Prods, Inc.,* 36 A.3d 1197, 1227 (Pa. Cmwlth. 2011), *vacated on other grounds,* 94 A.3d 350 (Pa. 2014).  Section 4 of the UTPCPL expressly authorizes the Attorney General to seek injunctive relief to restrain UTPCPL violations where such proceedings are "in the public interest" and where the Attorney General "has reason to believe" that a defendant "is using or is about to use any method, act or practice" declared unlawful by the UTPCPL.  73 P.S. § 201-4.

4

Section 4 "sets forth no express elements for injunctive relief beyond: 1) a person is believed to be using or about to use a practice declared unlawful by the CPL, and 2) proceedings would be in the public interest." *TAP,* 36 A.3d at 1236. Further, "the common law criteria for a permanent injunction" – such as proof of irreparable harm – "do not apply" where, as here, the basis for an injunction is statutory and is grounded on violations of the UTPCPL. *Id.* at 1238. Instead, when "the Commonwealth alleges a credible violation of the CPL," then "irreparable harm is presumed" and injunctive relief is appropriate. *Com. ex rel. Corbett v. Snyder,* 977 A.2d 28, 48 (Pa. Cmwlth. 2009). *Accord TAP,* 36 A.3d at 1236.

**1. The Commonwealth Has Properly Pleaded the Necessary Elements of a Section 4 UTPCPL Claim.**

The SAC properly asserts the two required elements for an actionable UTPCPL Section 4 enforcement claim. *See* SAC ¶¶ 266-295; 392-410. Specifically, the SAC details the ways in which Defendants committed unfair and deceptive actions and practices in violation of the UTPCPL by, among other things, repeatedly misrepresenting to gasoline refiners, distributors, jobbers, retailers and the general public the purported environmental benefits of MTBE gasoline, while understating or concealing its environmental hazards. *Id.* Based on the Defendants' consistent, deceptive promotion of MTBE as a safe, suitable and effective gasoline additive, the SAC specifically avers that "[t]he Pennsylvania Office of Attorney General has reason to believe" that Defendants' "omissions, misrepresentations, and practices relating to the marketing, promotion, distribution and sale of MTBE as a gasoline additive and MTBE gasoline as a cleaner fuel violated, and if repeated will violate, the UTPCPL." SAC ¶ 398; *see also ¶* 406. The Commonwealth further alleges that, based on their past conduct as set forth in detail in the SAC at ¶¶ 266-295, the Defendants, "[u]nless restrained, will likely engage in

5

methods, acts or practices which have a likelihood to deceive, mislead and confuse the public in violation of the UTPCPL and are contrary to the public's interest, thereby necessitating a permanent injunction to prevent and restrain such misconduct" by Defendants.  SAC ¶¶ 399, 407.

Thus, the SAC alleges facts demonstrating that based on Defendants' prior, wrongful conduct in violation of the UTPCPL, including the specific acts and practices set forth at ¶¶ 266-295, the Attorney General has reason to believe that "the offending conduct is likely to reoccur absent the grant of an injunction." *TAP,* 36 A.3d at 1172.  The SAC also makes clear that based on these facts, the "Office of Attorney General believes it to be in the public interest to bring this action" against Defendants to restrain any further violation of the UTPCPL.  SAC ¶¶ 400, 408.

### 2. Under Section 4, Injunctive Relief to Restrain Future Illegal Conduct is Available Based on Defendants' Past Unlawful Conduct.

The Commonwealth's Section 4 allegations are more than sufficient to support an injunction under Pennsylvania law, which clearly provides: "1) that an injunction can issue to restrain future conduct based on prior unlawful activity," and "2) that cessation of the offending conduct does not, in and of itself, bar a claim for injunctive relief." *TAP,* 36 A.3d at 1238.  *See also, Corbett,* 977 A.2d at 48 ("the CPL contemplates enjoining future conduct based on past improper conduct"); *Commw. v. Percudani,* 844 A.2d 35 (cessation of conduct does not preclude injunction and "case law indicates that the Commonwealth may pursue violations of the [UTPCPL] based on past illegal activities").

As the court noted in *TAP,* 36 A.3d at 1239, "[o]ur Supreme Court holds that the mere fact that an illegal practice has been abandoned does not necessarily render a controversy moot." (citing *Tamagno v. Waiters & Waitresses Union, Local No. 301,* 373 Pa. 457, 96 A.2d 145 (1953)).  And, as the Supreme Court in *Tamango* further explained, "even though the defendant

may give assurance that he will not err again it is for the court to say whether the complainant should be compelled to accept such assurance instead of insisting upon" injunctive relief.  *Id.*

Similarly, in *Percudani,* 844 A.2d at 45-46, the court held that the Commonwealth is entitled to pursue violations of the UTPCPL based on past illegal conduct, and accordingly denied the defendant's motion to dismiss the Commonwealth's claim for injunctive relief under Section 4.  The court noted that "several cases" in Pennsylvania had previously permitted the Commonwealth to enjoin future conduct based on past acts, and held that "limiting the Commonwealth's actions to ongoing activities" would frustrate the purposes of the UTPCPL.  *Id.*  Specifically, under the defendant's interpretation, "a party could simply avoid liability under the [UTPCPL] by discontinuing its actions even after proceedings are commenced and claim that the matter is moot," an "absurd" result that would "do little in the way of preventing unfair or deceptive acts or practices and compensating injured consumers."  *Id.* at 46.  "To allow a party to avoid liability for its actions by merely discontinuing its conduct would render the penalty provisions of the Law meaningless in their application."  *Id.*

