UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>**This document relates to:**<br><br>*Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*, Case No. 14-cv-06228 | Master File No. 1:00-1898 (SAS)<br><br>MDL 1358 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ............................................................................................................................... 1

I.     THE COMPLAINT DOES NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD FOR INJUNCTIVE RELIEF UNDER THE UTPCPL. ............................................................................................................... 1

II.    COUNT VI FAILS TO STATE A CLAIM REGARDING DEFENDANTS' MSDSs. .................................................................................................................. 3

        A.    Plaintiff's MSDS Allegations Fail Under UTPCPL Subsection (v) ...................... 3

        B.    Plaintiff's "Catch-All" Claim Fails Because the Complaint Does Not Allege How the MSDSs Likely Caused Confusion ............................................. 5

III.   COUNT VII LACKS ALLEGATIONS OF ACTIONABLE CONDUCT. ....................... 6

        A.    The "Government Gas" Piece Is Protected By The First Amendment. ................. 6

        B.    The Newspaper Articles Are Not False and, Therefore, Not Actionable. ............................................................................................................ 7

        C.    The "Catch-All" Claim Fails Because Plaintiff Does Not Plead Fraud ................. 8

IV.   THE COMMONWEALTH'S STSPA CLAIM FAILS BECAUSE IT NEVER SOUGHT INSURANCE INFORMATION FROM DEFENDANTS. ............................... 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Sales Co. v. AstraZeneca AB*,
  2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) ................................................................. 3

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014) ..................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 3

*Boule v. Hutton*,
  70 F. Supp. 2d 378 (S.D.N.Y. 1999) ............................................................................. 8

*Citizens United v. Fed. Elec. Comm'n*,
  558 U.S. 310 (2010) ........................................................................................................ 7

*Consol. Edison v. Pub. Serv. Comm'n*,
  447 U.S. 530 (1980) ........................................................................................................ 6

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ............................................................................................ 4

*Goleman v. York Int'l Corp.*,
  2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ................................................................. 5

*Hoffman v. A.B. Chance Co.*,
  339 F. Supp. 1385 (M.D. Pa. 1972) ............................................................................. 8

*JBCHoldings NY, LLC v. Pakter*,
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ........................................................................... 1

*Karlsson v. FDIC*,
  942 F. Supp. 1022 (E.D. Pa. 1996), *aff'd*, 107 F.3d 862 (3d Cir. 1997) ................... 8

*In re MTBE Prods. Liab. Litig.*,
  2015 WL 2354582 (S.D.N.Y. May 14, 2015) ......................................................... 9, 10

*In re MTBE Prods. Liab. Litig.*,
  2015 WL 4092326 (S.D.N.Y. July 2, 2015) ............................................................. 4, 6

*Seldon v. Home Loan Servs., Inc.*,
  647 F. Supp. 2d 451 (E.D. Pa. 2009) ........................................................................... 4

*Weisblatt v. Minn. Mut. Life Ins. Co.*,
  4 F. Supp. 2d 371 (E.D. Pa. 1996) .................................................................................. 5

**State Cases**

*Berkabile v. Brantly Helicopter Corp.*,
  337 A.2d 893 (Pa. 1985) ................................................................................................... 8

*Chatham Racquet Club v. Commw.*,
  561 A.2d 354 (Pa. Commw. Ct. 1989) ............................................................................. 9

*Commw. v. Nat'l Apartment Leasing*,
  519 A.2d 1050 (Pa. Commw. Ct. 1986) ........................................................................... 1

*Commw. v. Donahue*,
  59 A.3d 1165 (Pa. Commw. Ct. 2013) ............................................................................. 2

*Commw. v. Hush-Tone Indus.*,
  4 Pa. Commw. 1 (1971) ................................................................................................ 7, 9

*Commw. v. Luther Ford Sales*,
  430 A.2d 1053 (Pa. Commw. Ct. 1981) ........................................................................... 2

*Commw. v. McCoy*,
  962 A.2d 1160 (Pa. 2009) ................................................................................................ 2

*Commw. v. Pa. Chiefs of Police Ass'n*,
  572 A.2d 256 (Pa. Commw. Ct. 1990) ............................................................................. 2

*Commw. v. Snyder*,
  977 A.2d 28 (Pa. Commw. Ct. 2009) ............................................................................... 2