Relying in part on *Percudani,* the court in *TAP* likewise held that an injunction was an appropriate remedy in an action brought by the Commonwealth under the UTPCPL based on the defendants' *prior* unlawful practices.  *TAP*, 36 A.3d at 1238-1244. The *TAP* court rejected the defendant's argument that "the record contains no proof of an ongoing threat of injury," and pointed out that "there is also no evidence that [defendant], in fact, ceased all its offending conduct and promised not to renew it.  To the contrary, [defendant] contended that all past activity was lawful and it did nothing wrong."  *Id.* at 1242.

The same is true here.  Defendants have made no effort whatsoever to guarantee that they will never again make false and misleading statements about the properties and environmental dangers of MTBE, in violation of the UTPCPL.  Quite to the contrary, Defendants have continually acted to justify, deny, or otherwise avoid taking responsibility for their past wrongful conduct, including violations of the UTPCPL.  Here, as in *TAP,* Defendants effectively maintain that "all past activity was lawful and that [they] did nothing wrong."  In such circumstances, a permanent injunction under Section 4 of the UTPCPL to prevent future unlawful conduct would be entirely proper.  *Id.*

Defendants cite no relevant authority that past conduct cannot provide a basis for injunctive relief to restrain future conduct under Section 4.  The court in *TAP* also considered, and rejected, the same argument Defendants' make at page 6 of their Memo that "rules of statutory construction" dictate that Section 4 limits injunctive relief "to ongoing and future conduct only."  36 A.3d at 1241-1242.[2]

Nor is there any merit to Defendants' assertion that *Percudani* does not apply to the instant case.  Motion at 6, n.6.  If anything, the facts in this case present a much stronger basis for issuance of an injunction than those presented in *Percudani,* where the action was brought against a certified appraiser who issued inflated real estate appraisals.  The Attorney General sought to enjoin the appraiser defendant from committing further

---

[2] In addition, the *TAP* court pointed out that where – as here – a defendant does not utilize the voluntary compliance procedure set forth at Section 5 of the UTPCPL, 73 P.S. § 201-5, then issuance of an injunction is especially appropriate to restrain the unlawful conduct.  *TAP,* 36 A.3d at 1243.  Defendants here made no attempt to enter into a voluntary compliance agreement with the Commonwealth pursuant to Section 5, a fact that further supports the Commonwealth's request for injunctive relief to restrain Defendants from resuming their prior wrongful practices.

UTPCPL violations, *even though the defendant had already entered into a consent agreement* and agreed to surrender his appraisal license for five years. *Percudani,* 844 A.2d at 45. In other words, in *Percudani* the Attorney General *already had specific, legally enforceable assurances* that the defendant could not presently or in the near future engage in allegedly deceptive acts or practices. Nevertheless, the court held that the Attorney General could seek an injunction against the defendant despite the lack of a current threat of ongoing injury because of the underlying consent order. *Id.* at 45-46.[3] Defendants in this case are not in any way currently restrained from engaging in additional violations of the UTPCPL, so the Commonwealth's claim for injunctive relief is in fact much stronger than was the claim in *Percudani* and clearly appropriate under Pennsylvania law.

### 3. The Commonwealth's Claim for Injunctive Relief is "Plausible" and Satisfies the Pleading Standards Articulated in *Twombly* and *Iqbal.*

The Commonwealth's claims under Section 4 are also sufficient under the *Iqbal* and

---

[3] Defendants further protest that *Percudani* was "wrongly decided," purportedly because the court "disregarded the plain language of the statute," but the court in *TAP* considered and rejected this argument, as noted above. *See* Def. Mem. at 6. In any event, Defendants are incorrect upon analysis. The court in *Percudani,* 844 A.2d at 45-46, properly considered the danger of overreaching or absurd statutory construction. *See* 1 Pa.C.S. § 1922(1) (it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"); *Com., Office of Governor v. Donahue,* 59 A.3d 1165, 1168 (Pa. Cmwlth. 2013) (same). It is *only* "[w]hen there is an interpretation available that gives effect to all of the statute's phrases *and does not lead to an absurd result,* that [the] interpretation must prevail." *Com. v. McCoy,* 962 A.2d 1160, 1168, 599 Pa. 599, 614 (Pa. 2009) (emphasis added). Here, interpreting the language of Section 4 to apply only to ongoing violations of the UTPCPL would lead to an absurd result, as the *Percudani* court correctly concluded: "To allow a party to avoid liability for its actions by merely discontinuing its conduct would render the penalty provisions of the [ UTPCPL] meaningless in their application." *Percudani,* 844 A.2d at 46.

*Twombly's* plausibility standards. The SAC pleads specific facts establishing the two required elements of its Section 4 claim for injunctive relief. Defendants' previous wrongful conduct is more   than adequately alleged, and this conduct alone provides a clear basis for a Section 4 claim, as the foregoing authorities make clear.