*Commw. v. Soc'y of the 28th Div., A.E.F. Corp.*,
  538 A.2d 76 (Pa. Commw. Ct. 1987) ............................................................................... 2

*Commw. v. TAP*,
  36 A.3d 1197 (Pa. Commw. Ct. 2011) ............................................................................. 2

*Frishman v. Dep't of State*,
  592 A.2d 1389 (Pa. Comm. Ct. 1991) .............................................................................. 2

*Huddleston v. Infertility Ctr.*,
  700 A.2d 453 (Pa. Super. 1997) ....................................................................................... 8

*Northview Motors v. Commw.*,
  562 A.2d 977 (Pa. Commw. Ct. 1989) ............................................................................. 2

*Tamagno v. Waiters Waitresses Union*,
  96 A.2d 145 (Pa. 1953) .................................................................................................... 2

*Thompson v. Glenmede Trust Co.*,
    2003 WL 1848011 (Pa. Comm. Pl. Feb. 18, 2003) ............................................................... 8

*United Health Group, Inc. v. State*,
    2007 Minn. App. Unpub. LEXIS 1141 (Minn. App. Dec. 4, 2007) ....................................... 4

*Wagner v. Erie Ins. Co.*,
    801 A.2d 1226 (Pa. Commw. Ct. 2002) ............................................................................. 10

*Weinberg v. Sun Co.*,
    777 A.2d 442 (Pa. 2001) .................................................................................................. 7, 8

**Statutes**

73 P.S. § 201-2(4)(v) .............................................................................................................. 5, 6

73 P.S. § 201-4 .............................................................................................................................. 1

**Other Authorities**

16 C.F.R. 238.0 ............................................................................................................................. 4

25 Pa. Code § 126.104 ................................................................................................................... 7

25 Pa. Code § 977.32 ..................................................................................................................... 9

25 Pa. Code § 977.40 ................................................................................................................... 10

## ARGUMENT

### I. THE COMPLAINT DOES NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD FOR INJUNCTIVE RELIEF UNDER THE UTPCPL.

Plaintiff acknowledges that its UTPCPL Section 4 claims require two elements: "1) a person is believed to be *using or about to use* a practice declared unlawful by the [Unfair Trade Practices and Consumer Protection Law (UTPCPL)], and 2) proceedings would be in the public interest." *Pl.'s Opp.* at 5 (emphasis added); *see also* 73 P.S. § 201-4. It cannot reasonably be disputed that Plaintiff failed to plead these elements in anything more than a conclusory fashion. *See* SAC ¶¶ 399-400, 407-08.[1] Instead, Plaintiff argues that the Attorney General's "belief," without supporting facts, is sufficient under *Twombly/Iqbal*, and that it need not allege ongoing or imminent unlawful conduct – *i.e.*, that the statute does not mean what it says. Plaintiff's arguments fail.

First, "belief" alone does not satisfy the *Twombly/Iqbal* standard; such a rule would render *Twombly* and *Iqbal* meaningless. *See, e.g., JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 536-37 (S.D.N.Y. 2013) (allegations based "'on information and belief'... must be 'accompanied by a statement of the facts upon which the belief is founded'"). Plaintiff's reliance on *Commonwealth v. Nat'l Apartment Leasing*, 519 A.2d 1050, 1054 (Pa. Commw. Ct. 1986), is misplaced; the issue there was one of standing, not sufficiency of the pleadings. In fact, as to the pleadings, the defendants' motion for a more specific complaint was granted. *Id.* at 1053.

---

[1] The only suggestion that any Defendant is "using or about to use" an unlawful practice appears in the conclusory allegations of paragraphs 398-99 and 406-07. *See* SAC ¶¶ 398-99, 406-07 (alleging Defendants' actions "violated [in the past], and *if* repeated will violate, the UTPCPL" and "[u]nless restrained, [Defendants] will likely engage in methods, acts or practices ... in violation of the UTPCPL" (emphasis added)). The SAC also contains no facts supporting the "Office of the Attorney General's" alleged belief that a suit to enjoin the allegedly deceptive marketing of a product that has been out of the market for a decade is in the public interest. *See* SAC ¶¶ 400, 408. The timing of MTBE's removal from the Pennsylvania market is not truly disputed and is supported by facts of which the Court may take judicial notice. *Defs.' Br.* at n.4