Defendants' contention that that the Commonwealth relies on "conclusory statements" and fails to identify what activity it seeks to enjoin is simply wrong. Motion at 4. The SAC specifically alleges (1) specific Defendants disseminated specific deceptive and misleading information regarding MTBE and MTBE gasoline in various ways that violated the UTPCPL and (2) based on the alleged violations of the UTPCPL, the Attorney General believes it is in the public interest to bring this action for injunctive relief against the Defendants. SAC ¶¶ 266-295, 392-410. Defendants' argument that "[n]one of the Commonwealth's allegations supports the Attorney General's 'belief,' or gives rise to a plausible claim that 'the alleged offending conduct is likely to reoccur absent the grant of an injunction,'"– Motion  at 4 (citing *TAP* at 1172) – is similarly misplaced. The SAC makes clear that the Attorney General's "belief" is properly based on Defendants' past violations of the UTPCPL, which are described in detail in the SAC, and which Pennsylvania courts have uniformly found to be an adequate basis for issuance of an injunction under Section 4, as demonstrated above. *See SAC* ¶¶ 396-400, 404-408.

Equally baseless is Defendants' assertion that the Commonwealth is required to plead facts demonstrating that "Defendants currently are engaging or likely will engage in deceptive conduct in the future." Motion at 5. Nothing in the language of Section 4 or the case law interpreting it suggests the Commonwealth must plead this *additional* element in order to state a Section 4 claim. As the Commonwealth Court concluded in rejecting a similar argument: "[i]t is sufficient under the [UTPCPL] for the Attorney General to *believe* that a violation has occurred.

His belief may be subject to challenge and ultimately may be proven to be unfounded but at this stage of the pleadings, he has averred all that the statute requires to support his authority to commence the action." *Com. by Zimmerman v. National Apartment Leasing Co.*, 519 A.2d 1050, 1054, (Pa. Cmwlth. 1986). Indeed, in *TAP, supra* at 1242, the court found that "proof of an ongoing threat of injury" is *not required* to obtain an injunction under Section 4 to restrain future conduct based on prior unlawful conduct. If *proof* of an ongoing threat of wrongful conduct is not required under Section 4, then, *a priori,* there can be no requirement to *allege* facts demonstrating such a threat.

In short, the allegations of the SAC plausibly give rise to the Commonwealth's entitlement to injunctive relief under Section 4, and Defendants' arguments to the contrary should be rejected.

### B.    Count VI Sets Forth Viable UTPCPL Claims against the MSDS Defendants

Count VI of the SAC alleges that a defined subgroup of the Defendants, the "MTBE MSDS Defendants,[4] violated the UTPCPL by omitting and misrepresenting information in their MSDSs.  *See* SAC at ¶¶ 392-402.  Defendants argue that the allegations are not specific to individual defendants and are contrary to various bald facts they improperly assert in their motion.  Motion at 7-13.  The Commonwealth's allegations on their face, however, plainly *are* specific to individual defendants, and Defendants' claimed factual disputes are improper in a motion to dismiss.

---

[4] "MTBE MSDS Defendants" is defined at SAC ¶ 291 to include the following defendants: ExxonMobil, BP/Amoco, Chevron, Citgo, Coastal, ConocoPhillips, Crown Central, Cumberland Farms/GOLP, Equilon Enterprises, LLC, Hess Corp., Marathon Oil Corp.; Marathon Petroleum Co., LP, Motiva Enterprises, LLC, The Premcor Refining Group, Shell Oil Company, Sun Company Inc., Sunoco Inc. (R&M), Texaco Inc., Valero Energy Corporation, and Valero Refining and Marketing Company.

The SAC adequately identifies specific MSDSs issued by each of the MTBE MSDS Defendants, and alleges that each of those MSDSs omitted and misrepresented information in the same way, using Shell Oil and Amoco MSDSs as exemplars.  *See* SAC at ¶¶ 275-295.  Given the length of time at issue, the number of MTBE MSDS Defendants involved, and the remarkable similarity of the MTBE MSDSs in content and material omissions, the Commonwealth's method of pleading in this complex case is more than sufficient to place these defendants on notice of what documents and misrepresentations/material omissions are at issue.  *See Angermeir v. Cohen*, 14 F. Supp.3d 134, 147 (S.D.N.Y. 2014) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud").  The Commonwealth clearly has not engaged in improper "group pleading."  Rather, it has now pleaded specific factual allegations against the MTBE MSDS Defendants and identified specific instances of misconduct for each such defendant.

### C. The SAC Properly Alleges That the MSDSs Were Advertisements and that They Influenced Purchasing Decisions

Defendants argue that the MSDSs "were not advertisements, did not influence purchasing decisions, and were not intended for retail customers."  Motion at 8.  Ultimately, Defendants argue that in order to allege a violation of the UTPCPL, the Commonwealth "must plead facts showing that Defendants' allegedly unfair or deceptive MSDSs likely made a difference in inducing customers to buy Defendants' products." *Id*.  These claimed deficiencies simply ignore the actual allegations in the SAC.

The SAC, for example, alleges that the MTBE MSDSs were false and misleading advertisements under the UTPCPL.  *See* SAC at ¶ 275 ("The MTBE Defendants prepared and distributed MSDSs in connection with their marketing, distribution and sale of their products. MTBE Defendants asked customers who resold or distributed MTBE and MTBE gasoline to

furnish copies of the MSDS to their respective downstream handlers and customers") and SAC ¶ 396(a) ("The MTBE MSDS Defendants disseminated, marketed, *advertised* and otherwise distributed deceptive and misleading information in their respective MSDSs for MTBE and MTBE gasoline").