1

Second, Plaintiff argues that a UTPCPL injunction may issue based on past conduct alone, despite the plain language of the statute. But its support for this proposition points back to *Commonwealth v. Percudani*[2] which, as Defendants have explained, relied on faulty statutory construction[3] and is readily distinguishable (and non-binding on this Court). *Defs.' Br.* at 5-6.[4] The instant case involves allegations of deceptive practices from at least a decade ago (or for Count VII, 25 years ago) (*see Defs.' Br.* at 5 (citing SAC)), and a product that has not been sold in the state for a decade. In contrast, the defendant in *Percudani* temporarily surrendered his real estate license a mere two months prior to the UTPCPL action being filed, and after a state agency

---

[2] Plaintiff also relies on *Commw. v. TAP*, 36 A.3d 1197, 1242 (Pa. Commw. Ct. 2011), and *Commw. v. Snyder*, 977 A.2d 28, 48 (Pa. Commw. Ct. 2009) (*Pl.'s Opp.* at 6), which both cite back to *Percudani*. It also cites *Tamagno v. Waiters Waitresses Union*, 96 A.2d 145 (Pa. 1953), which concerned dissolution of a common law injunction. *Id.* at 146-47 (dissolving injunction in part due to "lapse of time" where conduct had "long since ended" two years ago). As Plaintiff notes, common law injunctions require additional elements not required under the UTPCPL. *Pl. Opp.* at 5. This fact may satisfy courts that enjoining future activity based on past conduct is appropriate. In contrast, the lesser showing required for a UTPCPL injunction further argues for adherence to the letter of the law.

[3] Plaintiff's effort to buttress *Percudani's* statutory interpretation falls short; unlike here, both cited cases on which Plaintiff relies involved ambiguous statutory language. *See Pl.'s Opp.* at 9 n.3; *Commw. v. McCoy*, 962 A.2d 1160, 1167 (Pa. 2009) ("Only where words of a statute are not explicit will we resort to other considerations to discern legislative intent"); *Commw. v. Donahue*, 59 A.3d 1165, 1168 (Pa. Commw. Ct. 2013) (same).

[4] *Percudani* cited six cases in which it believed "the Commonwealth had sought to enjoin future conduct based on past acts." Four of those cases, however, involved ongoing conduct or lack any indication that the conduct had stopped. *See Nat'l Apt. Leasing*, 519 A.2d at 1051 ("NALCO as landlord unlawfully retains its tenants' security deposits"); *Commw. v. Soc'y of the 28th Div., A.E.F. Corp.*, 538 A.2d 76 (Pa. Commw. Ct. 1987) (allegations of ongoing conduct); *Commw. v. Pa. Chiefs of Police Ass'n*, 572 A.2d 256 (Pa. Commw. Ct. 1990) (no indication that conduct ceased); *Northview Motors v. Commw.*, 562 A.2d 977 (Pa. Commw. Ct. 1989) (same). A fifth case is less clear. *Commw. v. Luther Ford Sales*, 430 A.2d 1053 (Pa. Commw. Ct. 1981) (nothing in 2-page opinion indicates whether practice ongoing). The last case was only tangentially related to the UTPCPL. *Frishman v. Dep't of State*, 592 A.2d 1389 (Pa. Comm. Ct. 1991) (affirming Board of Vehicle Manufacturers' revocation of petitioner's license based on facts established in prior UTPCPL consent decree because Board not bound by decree). In short, the question is not whether a claim may be based in part on past violations, but whether it can be based ***solely*** on past violations with no factual allegations of ongoing or imminent misconduct.

already had alleged misconduct. 844 A.2d at 45-46. Nevertheless, Plaintiff takes the untenable position that this case "present[s] a much stronger basis for issuance of an injunction" than *Percudani*. *Pl.'s Opp.* at 8. To the contrary, Plaintiff's interpretation would lead to the "absurd" result it urges this Court to avoid in construing the statute. *See id.* at 7.