The UTPCPL does not contain a statutory definition of the term "advertisement."  The Pennsylvania Supreme Court, however, has held that courts may look to the Federal Trade Commission Act and the Lanham Trademark Act to help interpret the UTPCPL because the UTPCPL was derived from those Acts.  *Commonwealth v. Monumental Properties, Inc.*, 329 A.2d 812, 828 (Pa. 1974).  FTC guidelines define "advertisement" very broadly and state that "advertising" includes "any form of public notice however disseminated or utilized."  See 16 CFR 238.0 (Bait Advertising).  Moreover, common dictionary definitions of advertising also support a conclusion that the MSDSs are advertisements under the UTPCPL. *See United Health Group, Inc. v. State*, 2007 Minn.App. Unpub. LEXIS 1141 *10-13 (Minn. App. Jan. 30, 2007), *review denied*, 2008 Minn. LEXIS 107 (Minn. 2008) (*quoting* The American Heritage Dictionary (3d ed. 1992) ("Because 'advertisement' is not explicitly defined, we give the term its plain, ordinary meaning: '[t]o make public announcement of,' and '[t]o call the attention of the public to a product or business.'").

The allegations of the SAC clearly establish that the MSDSs were advertisements under these standards. They both define the product and enumerate its characteristics and qualities. They are published widely and target purchasers of the gasoline who handled, stored and dispensed and consumed it – wholesalers, jobbers, retailers and ultimately consumers.  SAC ¶ 396a.

The SAC also alleges that "the false advertisement is likely to make a difference in the

13

purchasing decision." *See* SAC at ¶ 397 ("MTBE MSDS Defendants' material omissions, mis-representations, and unfair and deceptive practices relating to the marketing, promotion, distribution and sale of MTBE gasoline and MTBE as a gasoline additive in their respective MSDSs was intended to and did deceive, mislead and confuse the public, including gasoline refineries, distributors, jobbers, retailers and consumers purchasing, storing, distributing and selling same").

Rather than addressing the legal sufficiency of the factual allegations of the SAC, Defendants impermissibly offer and argue their own contrary "facts." Defendants, for example, assert: "MSDSs generally are provided to buyers *after* a purchase." Besides being improper to begin with at this motion stage, this factual assertion is unavailing – purchasers of petroleum products are repeat customers who will make subsequent purchasing decisions based upon information provided with initial purchases – including MSDSs.[5] Defendants also assert that "federal regulations do not require MSDSs to be provided to retail customers, and the Commonwealth makes no allegations that they were." Motion at 8. This is both incorrect (the SAC does allege that MSDSs were provided to retail customers – see SAC ¶ 397) and based upon an artificially narrow use of the phrase "retail customers" – for wholesalers' retail customers are the gas stations that purchased their MTBE gasoline.

The relevant question, in any event in this Motion, is what the SAC actually alleges, not what defendants consider the facts to be as they might allege later in an answer to the SAC. Defendants' argument as to the legal insufficiency of the claim under the UTPCPL must fail as

---

[5] Defendants cite no authority for their argument that the MSDS cannot influence purchasing decisions because OSHA requires they be sent with or shortly after the first purchase. The argument also relies on an assertion of fact (purchasers would have bought MTBE gasoline regardless of what an MSDS said about it) for which defendants provide no evidence and that in any event is improper in a motion to dismiss.

the SAC clearly and adequately alleges that the MSDSs were advertisements that influenced purchasing decisions.

### D.   Although the UTPCPL Does Not Require Pleading Affirmative False Representations of Fact, the SAC in Fact Pleads that Defendants' MSDSs Contained Such False Representations

Defendants cite the Court's Opinion for the proposition that 201-2(4)(v) "require[s] allegations of false advertising" and "false information." Motion at 10 (citing *In RE MTBE*, 2015 'WL 4092326, at *5.)  Defendants also cite *Seldon v. Home Loan Servs., Inc*., 647 F. Supp.2d 451, 466 (E.D. Pa. 2009) (this Court cited *Seldon* in its initial opinion but was not presented with the "advertising" v "representation" issue as a key issue) and *Karlsson v. FDIC*, 942 F. Supp. 1022, 1024 (E.D. Pa. 1996) *affd.* 107 F.3d 862 (3d Cir. 1997) for this proposition.  Defendants further rely upon *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp.2d 371, 385 (E.D. Pa. 1998) for the proposition that "omissions do not suffice where 'the plain language of [201-2(4)(v) & (vii)] requires an affirmative representation as a predicate for liability.'"  Motion at 8.  While the Commonwealth agrees subsection (v) claims requires pleading "false information"– which the SAC's allegations' satisfies – it disagrees with the Defendants' proposition that the different and additional phrases of a "false advertisement" or an "affirmative misrepresentation" are mandatory elements of a subsection (v) claim.