## II. <u>COUNT VI FAILS TO STATE A CLAIM REGARDING DEFENDANTS' MSDSs.</u>

Plaintiff does not dispute it must plead facts showing that Defendants' MSDSs likely influenced purchasing decisions, but incorrectly claims that the SAC does so. *Pl.'s Opp.* at 12-15. Plaintiff cites to its conclusory allegations that Defendants "disseminated, marketed, advertised and otherwise distributed" allegedly deceptive MSDSs (SAC ¶ 396(a)); "asked customers who resold or distributed" their products to provide MSDSs to downstream customers (SAC ¶ 275); and that MSDSs were "intended to and did deceive, mislead and confuse the public...." SAC ¶ 397. These allegations fall short under Rule 8(a), which requires more than "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, Plaintiff continues to engage in group pleading. Count VI fails to allege "specific instances of misconduct" against most MSDS Defendants. *Pl.'s Opp.* at 12. "A complaint should offer 'specification' as to the 'particular activities by any particular defendant.'" *Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (quoting *In re Elev. Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)).[5]

### A.    Plaintiff's MSDS Allegations Fail Under UTPCPL Subsection (v).

Plaintiff asks the Court to reverse its prior holding that UTPCPL §§ 201-2(4)(v) applies

---

[5] Plaintiff cites irrelevant Rule 9(b) pleading standards in *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014). Regarding Rule 8(a), the court found that, unlike SAC Count VI, the complaint had "numerous allegations specific to each of the Defendants." *Id.* at 143.

3

only to false advertising, but also argues that the SAC succeeds in stating a claim for false advertising. *Pl's. Opp.* at 12-17. Neither argument has merit. Count VI is based on alleged omissions – *see, e.g.,* SAC ¶ 276 – and is not properly pled under UTPCPL §§ 201-2(4)(v).

First, Plaintiff incorrectly contends that when this Court held UTPCPL subsection (v) claims "require allegations of false advertising" (*In re MTBE*, 2015 WL 4092326, at *5), it "was not presented with the 'advertising' v. 'representation' issue as a key issue[.]" *Pl.'s Opp.* at 15. To the contrary, Plaintiff previously argued – unsuccessfully – that subsection (v) was "far broader in scope" than false advertising and addressed "misrepresentations generally." *Pl.'s Opp. to First Mot. to Dismiss* (Dkt. #129), at 18.[6]

Second, Plaintiff's effort to broadly define "advertising" to include its MSDS claim is unpersuasive. Plaintiff correctly notes that courts look to Lanham Act and FTC Act decisions to interpret the UTPCPL, but then inexplicably turns to a Minnesota case to define the term.[7] *Pl's. Opp.* at 13. Second Circuit Lanham Act authority provides that "commercial advertising or promotion" must have as its purpose "influencing consumers to buy defendant's goods or services." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002) (internal citations omitted). Although the SAC uses the labels "marketed" and "advertised," it contains no factual allegation that Defendants issued allegedly deceptive MSDSs to influence customers to buy their products.

---

[6] Plaintiff does not substantively address case law cited by Defendants that limited subsection (v) to false advertising. *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) ("Pennsylvania state and federal courts have ruled that [§§ (v) and (ix)] apply only to claims of false advertising"). Instead, Plaintiff cites older cases where courts found allegations sufficient to sustain UTPCPL claims but did not analyze requirements of individual subsections.

[7] Even there, the court held securities documents were advertisements "[t]o the extent that the public relies on [them] to decide whether to buy or sell appellant's stock." *United Health Group, Inc. v. State*, 2007 Minn. App. Unpub. LEXIS 1141, at *12-13 (Minn. App. Dec. 4, 2007). Plaintiff also cited a definition of "advertising" from a bait-and-switch regulation that was limited "[f]or the purpose of this part." 16 C.F.R. 238.0 n.1. *Pl.'s Opp.* at 13.

Finally, Plaintiff agrees that UTPCPL subsection (v) requires pleading "false information," but claims that it does not require any "affirmative misrepresentation." *Pl.'s Opp.* at 15. Its position is contradicted by the active verb in subsection (v): ***"[r]epresenting*** that goods or services have sponsorship, approval, characteristics…that they do not have…." 73 P.S. § 201-2(4)(v) (emphasis added); *see also Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 385 (E.D. Pa. 1996) ("the plain language of [subsections (v) and (vii)] requires an affirmative representation as a predicate for liability"). Despite Plaintiff's self-serving claims to the contrary, the SAC fails to identify any affirmative false representation in an MSDS. *Pl.'s Opp.* at 17. Paragraphs 285 and 396(a)[8] are conclusory allegations, not false representations.[9]