The language of subsection 201-2(4)(v) speaks of "representing" certain product information, which is an act that can take many forms apart from advertisements and which can occur in the form of material omissions. *See Commonwealth by Zimmerman v. Bell Tel. Co*., 551 A.2d 602, 604 (Pa. Cmwlth 1988) (holding telephone company's sales personnel failure to disclose material information on home wiring plans to consumers stated actionable claim under subsection 201-2(4)(v) among other UTPCPL sections); *Commonwealth by Zimmerman v. Society of 28th Div., A.E.F., Corp.*, 538 A.2d 76, 80 (Pa. Cmwlth. 1987) (rejecting charity

solicitors' argument they could not be found liable for material omissions under, among other sections, §201-2(4)(v)).

The notion expressed in some decisions that an advertisement must be involved in order to support a subsection (v) claim appears to find its origin in the Superior Court's decision in *DiLucido v. Terminix Int'l,* 450 Pa. Super. 393, 401, 676 A.2d 1237, 1240-1241, which the Commonwealth Court in *Percudani, supra,* cites in support of a proposition that subsection (v) is limited to false advertising claims. 844 A.2d 35, 47-48.  However the discussion on subsection (v) in *DiLucido* was no more than an restatement of  the elements of an actionable subsection (v) false advertising claim handed down in *Commonwealth v. Hush-Tone Industries, Inc.,* 1971 WL 13030 (Pa. Cmwlth. 1971).  The *Hush Tone* case was a pure false advertising enforcement case brought by the Attorney General against a hearing aid company.  Not surprisingly, when setting out the elements the Commonwealth needed to prove under the Act, the Commonwealth Court proceeded to develop the elements of section (v) in terms of the false advertising case before it. *Id.* at *10-12.  Neither *DiLucido* nor *Percudani,* however, discuss decisions in the Commonwealth Court after *Hush Tones* which applied subsection (v) to deceptive representations that were not in "advertisements," but rather were direct person to person representations.  See *Bell Tel. Co., supra; Society of 28th Div, supra.*  Given that courts are required to construe UTPCPL liberally to accomplishes its intent, the eradication of marketplace fraud and unfair conduct, *Commonwealth by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 461, 329 A.2d 812, 817 (1974), glossing subsection (v) with requirements that there be an advertisement containing an affirmative misrepresentation simply imposes unwarranted and legislatively unintended obstacles to the proper enforcement of the Act.

In any event, the SAC does adequately allege that the MTBE MSDS Defendants made affirmative false representations in their MSDSs.  *See* SAC at ¶ 285 ("To the contrary, the MSDSs published by the MTBE Defendants wrongly and deceptively stated or implied that MTBE gasoline could be handled just like traditional conventional gasoline and that the traditional standard-of-care for gasoline without MTBE was adequate for MTBE gasoline") and SAC at ¶ 296(a) ("The MTBE MSDS Defendants disseminated, marketed, advertised and otherwise distributed deceptive and misleading information in their respective MSDSs for MTBE and MTBE gasoline to gasoline refiners, distributors, jobbers, retailers and the general public that represented that MTBE was a safe, suitable and effective gasoline additive, comparable in risk and hazards to conventional gasoline constituents, when in fact as defendants knew MTBE's and MTBE gasoline's posed unique environmental risks and hazards not present in conventional gasoline").

### E.   Defendants Are Incorrect in their Contention that the SAC Alleges that the Defendants' *MSDSs* Disparaged the Goods or Products of Another in Violation of the UTPCPL; the SAC in Fact Properly Allege that the Defendants' *Advertising* Disparaged Their Competitors' Products

Defendants incorrectly contend that the Commonwealth claims, but presents no facts, that Defendants' *MSDSs* disparaged the goods or products of another in violation of UTPCPL subsection (viii), 73 P.S. § 201-2(4)(viii).  Motion at 10-11.  Not so.  The SAC, in fact, alleges that the Defendants' *advertising* so disparaged and supports the claim fully.  At ¶ 297, the SAC asserts:

> The MTBE Defendants' response to the promotion of alternative fuels to gasoline were twofold: (a) recast the marketing image and public perception of MTBE gasoline as clean burning gasoline good for the environment; and (b) disparage ethanol oxygenated gasoline as a competitive product and restrict or eliminate its use in gasoline by negatively dubbing it (as well as other alternative fuels under consideration) "Government Gas" (*See* Figure 1 *infra*.) and/or by claiming it was more costly and less

effective than MTBE gasoline. In their responses to the government initiatives, the MTBE Defendants failed to disclose the significant environmental dangers that MTBE and MTBE gasoline posed to the public and private water supplies in the event of a spill or leak of MTBE or MTBE gasoline, the occurrence of which MTBE Defendants, and their trade groups as set out above, were well aware were frequent events throughout the gasoline distribution network.

The Commonwealth's allegations also lay out how the disparaging advertising by Defendants was accomplished in a false and misleading manner with material omissions as to Defendants' product hazards, ¶ 267 above, and with false statements about ethanol in the Government Gas ad: "It Won't Cure the Smog Problem. It Will Cost You More. It Will Cut Auto Efficiency." SAC ¶ 274.  This claim under UTPCPL subsection (viii) is adequately pleaded.

### F.   The SAC Adequately Alleges that the MSDSs Created a Likelihood of Confusion or Misunderstanding

The catch-all provision of the UTPCPL, 201-2(4) subsection (xxi), provides that "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" is an unfair or deceptive act or practice.  Defendants argue that the SAC fails to state a claim under this provision because the SAC "fails to plead 'specific information' about how the MSDSs 'create[d] . . . a likelihood of confusion or misunderstanding.'"  Motion at 12.