### B. Plaintiff's "Catch-All" Claim Fails Because the Complaint Does Not Allege How the MSDSs Likely Caused Confusion.

Plaintiff mischaracterizes the MSDS Defendants' argument regarding claims under the UTPCPL "catch-all" provision. Quoting *Rubenstein v. Dovenmuehle Morg., Inc.*, 2009 WL 3467769 (E.D. Pa. 2009), Plaintiff argues that a "catch-all" claim can be based on an omission rather than a misstatement. *Pl.'s Opp.* at 19. But the MSDS Defendants do not dispute that an omission can form the basis of a claim under the catch-all provision. Rather, the MSDS Defendants argue, among other things (*see Defs.' Br.* at 12-13), that "[a] plaintiff must plead facts alleging a ***specific*** deceptive act rather than a general failure to disclose information." *Goleman v. York Int'l Corp.*, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3, 2011).

Although Plaintiff's Opposition cites twenty paragraphs in the SAC allegedly containing

---

[8] Plaintiff apparently intended to refer to SAC ¶ 396(a), not 296(a), in its brief. *Pl.'s Opp.* at 17.

[9] Plaintiff does not address MSDS Defendants' arguments for dismissal of Count VI subsection (vii) claims (*Defs.' Br.* at 10), apparently conceding that Count VI is not brought pursuant to this subsection. Plaintiff also explicitly concedes it is not pursuing a UTPCPL subsection (viii) claim in Count VI. *Pl's. Opp.* at 17. Defendants address Plaintiff's product disparagement claims in conjunction with Count VII in Section III, *infra*.

the "specific information" it claims was fraudulent or deceptive by omission, it does not identify allegations regarding the purported fraudulent or deceptive impact of these alleged omissions on consumers. *See Pl.'s Opp.* at 18-19. Indeed, nowhere in the 531 paragraph SAC does Plaintiff allege how the MSDSs "create[d] [for consumers, Pennsylvania residents, or the Commonwealth] a likelihood of confusion or of misunderstanding' under the catchall provision." *In re MTBE*, 2015 WL 4092326, at *5 (citing 73 P.S. § 201-2(4)(xxi)). Accordingly, Plaintiff cannot state a claim against the MSDS Defendants under the "catch-all" provision.

### III. COUNT VII LACKS ALLEGATIONS OF ACTIONABLE CONDUCT.

#### A.  The "Government Gas" Piece Is Protected By The First Amendment.

In their opening brief, Defendants showed that the API "Government Gas" piece was not actionable for four reasons: first, the UTPCPL applies only to "trade or commerce," not political activity; second, the First Amendment protects petitioning activity; third, the piece contains nothing false or deceptive; and fourth, none of the Defendants placed it. Plaintiff fails to mount a legitimate challenge to any of those points. Instead, it simply insists, *ipse dixit*, that an advocacy piece funded by a non-defendant trade association urging citizens to "ask your U.S. Representative to reject 'Government Gas' amendments to the Clean Air Act" is not political activity. *Pl.'s Opp.* at 20. Plaintiff does not mention, much less distinguish, *Noerr*, *Pennington*, or the other First Amendment authorities on which Defendants rely. *Id.* Further, Plaintiff still fails to identify any false statement in that piece, arguing instead that the Court should divine something actionable about it by considering "the context of the SAC's allegations." *Id.*

What matters here is the statement's content, not what Plaintiff deems to be its "context." *Consol. Edison v. Pub. Serv. Comm'n*, 447 U.S. 530, 538 n.5 (1980) (in First Amendment analysis, "[courts] must look to the content of the expression"). Even if "context" is considered, Plaintiff pleads that "the petroleum industry ... lobbied Congress" on the 1990 Clean Air Act

6

Amendments. SAC ¶ 156. Businesses possess a First Amendment right to petition the legislature, *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 355 (2010), and there is no suggestion that API's lobbying was anything but a legitimate – and successful – campaign to avoid a federal ethanol mandate. Successful efforts to petition the government are *per se* lawful (*Noerr*, 365 U.S. at 144; *Pennington*, 381 U.S. at 671), and any incidental "disparagement" of ethanol is irrelevant. *See Defs.' Br.* at 16. Plaintiff offers nothing to the contrary.