The factual allegations in the SAC, however, now provide extensive details about how and why Defendants' MSDSs by their misstatements and omissions created a likelihood of confusion or misunderstanding about MTBE gasoline *See* SAC ¶¶ 275-295.  As summed up in Paragraph 276, the allegations in these 21 paragraphs detail defendants' institutional knowledge and their knowing and intentional omissions of what the hazardous properties of MTBE gasoline that lead customers to believe –and misunderstand and be confused– that MTBE gasoline was no different than regular gasoline.

Despite these specifics allegations, however, Defendants argue that the claim is inadequate because the requisite "deception must be 'an intentional misleading by falsehood spoken or acted,'" citing *Afontanez v. HSBCMortgage Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012).  The Commonwealth's allegations, however, meet this standard.  To state in the MSDSs that MTBE gasoline can be handled no differently than regular gasoline when defendants knew MTBE required special handling is clearly an "intentional misleading by a falsehood spoken."  In any event, "falsehoods" are not the only type of actionable deception under the statute.  A deception is also made out when a defendant, like here, has intentionally misled by giving a "false impression," which can obviously be based on what is omitted, as well as what is affirmatively said.  *See Rubenstein v. Dovenmuehle Mortg., Inc*, 2009 WL 3467769 (E.D. Pa. 2009) ("To bring a viable claim of deceptive practices…, plaintiffs must allege facts showing a 'deceptive act,' that is, 'intentionally giving a false impression,' of conduct that is likely to deceive a consumer acting reasonably under similar circumstances. *Seldon v. Home Loan Services, Inc.,* No. 07–4480, 2009 WL 2394182, at *16 (E.D. Pa. Aug. 4, 2009) (Yohn, J.) (internal quotations omitted) (citing *Black's Law Dictionary* 455 (8th ed.2004)").  However one views Defendants' conduct in drafting and disseminating what they knew to be misleading or confusing MSDSs (as laid out in the SAC), the conduct was clearly deceptive within the meaning of the statute.  Accordingly, the SAC adequately supports a claim under the catch-all provision of the UTPCPL, 201-2(4) subsection (xxi).[6]

---

[6] Although it has done so, the Commonwealth is also not required to specify in the SAC the specific subsections of the UTPCPL that Defendants violated.  In *Hockenberry v. Diversified Ventures, Inc.*, 2005 U.S. Dist. LEXIS 47808 (E.D. Pa. June 20, 2005), the court found that the complaint stated a UTPCPL claim with enough particularity that citations to specific subsections of the UTPCPL were not required.  *Id.* at *10.  The Commonwealth's allegations in the SAC are even more detailed than those at issue in *Hockenberry*.

**G.     Defendants' Advertisements Disparaging Ethanol Are Not Protected Political Speech**

The SAC pleads that six named MTBE Defendants disparaged ethanol as an alternative to MTBE by, among other methods, financing an ad campaign by the American Petroleum Institute ("API") attacking ethanol as "Government Gas"  and  engaging in a fraudulent and deceptive marketing scheme to "greenwash" their MTBE gasoline.  *See* SAC ¶¶ 266–274. Defendants argue that the Government Gas ad campaign cannot provide a basis for a UTPCPL claim because it was "political speech."  Motion at 14.  Defendants, however, do not provide any authority to support this argument as directed to the UTPCPL.   The ad campaign was, in fact, the very type of harmful commercial speech at which the UTPCPL is directed.

"Under the First Amendment, different types of speech receive different levels of protection.  The United States Supreme Court has held, for example, political speech receives extensive constitutional protection; commercial speech receives an intermediate level of protection; and obscene speech receives no First Amendment protection."  *Kuwait & Gulf Link Transportation Co. v. Doe*, 92 A.3d 41, 46-48 (Pa. Super. 2014) (citations omitted).  "The most common examples of commercial speech in the Supreme Court's jurisprudence are those communications that advertise or promote a specific product."  *Id*.

The Government Gas ad viewed in the context of the SAC's allegations of defendants' campaign to "reimage" their MTBE Gasoline as "cleaner" and "better for the environment" is commercial speech (marketing) not entitled to the same protection as political speech.  The Government Gas ad was intended to "disparage[] ethanol oxygenated gasoline as a competitive product and restrict or eliminate its use in gasoline by negatively dubbing it (as well as other alternative fuels under consideration) …."  *See* SAC ¶ 267.  In other words the Government Gas ad

was used to promote a specific product (MTBE gasoline) and disparage another product (ethanol gasoline).  The Government Gas ad is clearly commercial speech actionable under the UTPCPL.

**H.      The SAC Adequately Alleges that Certain Defendants Made False and Deceptive Public Statements about MTBE Gasoline**

The SAC alleges that, among others, Defendants ARCO, Conoco, Shell, Valero (formerly Diamond Shamrock), ExxonMobil, Marathon and Sunoco began selling and announced plans to sell "cleaner" gasolines in newspaper articles beginning in 1990.  *See* SAC at ¶¶ 266-274. Defendants argue that "the SAC does not identify any public or marketing statement at all by Valero, ExxonMobil, Marathon or Sunoco."  Motion at 17.  That is not correct. The SAC at ¶ 269 sets out statements attributed to Valero (successor to Diamond Shamrock), Conoco, ExxonMobil, Marathon which promoted these companies' introduction of what was described and touted as environmentally friendly gasolines using MTBE in their formulation.  While proclaiming before the public that their new MTBE Gasoline formations were better for the environment, no mention is made whatsoever of MTBE's latent, and more persistent and grave environmental dangers to groundwater known to these defendants.  The SAC alleges that these defendants' statements in the newspaper articles and to the public were for marketing and promotion of the respective MTBE gasoline products.  SAC ¶ 270.  As established above, the UTPCPL makes actionable numerous forms and methods of unfair competition, unfair and deceptive sales, promotion and distribution activities in trade and commerce, beyond just the classic form of advertisements.