B.  **The Newspaper Articles Are Not False and, Therefore, Not Actionable.**

Defendants also showed that the SAC failed to allege any public or marketing statement misstating the properties of their gasoline or "disparaging" ethanol by Valero, ExxonMobil, Marathon or Sunoco. *Defs.' Br.* at 17. In response, Plaintiff claims that such allegations appear in SAC ¶ 269. *Pl.'s Opp.* at 22. But that paragraph references only a 25-year-old *Philadelphia Inquirer* article, and that article says no such thing. All it says is that "[s]even oil companies – Arco, Conoco, Diamond Shamrock, Exxon, Marathon, Phillips and Shell – are selling or have announced plans to sell cleaner-burning[10] gasoline." *Gerson Decl.*, Ex. 1. No one from Arco, Diamond Shamrock, Exxon, Marathon or Phillips is quoted (Sunoco is not even mentioned), and even Plaintiff acknowledges that RFG is, in fact, cleaner-burning. 25 Pa. Code § 126.104. And despite Plaintiff's claim that these 25-year-old articles "disparage" ethanol (*Pl.'s Opp.* at 22), the word "ethanol" does not appear in any of them. *Gerson Decl.*, Exs. 1-3.

The few statements attributed to Shell and Conoco employees are not actionable either. As Defendants showed, none contains any false factual representation – something Plaintiff fails to contest – and therefore they are not actionable. *Defs.' Br.* at 18-20 (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001)); *Commw. v. Hush-Tone Indus.*, 4 Pa. Commw. 1, 21 (1971);

---

[10] SAC ¶ 269 conveniently omits the word "burning" when discussing the article.

*Karlsson v. FDIC*, 942 F. Supp. 1022, 1023 (E.D. Pa. 1996), *aff'd*, 107 F.3d 862 (3d Cir. 1997)). At best, the language quoted is non-actionable opinion. *Berkabile v. Brantly Helicopter Corp.*, 337 A.2d 893 (Pa. 1985); *Huddleston v. Infertility Ctr.*, 700 A.2d 453 (Pa. Super. 1997) (claim that defendant ran "premier" program designed to ensure safety of clients not actionable); *Hoffman v. A.B. Chance Co.*, 339 F. Supp. 1385, 1388 (M.D. Pa. 1972) (claim that product "offered unprecedented safety" not actionable).[11] The UTPCPL claim should be dismissed.

### C. The "Catch-All" Claim Fails Because Plaintiff Does Not Plead Fraud.

Plaintiff does not dispute that prior to 1997, the UTPCPL "catch-all" provision proscribed only fraudulent conduct. Nor does it dispute that all of the relevant Count VII allegations relate to pre-1997 conduct, or that it has failed to plead the elements of common-law fraud. Instead, Plaintiff's sole argument in support of its claim under the catch-all provision is that *Weinberg, supra*, relaxed the standard for actions brought by the Attorney General such that it is not required to plead fraud. *See Pl.'s Opp.* at 22-23. That argument is incorrect. *Weinberg* stated that, given its role, the Attorney General (unlike private plaintiffs) need not establish reliance or causation when prosecuting an action for *deceptive* conduct under the UTPCPL. But *Weinberg* did not address alleged fraudulent conduct under the catch-all provision, let alone set a different standard for any such claims brought by the Attorney General.[12] Prior to the 1997 amendment, Pennsylvania courts held that the Attorney General must allege the elements of

---

[11] Predicating UTPCPL liability on alleged "omissions" in press interviews is suspect at best. Unlike advertising, where the sponsor controls the content, a newspaper contains only what the reporter and editor choose to include. *Cf. Thompson v. Glenmede Trust Co.*, 2003 WL 1848011, at * 1 (Pa. Comm. Pl. Feb. 18, 2003) ("individual representations" by employees "do not constitute 'advertising' as intended by the UTPCPL"); *Boule v. Hutton*, 70 F. Supp. 2d 378, 390 (S.D.N.Y. 1999) (statements in magazine article not "commercial advertising or promotion").

[12] *Weinberg* addressed claims of misrepresentation and false advertising, but not fraud under the pre-amendment catch-all provision, and it involved private plaintiffs, not the Attorney General.

8

fraud under the catch-all provision.[13] Nothing in *Weinberg* changes Pennsylvania law on that point, nor does its reasoning support any such change.