Moreover, the allegations supporting Count VI of the SAC sufficiently plead affirmative false representations of fact under subsections (v) and (vii) and that Defendants' statements were directed at the goods or products of another under subsection (viii).  For example with respect to subsections (v) and (vii) against Shell, the SAC alleges that an Oil & Gas Journal article quotes

Shell's then President saying: "[t]his new gasoline reflects Shell's commitment to make environmental consideration a priority in development of our new products and processes." When read in the context of the other allegations in the SAC, this promotional statement concerning Shell's purported better-for-the-environment reformulated gasoline was an affirmative false and misleading  representation about MTBE and Shell's environmental concerns.  *See* SAC at ¶¶ 270-273.  With respect to subsection (viii), the SAC pleads that "Shell Oil's misleading and deceptive claims to the public about MTBE and its purported cleaner gasoline harmed the citizens of Pennsylvania in that they (a) interfered with legitimate trade and commerce by Shell's competitors, including those in the ethanol and alternative fuels industries, thereby adversely affecting directly or indirectly the citizens of this Commonwealth" SAC ¶273. The alleged false and misleading statements by Shell Oil to the press were directed at promoting Shell's MTBE product to the motoring public and, at the same time, unfairly disparaging ethanol products, MTBE gasoline's major competitor in the oxygenated fuel marketplace.

The newspaper statements made by Defendants were not "puffery," as asserted by Defendants nor were they "slogans" or generalized statements about MTBE.  Rather, they were systematic statements by Defendants intended to mislead and deceive the public regarding latent risks and hazards of MTBE by claiming that they were committed to a cleaner environment when, in fact, they were well aware of the hazards of MTBE contamination.  Accordingly, the Commonwealth has set forth in Count VII an actionable claim under the UTPCPL for the articles.

I.     **The Commonwealth Is Not Required to Plead the Elements of Fraud under the Catch-All Provision of the UTPCPL**

The Commonwealth is not required to plead the elements of fraud for an actionable claim under the catch-all provision.  The SAC's allegations readily satisfy the Commonwealth's pleading burden under the liberalized standard applicable to enforcement actions brought by the

Attorney General.  *See Weinberg v. Sun Co.*, 777 A.2d 442, 444 (Pa. 2001) (distinguishing between Commonwealth enforcement actions and private actions).  Thus, the Commonwealth is not required to plead the elements of fraud and Defendants' Rule 9(b) heightened pleading argument is meritless.

### J.   Count IX Sets Forth a Viable Claim against the Insurance Defendants for Violations of the Storage Tank and Spill Prevention Act

For a second time, the Insurance Defendants seek an Order dismissing Count IX of the SAC.  This Court has already held that Count IX cannot be dismissed because the Commonwealth has sufficiently pleaded a violation of the STSPA.  In its Opinion and Order dated May 14, 2015, this Court correctly stated:

> The Commonwealth alleges two violations of the STSPA in Count IX. *First*, the Commonwealth claims the Insurance Defendants fraudulently "submitted claims for releases that occurred before February 1, 1994" in violation of Section 977.33(b)(3) of Title 25 of the Pennsylvania Code ("Section 977.33"). *Second*, the Insurance Defendants failed to protect the Commonwealth's subrogation rights expressly granted by Section 977.32, in violation of the duty to cooperate imposed by Section 977.32.

*In Re MTBE*, May 4, 2015, Slip Op. at 8-9 (footnotes omitted).  The Court concluded that Count IX could not be dismissed because the Commonwealth properly pleaded the first violation, i.e., that the Insurance Defendants filed claims for Fund reimbursement for releases that occurred prior to February 1, 1994. *Id.* at 19-20.  In fact, in their current Motion, Insurance Defendants do not seek to dismiss that claim in Count IX.  Rather, the Insurance Defendants' Motion is limited to seeking dismissal of only the second claimed violation of the STSPA, i.e., that the Insurance Defendants failed to comply with a request for information in violation of Section 977.32.

The Commonwealth has properly pleaded that the Insurance Defendants failed to comply with a request for information in Violation of 25 Pa. Code 977.32.  In granting the

Commonwealth an opportunity to replead the second claimed violation of the STSPA, this Court

held: "the USTIF Act requires applicants to the Fund to cooperate very broadly with any

information requests pursuant to an investigation stemming from their claims. Conceivably, this

could include information regarding claimants' insurance policies so that the Fund could protect

the subrogation rights that are specifically provided for in Sections 977.32 and 977.40." *Id.* at

17.  Citing *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank

Indemnification Fund*, 82 A3.d 485 (Pa. Cmwlth. 2013), this Court observed that the

Commonwealth Court of Pennsylvania, in interpreting Section 977.32, held:

> [T]he import of 25 Pa. Code § 977.32(a)(1) and (b) mandates that during
> the *investigation of a claim*, **a claimant must "cooperate" by revealing all
> information in its possession that falls within the scope of the** *request* **and
> additional information that is generally associated with the request** and is
> reasonably likely to be germane to the claim. To interpret 25 Pa. Code §
> 977.32(a)(1) in a more restrictive manner . . . would eviscerate the terms
> "including," "other," and "pertinent," which connote that **in a request for
> information, a claimant will not only disclose . . . the precise information
> requested, but also supplemental and related information that is relevant to
> the request** and resolution of the claim.