## IV. THE COMMONWEALTH'S STSPA CLAIM FAILS BECAUSE IT NEVER SOUGHT INSURANCE INFORMATION FROM DEFENDANTS.

Plaintiff's Opposition confirms that it cannot plead the critical fact necessary to support its "failure to cooperate" claim in Count IX: that it asked about private insurance.[14] In dismissing this claim previously, the Court held that the Storage Tank and Spill Prevention Act ("STSPA")—and specifically 25 Pa. Code § 977.32—does not impose an affirmative obligation to disclose insurance policies. Instead, as the Court explained, *Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485 (Pa. Commw. Ct. 2005), "confirms what the plain language of Section 977.32 states—*disclosure is required upon a 'request' from the Fund.*" *In re MTBE*, 2015 WL 2354582 at *5 & n.67 (emphasis added). All Plaintiff had to do in the SAC is allege that ICF, Plaintiff's vendor, asked Defendants about their private insurance coverage. But Plaintiff still does not make this allegation—because it cannot.

In an attempt to save this claim, Plaintiff argues that, although ICF did not ask about private insurance, it did ask about "subrogation." *Pl.'s Opp.* at 25. Thus, Plaintiff suggests, the Insurance Defendants should have unilaterally announced the "existence of [their] private insurance policies" because they were "relevant" to the subrogation inquiry. *Id.* In other words, Plaintiff asks the Court to hold that the Insurance Defendants had an implied duty to disclose that they had private insurance policies in the course of ICF's subrogation investigation.

---

[13] *See, e.g., Chatham Racquet Club v. Commw.*, 561 A.2d 354, 359 (Pa. Commw. Ct. 1989) (stating, in case brought by Attorney General, "[c]learly, the conduct under [the catch-all provision] must be fraudulent"); *Hush-Tone*, 4 Pa. Cmwlth. at 24 (Attorney General failed to "prove ... fraudulent conduct creating a likelihood of confusion or misunderstanding.").

[14] Plaintiff is correct that Insurance Defendants do not seek to dismiss Count IX to the extent it alleges that such Defendants submitted claims for releases that occurred before February 1, 1994.

9

But this Court already held that there is no "implied duty on the Insurance Defendants to protect the Commonwealth's subrogation rights." *In re MTBE*, 2015 WL 2354582 at *5. Moreover, it is no secret that major companies—like the Insurance Defendants—have standard commercial insurance policies. If the "existence" of this private insurance was "relevant" to the subrogation inquiry, then why did ICF not ask about it? The reason why is simple: as previously explained, a traditional subrogation claim does not involve insurance at all. *Defs.' Br.* at 24. Moreover, the absolute pollution exclusion—a standard part of commercial general liability insurance since the mid-1980s—"clearly and unambiguously excludes [an] owner's claim for coverage due to harm caused by gasoline leakage into the soil." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1234 (Pa. Commw. Ct. 2002). Thus, ICF's silence as to private insurance policies was perfectly reasonable. And if ICF did not deem these policies "relevant" enough to ask about, then Defendants cannot be held liable for failing to announce their "existence" to ICF.

In staking its claim on ICF's subrogation investigation, Plaintiff also fails to note that there was *no* subrogation right during the first eight years of the USTIF's history. Instead, the right to subrogation at 25 Pa. Code § 977.40 only came into effect on January 1, 2002. *Pa. Bulletin*, Vol. 31, No. 48, 25 Pa. Code Ch. 245, 977.40 (eff. Jan 1, 2002). Thus, at the very least, this Court should reject Plaintiff's claim that the Insurance Defendants had an implied duty to disclose the "existence of [their] private insurance policies" prior to this date, when no subrogation right even existed.

## CONCLUSION

Plaintiff's Second Amended Complaint does not fix the deficiencies found in the prior iteration. Accordingly, Counts VI, VII and IX should be dismissed with prejudice, and Count II should be ordered amended consistent with this Court's July 2, 2015 Opinion & Order, including identification of the Defendants against which it is being pursued.

February 19, 2016  
New York, New York

Respectfully submitted,

By: _____  
James A. Pardo  
Lisa A. Gerson  
MCDERMOTT WILL & EMERY LLP  
340 Madison Avenue  
New York, NY 10017-4613  
Tel. (212) 547-5400  
Fax (212) 547-5444

*Counsel for Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation, and on behalf of Defendants Listed on Attachment A to Defendants' Notice of Motion*

11