*Id.* at 14-15 (emphasis added)(footnote omitted).  This Court went on to hold:

> But *Gnagey* makes clear that this duty to cooperate is not triggered until the Fund
> makes a request for information or an investigation has been commenced. The
> Commonwealth has not [in the First Amended Complaint] alleged either of these
> events. . . . Because it is conceivable that the Commonwealth did make such
> requests, or commence such investigations, an amendment would not necessarily
> be futile if the Commonwealth can allege that the Insurance Defendants refused to
> cooperate.

*Id.* at 17-18.

Count IX of the SAC describes the claim process including the investigation undertaken

by the Commonwealth.  *See* SAC ¶¶ 524-529.  Specifically, the Commonwealth, through its

vendor ICF International, investigates every claim made to the USTIF to determine eligibility for

benefits.  *Id.* at ¶ 525.  Several specific areas are investigated including the availability of a

subrogation claim. *Id.* at ¶¶ 526 and 528. The investigation is completed through interviews with representatives from the Insurance Defendants, a review of documents provided by the Insurance Defendants and an analysis of data provided by the Insurance Defendants. *Id.* at ¶ 527. Every investigation includes an investigation into the availability of a subrogation claim. *Id.* at ¶ 529.

The Commonwealth has sufficiently pleaded that every claim filed by an Insurance Defendant is investigated by the Commonwealth. Every investigation includes an investigation into the availability of subrogation. This Court previously noted "If anything, *Gnagey* is useful precedent for the notion that, upon request, an applicant must provide not just "the precise information requested [but also] related information that is relevant to the request."" *Opinion and Order*, Docket Doc. 4210 at 18, n.67. While Insurance Defendants argue that there is no allegation that the Fund asked about private insurance coverage, there can be no question that the investigation included an inquiry about subrogation, and private insurance policies would be relevant to that inquiry. Under *Gnagey*, and the law of this case, the investigation, as alleged in the SAC, triggered the duty to cooperate and required the Insurance Defendants to inform the Commonwealth of the existence of its private insurance policies so the Commonwealth could further investigate and protect its subrogation rights.

## IV.    CONCLUSION

For the reasons stated above, Certain Defendants' Motion to Dismiss the Second Amended Complaint should be denied.

Respectfully Submitted,

**PENNSYLVANIA OFFICE OF ATTORNEY GENERAL**

By: /s/ James A. Donahue, III
    James A Donahue, III, Esquire
    Executive Deputy Attorney General
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120
(717) 705-0418
Email: jdonahue@attorneygeneral.gov

**PENNSYLVANIA GOVERNOR'S OFFICE OF GENERAL COUNSEL**

By: /s/ Linda C. Barrett
    Linda C. Barrett, Esquire
    Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania 17101
(717) 787-9347
Email: lbarrett@pa.gov

**BERGER & MONTAGUE, P.C.**

By: /s/ Tyler E. Wren
    Daniel Berger, Esquire
    Tyler E. Wren, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3000
Email: twren@bm.net
       danberger@bm.net

**COHEN, PLACITELLA & ROTH, P.C.**

By: /s/ Stewart L. Cohen
    Stewart L. Cohen, Esquire
    Robert L. Pratter, Esquire
    Michael Coren, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Two Commerce Square
Suite 2900, 2001 Market St.
Philadelphia, Pennsylvania 19103
(215) 567-3500
Email: scohen@cprlaw.com
       RPratter@cprlaw.com
       MCoren@cprlaw.com

**MILLER & AXLINE, P.C.**

By: /s/ Duane Miller
    Duane Miller, Esquire
    Michael Axline, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
1050 Fulton Avenue, Suite 100
Sacramento, California  95825-4225
(916) 488-6688
Email: dmiller@toxictorts.org
       maxline@toxictorts.org

**STARK & STARK, P.C.**

By: /s/ Stephen A. Corr
    Stephen A. Corr, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
777 Township Line Road, Suite 120
Yardley, Pennsylvania  19067
(267) 907-9600
Email: scorr@stark-stark.com

**WIGGINS CHILDS QUINN & PANTAZIS**

By: /s/ Dennis G. Pantazis _____
    Dennis G. Pantazis, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500
Email: dgp@wigginschilds.com

## <u>CERTIFICATE OF SERVICE</u>

I, Tyler E. Wren, Esquire, attorney for Plaintiff, hereby certifies that on February 5, 2016, a true and correct copy of the foregoing Memorandum In Opposition To Certain Defendants' Motion To Dismiss Plaintiff Commonwealth Of Pennsylvania's Second Amended Complaint was served via electronic filing if counsel has entered an appearance and is registered with the Court's ECF system.

/s/ Tyler E. Wren
Tyler E. Wren
