

Daniel M. Krainin
15th Floor
477 Madison Avenue
New York, NY 10022-5802
Direct:  +1.212.702.5417
Fax:  +1.212.702.5450
dkrainin@bdlaw.com

January 4, 2019

**VIA CM/ECF**

The Honorable Debra C. Freeman
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   Master File C.A. No. 1:001898 (VSB), MDL No. 1358
      *Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al.*, Case No.
      1:14-cv-06228-VSB-DCF
      Defendants' Motion to Compel Production of Documents and Testimony Withheld
      on Deliberative Process Grounds

Dear Judge Freeman:

Defendants[1] respectfully submit, and request oral argument on, this renewed motion to

compel the production of documents and testimony that Plaintiff the Commonwealth of

Pennsylvania is withholding based on improper claims of deliberative process privilege.[2]

## INTRODUCTION

The Commonwealth of Pennsylvania seeks to collect hundreds of millions or perhaps even

billions of dollars in this case.  To do so, the Commonwealth will argue, in part, that Defendants

acted negligently, recklessly, even maliciously with respect to the use of MTBE in gasoline.  At

the same time, the Commonwealth seeks to shield from discovery hundreds of documents that go

---

[1] *See* Appendix for list moving Defendants.

[2] The parties have met and conferred extensively, by telephone and in writing, but have been
unable to resolve this dispute.  The Commonwealth has acknowledged that the parties are at an
impasse and the dispute is ripe for resolution.  *See* Ex. A (Email from T. Wren to D. Krainin, Dec.
21, 2018).  The parties have further stipulated to the following briefing schedule:  Defendants'
letter-motion, Jan. 4, 2019; Plaintiff's opposition, Jan. 18, 2019; Defendants' reply, Jan. 25, 2019.

The Honorable Debra C. Freeman
January 4, 2019
Page 2

to those very issues, including Commonwealth officials' views on the reasonableness of using gasoline containing MTBE in Pennsylvania.  Specifically, the Commonwealth has withheld or "clawed back" more than 450 documents, and has directed deponents not to answer dozens of questions, on the basis of the deliberative process privilege alone.[3]  These documents were generated by the Commonwealth in the ordinary course of its operations; they do not involve attorney-client communications or attorney work product.  Rather, they simply reveal what Commonwealth officials thought about issues pertinent to the use of MTBE or other oxygenates in Pennsylvania at relevant times.

In many cases, the withheld documents presumably support key defenses.  They may show, for example, that high-ranking Commonwealth officials argued in favor of expanding the use of gasoline containing MTBE because of its clean-air benefits or because of limitations on the supply or logistics of transporting ethanol, the principal alternative to MTBE.[4]  The Commonwealth, however, has refused to produce documents that reveal such deliberations.  The Defendants, in contrast, have produced myriad analogous documents about their decisions to use MTBE and their weighing of the advantages and disadvantages of using MTBE.  No private plaintiff would have any basis to withhold the documents at issue in this motion.  The Commonwealth should not be allowed to withhold them either.

---

[3] The number of documents withheld increases to more than 600 if documents that the Commonwealth withheld on the basis of the attorney-client privilege or work product doctrine, in addition to deliberative process, are included.  Moreover, the Commonwealth's production of electronic loose files (including emails) is far from complete; thus, Defendants anticipate many more additional documents will be withheld as privileged.  Defendants reserve the right to challenge any additional document withheld as privileged.

[4] Indeed, at one point the Commonwealth sought to have 33 Pennsylvania counties participate in the U.S. EPA's reformulated gasoline program to improve Pennsylvania's air quality – thereby effectively mandating the use of gasoline containing MTBE in a large portion of the Commonwealth – but ultimately reversed course, leaving only five counties to participate in the program.

The Honorable Debra C. Freeman
January 4, 2019
Page 3

Moreover, the deliberative process privilege does not apply where the withheld documents relate to topics that a governmental plaintiff has put directly at issue and that are relevant to critical defense themes.  For example, the Commonwealth cannot put the reasonableness of Defendants' conduct regarding MTBE at issue in its Complaint and, at the same time, withhold documents and testimony pertaining to conduct regarding MTBE that the Commonwealth considered reasonable.

Apart from the Commonwealth's improper reliance on the privilege as a plaintiff and with respect to topics it has put at issue in this case, the Commonwealth's assertions of the privilege – via privilege logs and an eleventh-hour declaration – are both procedurally and substantively deficient.  Finally, the Defendants' interest in obtaining the withheld information outweighs any interest the Commonwealth has in protecting it.[5]  In short, the Commonwealth's assertion of the deliberative process privilege in this action has been improper and the Court should order it to produce all documents that have been withheld on the basis of this privilege claim.

## I.      THE COMMONWEALTH HAS WAIVED ANY APPLICABLE DELIBERATIVE PROCESS PRIVILEGE IN THIS ACTION.

### A.      The Commonwealth Waived Deliberative Process Protection by Filing This Action.

By filing this lawsuit and seeking hundreds of millions of dollars or more, the Commonwealth has ceded any claim it may otherwise have had to withhold evidence on deliberative process grounds.  As a preliminary matter, no majority of the Pennsylvania Supreme Court has expressly adopted the deliberative process privilege, nor has that court opined on the application of the privilege in the context of litigation, as opposed to a request under Pennsylvania's Right to Know Law.  *See Commonwealth v. Vartan,* 733 A.2d 1258, 1263 (1999)

---

[5] In the event the Court is reluctant to make a waiver determination without reference to specific documents, Defendants discuss below five sets of documents withheld or clawed back from production that elucidate the impropriety of Plaintiff's privilege claims.  *See* Section III, *infra*.

The Honorable Debra C. Freeman
January 4, 2019
Page 4

(plurality opinion); *see also Lavalle v. Off. of Gen. Couns. of the Commonwealth*, 769 A.2d 449,

457 (2001) ("This Court has not definitively adopted the deliberative process privilege.").[6]

Even assuming that the deliberative process privilege has some application in

Pennsylvania beyond Right-to-Know requests, it should not be found to apply to litigation matters

in which the Commonwealth is a plaintiff.  "When the government seeks affirmative relief, it is

fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have

to turn over."  *EEOC v. Airborne Express*, 98-cv-01471, 1999 WL 124380, at *2 (E.D. Pa. Feb. 23,

1999) (internal quote and citation omitted); *cf. EEOC v. Los Alamos Constructors, Inc.,* 382 F.

Supp. 1373, 1383, 1386 (D.N.M. 1974) (reviewing an "almost unbroken line of authority" and

holding that government officials "ordinarily have no fewer and no more rights in a lawsuit than

does their adversary"); *Wunderly v. U.S.*, 8 F.R.D. 356, 357 (E.D. Pa. 1948) (holding government,

as litigant, is "on a par with private litigants").  The Court need look no further than these cases to

determine that the deliberative process privilege does not apply here and the documents withheld

by the Commonwealth must be produced.

**B.**      **The Commonwealth Has Waived Deliberative Process Protection Regarding
         All Topics It Has Put at Issue in This Litigation.**

Even if the Court finds that the deliberative process privilege may apply when the

Commonwealth is the plaintiff, here, the Commonwealth cannot withhold from production

documents relating to MTBE and other oxygenates because it has put those topics at issue in this

---

[6] During the meet-and-confer, the Commonwealth argued that the codification of a deliberative
process exception under the Pennsylvania Right-to-Know Law establishes the existence and
applicability of the privilege in this case.  *See* email from T. Wren to D. Krainin, Nov. 21, 2018
(attached as Exhibit A) (citing 65 P.S. § 67.708(b)(10)(i)(A)).  The provision relied on by the
Commonwealth, however, applies only to requests for access to government documents made
under the Right to Know Law, *see* 65 P.S. § 67.708(b) (identifying categories of documents
"exempt from access by a requester *under this act*") (emphasis added); it does not limit the
Commonwealth's obligations to produce documents as a party, let alone plaintiff, in litigation.

The Honorable Debra C. Freeman
January 4, 2019
Page 5

case.  It is axiomatic that a party waives its claim to privilege when it asserts claims or defenses

that put its privileged communications at issue.  *See Mine Safety Appliances Co. v. N. River Ins.*

*Co.,* 73 F. Supp. 3d 544, 571 (W.D. Pa. 2014).  Moreover, where a party does so, "the privilege is

waived for all communications on the same subject." *Id.* at 572.

      The MDL 1358 court has found that the "at issue" doctrine "is triggered when the evidence

sought is: (1) legitimately needed; (2) relevant and material to the issue before the court; and (3)

unobtainable from any less intrusive source." *In re MTBE Prod. Liab. Litig.*, 898 F. Supp. 2d 603,

607 (S.D.N.Y. 2012) (internal footnote and citation omitted).  In the New Jersey MTBE case,

Judge Scheindlin held that by asserting a failure to warn claim, Plaintiff New Jersey Department of

Environmental Protection ("NJDEP") "put directly at issue its own deliberations regarding the

relative risks and benefits of adding MTBE to gasoline." *Id.* at 610.  Were the privilege not

waived, the court reasoned, "NJDEP could protect from discovery any deliberative process

materials in which NJDEP officials are dismissive of the risks of MTBE and/or strongly

supportive of adding the compound to gasoline. . . . This is precisely the inequitable use of

privilege as a sword rather than a shield that the 'at issue' doctrine prevents." *Id*. (quote marks and

internal citation omitted).  Accordingly, the MDL court ordered NJDEP to produce all documents

relating to its internal deliberations on the relative risks and benefits of MTBE. *Id.*

      The Commonwealth has similarly waived the right to assert the deliberative process

privilege through claims and allegations in its Second Amended Complaint that put its

deliberations regarding MTBE at issue.  For example, Count I asserts claims for strict liability for

defective design.  This claim puts at issue what the Commonwealth understood about MTBE, what

it considered MTBE's risks and benefits to be, and the feasibility of alternatives to MTBE.  *See* 2d

Am. Compl. at ¶ 352; *see, e.g., Dunlap v. Fed. Signal Corp.*, 194 A.3d 1067 (Pa. Super. Ct. 2018)

The Honorable Debra C. Freeman
January 4, 2019
Page 6

(affirming dismissal of design defect claim where plaintiff failed to prove that product's risks

outweighed its benefits or that a feasible alternative design existed).  During the meet-and-confer,

the Commonwealth argued that it has not put its deliberations at issue in this count because the

Pennsylvania standard for a defective product is an objective one.  *See* Email from T. Wren to D.

Krainin, Nov. 21, 2018 (Exhibit A).  Pennsylvania law, however, is not settled on this point.  In

*Tincher v. Omega Flex, Inc.*, the Pennsylvania Supreme Court held that the consumer expectations

test may apply and acknowledged that negligence-based defenses may be appropriate in design

defect cases.  104 A.3d 328, 399–400, 409–10 (Pa. 2014).  As a result, whether Commonwealth

employees thought the use of MTBE was reasonable—based on the same information that was

available to Defendants at the time—cannot be shielded from discovery.

Likewise, just as Judge Scheindlin specifically relied on allegations made by NJDEP in

support of its failure to warn claim, the Commonwealth has put the same basic allegations at issue

here.[7]  The failure to warn claim in Count II of the Second Amended Complaint places at issue the

Commonwealth's own knowledge and views regarding preventing and addressing any releases of

MTBE to the environment.[8]  As in the New Jersey MTBE case, the Commonwealth's knowledge

---

[7] *See generally* 2d Am. Compl. at ¶¶ 360–66; *see, e.g., Id.* at ¶ 364 ("MTBE Defendants' failure to provide [adequate] warnings or instructions . . . on the use of or dangers presented by MTBE and/or MTBE gasoline rendered these products defective and unreasonably dangerous [and] were a direct and proximate cause of the injuries to the waters of the Commonwealth . . . .").

[8] During the meet-and-confer, the Commonwealth attempted to distinguish its complaint from the *NJDEP* complaint, arguing that it has not asserted a claim for failure to warn the plaintiff, only claims for failure to warn downstream distributors, sellers, and users of gasoline containing MTBE.  Email from T. Wren to D. Krainin, Nov. 21, 2018 (attached as Exhibit A).  Defendants disagree that any such distinction between the two complaints creates a material difference between this case and the New Jersey MTBE case as it relates to waiver of the deliberative process privilege.  Moreover, regardless of any such limitation on the Commonwealth's failure to warn claim, Defendants are entitled to explore other causes of the alleged injury, including, for example, the Commonwealth's own actions or inaction as the regulator.  Finally, any limits on discovery of deliberative process materials suggested by the New Jersey opinion are inapposite here because

The Honorable Debra C. Freeman
January 4, 2019
Page 7

and deliberations regarding the risks and benefits of MTBE are of central importance to this litigation.  If the Commonwealth and downstream handlers of gasoline containing MTBE understood the alleged risks associated with the product and declined to take further precautions, then any failure to warn on the part of Defendants was immaterial in that it could not have caused any of the alleged injuries.  *See Punch v. Dollar Tree Stores, Inc.*, No. 12-cv-00154, 2017 WL 752396, at *16 (W.D. Pa. Feb. 17, 2017) (granting summary judgment on failure to warn claim because evidence did not support plaintiffs' "contention that they would have taken any precautions beyond those that they had already taken based on their acute understanding that the [products in question] were potentially dangerous").  The Commonwealth cannot now shield from production documents that may damage its posture in this litigation (but produce those that may support it).

The negligence and public nuisance counts asserted in the Second Amended Complaint also implicate the Commonwealth's deliberations regarding MTBE, including, for example, impacts to groundwater in the Commonwealth, and the Commonwealth's approach as regulator to preventing and addressing MTBE at release sites and in drinking water supplies.  The Commonwealth alleges in both counts that Defendants acted unreasonably in their designing, manufacturing, handling, storing and selling gasoline containing MTBE.  *See, e.g.*, 2d Amend. Compl. ¶¶ 368, 377.  Nevertheless, the Commonwealth had the same basic knowledge as Defendants about MTBE and seeks to shield deliberations about how it chose to regulate the storage, handling and sale of gasoline containing MTBE.  It likewise considered but elected not to ban the use of MTBE within its borders.  Defendants are entitled to explore all relevant statements

---

the MDL court in that case did not consider the arguments Defendants make here regarding waiver of the privilege based on the Commonwealth's negligence and nuisance claims, or its compensatory and punitive damages award requests.

The Honorable Debra C. Freeman
January 4, 2019
Page 8

made by Commonwealth officials, including the extent to which their regulatory or policy

communications at the time differ from the Commonwealth's litigation position today.

The Commonwealth also put its deliberations at issue with its claims for compensatory and

punitive damages.  With respect to compensatory damages, Plaintiff has a duty to mitigate and

minimize any damages.  *Moorhead v. Crozer Chester Med. Ctr.*, 765 A.2d 786, 790 (Pa. 2001)

(abrogated on other grounds).  In seeking punitive damages, the Commonwealth alleges that

Defendants' conduct was "wanton, malicious, oppressive and fraudulent."  *See* 2d Amend. Compl.

¶ 19.  To properly defend against these claims, Defendants must have access to Commonwealth

officials' deliberations regarding, for example, whether and how to address the use, storage and

environmental releases of gasoline containing MTBE; MTBE's air quality benefits; the relative

benefits and risks of gasoline containing MTBE compared with conventional gasoline or gasoline

containing ethanol; any alleged health effects of MTBE; and the feasibility of alternatives to

MTBE (including the foregoing issues as they relate to ethanol or other oxygenates).[9]

The Commonwealth cannot be permitted to present a case to the jury arguing that

Defendants' conduct and decisions decades ago regarding MTBE were unreasonable or even

"malicious" while simultaneously refusing to disclose what its own officials thought and said

about those same decisions and conduct at the time.  By putting Defendants' use of MTBE in

---

[9] The Commonwealth, in producing the Supplemental Declaration of George Hartenstein (dated December 20, 2018), has identified 19 categories of issues that are addressed in the documents withheld on deliberative process grounds.  Deliberations on any and all of those topics are relevant, and potentially critical, to defenses such as the reasonableness of Defendants' conduct and the Commonwealth's failure to mitigate damages.  To take just the first two categories identified in the Hartenstein Declaration as examples, deliberations regarding "[f]uel shortage and related waiver requests" could provide evidence that certain Commonwealth officials favored increased use of MTBE in Pennsylvania to ease gasoline supply constraints; likewise, deliberations regarding "[d]raft guidance and remediation standards" would likely provide evidence regarding what Commonwealth officials thought about the costs and benefits of requiring more stringent cleanups (such as those the Commonwealth seeks in this litigation) at MTBE release sites.

The Honorable Debra C. Freeman
January 4, 2019
Page 9

gasoline directly at issue in this case, the Commonwealth has waived any protection it may have

had regarding internal communications that reflect its pre-litigation views on the subject.

## II.   THE DOCUMENTS THE COMMONWEALTH HAS WITHHELD DO NOT QUALIFY FOR DELIBERATIVE PROCESS PROTECTION.

Even if the Court does not agree that the Commonwealth has waived any potentially

applicable deliberative process privilege by filing this action or by putting at issue Defendants'

conduct regarding the use of MTBE in gasoline, the Commonwealth cannot properly assert the

deliberative process privilege here because (i) its assertions of the privilege are both procedurally

and substantively inadequate; and (ii) the Defendants' interests in disclosure of the documents

outweigh the Commonwealth's interests in keeping them secret.

### A.   The Commonwealth's Assertions of the Deliberative Process Privilege Are Both Procedurally and Substantively Deficient.

#### 1.   The Privilege Logs are Procedurally and Substantively Inadequate.

The Commonwealth initially attempted to assert the deliberative process privilege in this

action primarily through privilege logs, but those logs are both procedurally and substantively

inadequate.  The use of logs or other assertions of privilege by outside counsel are procedurally

improper because deliberative process claims must be made by a qualified government official.

Courts, including the MDL 1358 court, have declined to apply the deliberative process privilege

when attorney advocates make the determination rather than the agency head or a qualified

designee.  *See In re MTBE Prod. Liab. Litig.*, 274 F.R.D. 106, 111 (S.D.N.Y. 2011).  As the MDL

court explained, these "enhanced procedural hurdles on assertions of the deliberative process

privilege . . . [are] not without salutary effects, as transaction costs deter reflexive assertion of the

privilege and unnecessary government secrecy."  *Id.*  An attorney representing the agency in

The Honorable Debra C. Freeman
January 4, 2019
Page 10

litigation is not qualified to assess the agency's interests in protecting a document from disclosure independent of the litigation.  *Id.*

Here, the vast majority (nearly 85%) of the documents withheld by the Commonwealth on deliberative process grounds have only been reviewed by outside counsel.[10]  Outside counsel are not qualified to assess PADEP's (or any other Commonwealth agency's) interests in protecting a document from disclosure independent of this litigation.  This deficiency alone dooms the Commonwealth's privilege assertion for the 523 of 626 documents that the Commonwealth has withheld based upon a privilege assertion by outside counsel only.

The Commonwealth's privilege logs are also substantively inadequate as they do not contain sufficient detail to establish the applicability of the deliberative process privilege.  Under Federal Rule of Civil Procedure 26(b)(5)(A), a party withholding otherwise discoverable documents on the basis of privilege must describe the withheld documents "in a manner that . . . will enable other parties to assess the claim."  *In re MTBE Litig.*, 274 F.R.D. at 111.  "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."  *Id.* at 112.[11]

To the extent the deliberative process privilege may apply here at all, then, the Commonwealth must provide enough detailed information to establish that the communications at issue were pre-decisional and deliberative.  *See id.; Vartan*, 733 A.2d at 1264; *Ario v. Deloitte &*

---

[10] In an effort to beef up its deliberative process claims, the Commonwealth recently produced a declaration by a Commonwealth official who attests to having reviewed 103 of the 626 documents withheld on deliberative process grounds.  *See* Supplemental Declaration of George Hartenstein at ¶¶ 8-9.  For the reasons discussed at Section II.A.2, *infra*, this declaration does not change the result here because it is also substantively and procedurally deficient.

[11] The party asserting the deliberative process privilege, of course, bears the burden of proving that it applies.  *Joe v. Prison Health Servs., Inc.,* 782 A.2d 24, 33 (Pa. Commw. Ct. 2001).

The Honorable Debra C. Freeman
January 4, 2019
Page 11

*Touche LLP*, 934 A.2d 1290, 1293 (Pa. Commw. Ct. 2007).  To qualify as pre-decisional, the

communications must be "made before the deliberative process was completed."  *Vartan*, 733

A.2d at 1264.  To qualify as deliberative, they must be "a direct part of the deliberative process in

that [they] make[] recommendations or express[] opinions on legal or policy matters."  *Id.*

Purely factual material that is severable from any pre-decisional and deliberative material

must be produced.  *Id.*  A document that was pre-decisional when created loses its protection if the

positions taken in the document are adopted as the agency position, even on an informal basis.

*LeGrande v. Dep't of Corrections,* 920 A.2d 943, 952 (Pa. Commw. Ct. 2007).  In all cases, the

deliberative process privilege should be "narrowly construed."  *Joe,* 782 A.2d at 33; *accord*

*Redland Soccer Club, Inc. v. U.S. Dep't of Army,* 55 F. 3d 827 (3d Cir. 1995).

Here, the Commonwealth's privilege logs do not provide sufficient information to evaluate

its deliberative process claims.  For example, of the 20 deliberative process privilege log entries

included in Exhibit B,[12] none of them identifies the decision at issue, whether it was made and, if

so, when it was made.  Fifteen of the 20 entries expressly refer to decisions or actions that the

Commonwealth "may or may not" take.  The remainder use similarly ambiguous and

non-committal language (e.g., "potential" or "possible" actions by the Commonwealth).

These 20 documents (at least those for which dates are provided) range from five to 17

years old; the Commonwealth certainly has concluded its deliberations and acted on any proposals

that were under consideration at the time.  During the meet-and-confer, counsel for the

Commonwealth suggested it should be excused from the requirement to establish each element of

the privilege because it is sometimes difficult – particularly given that the Commonwealth waited

---

[12] Defendants have submitted only this limited set of privilege log entries in an effort to minimize
the burden on the Court.  Defendants would be pleased to submit copies of all relevant privilege
log entries upon request by the Court.

The Honorable Debra C. Freeman
January 4, 2019
Page 12

decades before bringing this action – to determine whether or when a decision was made. That the Commonwealth does not wish to undertake the effort to determine whether, when and how each proposal was acted on does not excuse the Commonwealth from meeting its burden to establish these issues if it wishes to assert the privilege.[13]

Likewise, the Commonwealth's log entries do not contain sufficient detail to evaluate whether they are deliberative. Of the 20 entries, only one states that it contains a "recommendation;" none state that they express opinions on legal or policy matters. Rather, the vast majority state that they discuss or reflect "actions" that may or may not be taken by DEP; they do not provide sufficient detail for Defendants or the Court to evaluate whether or not the communications at issue are deliberative.

> 2.   The Declaration Is Substantively and Procedurally Improper.

The declaration that the Commonwealth belatedly produced in an effort to shore up its deliberative process claims fares no better than the privilege logs, as it too is substantively and procedurally deficient. To satisfy the burden of establishing that the deliberative process privilege applies, "affidavits must be detailed, non-conclusory, and submitted in good faith." *Off. of the Governor v. Scolforo,* 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013).[14] "In other words, a generic determination or conclusory statements are not sufficient to justify" applying the privilege. *Id.*

In the *Scolforo* case, the Governor's office submitted an affidavit that described the redactions at issue as being "reflective of internal deliberations that preceded decisions related to

---

[13] If the Commonwealth wishes to alleviate any burden, it may do so by producing the documents at issue, not by ignoring the requirements of the privilege.

[14] *Scolforo* and related cases addressing the requirements for a governmental declaration or affidavit in support of a deliberative process claims were decided under the Right to Know Law, but to the extent the Court finds the deliberative process privilege may apply in litigation matters brought by the Commonwealth, the reasoning regarding affidavits in these cases is instructive.

The Honorable Debra C. Freeman
January 4, 2019
Page 13

subjects including the transition into the new administration, [various] policy decisions, [and] related courses of actions. . . ." *Id.* at 1104. The court held that although the affidavit "track[ed] the language of the exception[,] it presuppose[d], rather than prove[d] with sufficient detail," that the withheld material was exempt from disclosure. *Id.* To meet its burden, the government's affidavit "must be specific enough to permit" the opposing party "or this Court to ascertain how disclosure of the entries would reflect the internal deliberations on those subjects." *Id.*

Here, the statements contained in the declaration produced by the Commonwealth are conclusory, not detailed. The portions of the Supplemental Declaration of George Hartenstein that are most on point state as follows:

- "the subject matter(s) and/or action(s) reflected in the document was or were predecisional, deliberative and not a final agency policy, determination or action by the Department;" and

- the withheld documents reflect "analysis, recommendations, or advice on agency decisions regarding, *inter alia*, regulatory and enforcement issues and matters on gasoline and other fuel mixtures, fuel additives … [and various other issues relevant to the litigation]."

Supp. Decl. of G. Hartenstein (Dec. 20, 2018) at ¶¶ 10, 12 (Exhibit C). In short, the conclusory statements in the Hartenstein declaration do not suffice to meet the Commonwealth's burden.[15]

In addition to its substantive inadequacies, the Hartenstein declaration is procedurally deficient. Indeed, the Commonwealth concedes that Mr. Hartenstein has reviewed only approximately 15% of the documents it has withheld on deliberative process grounds. *See id.* at ¶¶ 8–9. The Commonwealth has attempted to excuse its failure to have all relevant documents

---

[15] Defendants further object to the portions of the declaration cited above as impermissible legal conclusions. Defendants likewise object to, and urge the Court to disregard, Paragraphs 13-15 of the Hartenstein Declaration because they are replete with legal conclusions, policy opinions and speculation that are beyond the scope of Mr. Hartenstein's knowledge.

The Honorable Debra C. Freeman
January 4, 2019
Page 14

reviewed by arguing that a qualified agency official need only review a "representative sample" of

withheld documents to claim privilege over a larger universe of them.

During the meet-and-confer, the Commonwealth relied on a single court opinion that

permitted this approach for a deliberative process claim – but that court did so under circumstances

that do not apply here.[16]  In *U.S. v. Pechiney Plastics Packaging, Inc.*, the U.S. Environmental

Protection Agency claimed deliberative process privilege over certain documents, including draft

proposed remedial action plans ("PRAPs") for a contaminated site.  *See* 2013 WL 1163514 (D.N.J.

Mar. 29, 2013).  The court there allowed EPA's assertion of the deliberative process privilege to

stand with respect to the proposed action plans, even though a qualified EPA official (consistent

with written agency policy) had reviewed only a "representative sample" of them.  *Id.* at *19.  The

court did not, however, allow EPA to conduct a partial review of any other category of documents

– it upheld the privilege claim regarding those other documents because a high-ranking EPA

official had reviewed them individually.  *Id.* at *18.

Proposed remedial action plans follow a specific format and include the same type of

information.  Those documents were all sufficiently similar in form and content to allow the

reviewer to make a judgment about all of the draft proposed remedial action plans after reviewing

a fraction of them.  The Commonwealth has identified no such discrete category of documents

here.  To the contrary, the withheld materials are a mix of emails, memos, draft testimony,

petitions, agendas, and correspondence (among other types of documents) covering at least the 19

topics identified by the Commonwealth.  *See* Supplemental Declaration at ¶ 8 (Exhibit C).  The

documents withheld here do not have anything remotely approaching the level of commonality in

---

[16] In addition to the *Pechiney Plastics* case discussed in the text, the Commonwealth also relied on *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. 680 (N.D.Ga. 1998) but that case is inapposite because it involved the investigatory privilege, not the deliberative process privilege.

The Honorable Debra C. Freeman
January 4, 2019
Page 15

form and content as did the proposed remedial action plans in the *Pechiney Plastics* case.  The

Commonwealth's reliance on a representative review is therefore misplaced.

### B. The Defendants' Interests in Obtaining the Information at Issue Outweigh the Commonwealth's Interests in Withholding It.

Even if the Court finds that the deliberative process privilege applies and has not been

waived here, and that the Commonwealth's substantively and procedurally dubious assertions of

the privilege may suffice, the balance of interests still favor disclosure.  The deliberative process

privilege is qualified and subject to a balancing test that pits "the interest of the government in

ensuring the secrecy of the documents in question" against "the need of the private party to obtain

discovery."  *Koken v. One Beacon Ins. Co.,* 911 A.2d 1021, 1027 (Pa. Commw. Ct. 2006).

In a toxic tort case involving federal statutory and Pennsylvania statutory and common law

claims, the Third Circuit identified the following five factors that should be evaluated when a court

weighs parties' interests regarding a deliberative process claim:

> (i) the relevance of the evidence sought to be protected; (ii) the availability
> of other evidence; (iii) the 'seriousness' of the litigation and the issues
> involved; (iv) the role of the government in the litigation; [and] (v) the
> possibility of future timidity by government employees. . . .

*Redland Soccer Club, Inc. v. U.S. Dep't of Army,* 55 F.3d 827, 854, 856 (3d Cir. 1995).[17]

Here, at least four of the five above factors favor disclosure of the withheld materials.

First, the evidence sought is relevant to this case for the reasons stated above (*see* Sec. I.B, *supra*);

indeed, the Commonwealth would not have recorded the documents on a privilege log were they

not relevant to the litigation and responsive to pending discovery requests.  Second, Defendants do

not have alternative means of discovering the evidence at issue; indeed, the Commonwealth has

---

[17] *See also In re MTBE Prod. Liab. Litig.*, 643 F. Supp. 2d at 442–43 (weighing similar balancing
test factors in MTBE case decided under New Jersey law).

The Honorable Debra C. Freeman
January 4, 2019
Page 16

foreclosed any such avenues by clawing back and withholding documents, and instructing its witnesses not to answer pertinent questions during depositions. *See, e.g.,* Exhibit D (D. Cordelli Deposition Transcript excerpts). Third, the seriousness of the litigation cannot be denied by the Commonwealth given the exorbitant amount it seeks in damages. *See, e.g.,* Second Am. Compl. at ¶ 259 (seeking recovery of $738 million in past remediation costs alone).[18] Fourth, for the reasons described above, the Commonwealth's role as plaintiff in this litigation necessitates a narrow application of deliberative process privilege. *See* Sec. I.A, *supra.* The only factor that might favor confidentiality here is the fifth one, but courts have given the so-called chilling effect little weight where the government is the plaintiff or a party in significant litigation.[19]

In sum, the withheld documents relate to how Commonwealth officials viewed and addressed issues relevant to conduct for which it now seeks to hold Defendants liable; they contain information a defendant would be entitled to from a private plaintiff. It would be fundamentally unfair to deny Defendants access to this information, *see EEOC*, 1999 WL 124380 at *2, especially in an action such as this where the governmental plaintiff seeks a windfall.

---

[18] Defendants, of course, dispute that validity of these claims. Among other things, Defendants note that the $738 million referenced in the Complaint does not come from a Commonwealth general fund but rather from fees that Defendants and other gasoline distributors pay into Pennsylvania's Underground Storage Tank Indemnification Fund, which is designed to reimburse eligible UST owners for expenses incurred from releases to the environment.

[19] *See, e.g., EEOC v. Los Alamos Constructors, Inc.,* 382 F. Supp. 1373, 1381 (D.N.M. 1974) (rejecting government argument that documents "should be protected from disclosure as a matter of public policy because their disclosure would inhibit free and open discussion between officials") (quoting *Abel Inv. Co. v. United States,* 53 F.R.D. 485 (D. Neb. 1971). Indeed, if the Commonwealth is deeply concerned about future timidity on the part of its employees, it can prevent disclosure by refraining from filing lawsuits that put those deliberations at issue.

The Honorable Debra C. Freeman
January 4, 2019
Page 17

### III. EXEMPLAR DOCUMENTS ILLUSTRATE THE COMMONWEALTH'S DEFICIENCIES IN ASSERTING DELIBERATIVE PROCESS PROTECTION.

To the extent the Court wishes to evaluate some of the documents at issue in this motion, Defendants describe below five sets of documents as examples of Plaintiff's improper assertion of the deliberative process privilege. In each of these examples, the Commonwealth originally produced the documents at issue but outside counsel clawed them back during or shortly before depositions in which Defendants sought to introduce them as exhibits and question witnesses about them.[20] As demonstrated below, the Commonwealth has not met its burden to establish that any of these documents are pre-decisional and deliberative, and, in any event, Defendants' interest in the documents outweighs any interest the Commonwealth may have in protecting their content.

### 1. MTBE Action Plan (CMW-PA-0004382)

Document CMW-PA-004382, entitled "MTBE Action Plan," was introduced as an exhibit without objection during the deposition of PADEP's Robert Day-Lewis but the following morning (at the outset of another deposition), outside counsel for the Commonwealth retroactively clawed it back on deliberative process grounds.[21] The document outlines a number of actions the Commonwealth had taken as of December 2000 and a number of actions the Commonwealth planned to take later. *See* R. Day-Lewis Deposition Transcript ("Tr.") at 141:14–146:12 (excerpts attached at Exhibit E). The Commonwealth contends that the redacted portions of the document qualify for deliberative process protection owing to their forward-looking nature. *See* T. Canigiani

---

[20] Exhibits D–H set forth the relevant statements by counsel for Plaintiff in asserting the privilege during the depositions at issue. Because Plaintiff has claimed the documents are privileged and clawed them back, Defendants have sequestered the documents and have not filed copies together with this letter-motion. Nevertheless, Defendants respectfully request that the Court direct the Commonwealth to submit them for *in camera* review.

[21] Plaintiff subsequently agreed to produce a redacted copy of this document. (A copy of the redacted version is attached at Exhibit I).

The Honorable Debra C. Freeman
January 4, 2019
Page 18

Tr. at 11:24–14:2 (excerpts attached at Exhibit F); email from T. Wren to D. Krainin, Nov. 21, 2018 (Exhibit A).  The Commonwealth, however, conflates prospective planning with agency deliberation.  The MTBE Action Plan was exactly that: a summary of actions the Commonwealth took and planned to take with respect to MTBE, not internal deliberations regarding potential policy alternatives.  The Commonwealth either has or has not taken the actions described in the plan; in either case, the document is not deliberative.[22]

In addition, the Commonwealth has waived the deliberative process privilege as to this document because the Commonwealth has put at issue in this litigation the reasonableness of actions taken in light of MTBE's environmental fate and transport characteristics, including both the conduct of Defendants in supplying the product and that of the Commonwealth in regulating it.  Finally, Defendants have sought this and other information regarding the MTBE Work Group elsewhere, but have been unable to obtain it.[23]

> 2.  Response to EPA Questionnaire (CMW-PA-0004377)

Document CMW-PA-0004377 involves a discussion of how PADEP personnel might respond to a questionnaire from the U.S. Environmental Protection Agency.  *See* Ex. D (D. Cordelli Depo. Tr. at 227:11–230:23).  Responding to a request for information from a federal agency does not rise to the level of "deliberations of law or policymaking."  *See Vartan*, 733 A.2d at 1263.  The deliberative process privilege is to be narrowly construed, and a government

---

[22] This and other draft documents are "not protected solely by virtue of [their] draft status."  *In re MTBE Litig.*, 898 F. Supp. 2d 584, 592 (finding inadequate log entries using "some variation of the following language . . . 'pre-decisional and deliberative because the letter is a draft in non-final form subject to further review and revision'").

[23] Defendants deposed four current or former PADEP employees who Plaintiff identified as members of the MTBE Work Group.  Three of those deponents did not recall participating in such a group, and one individual "believed" he was a member but did not recall any specific actions taken by the group.  *See* Ex. D, Cordelli Tr. at 139:2–10, 142:21–148:10.

The Honorable Debra C. Freeman
January 4, 2019
Page 19

document does not automatically qualify for deliberative process protection just because it

contains the opinions of government personnel.  *See Joe,* 782 A.2d at 33.[24]

3.   Interpretation of Regulations (CMW-PA-1082360)

Document CMW-PA-1082360 relates to the PADEP Southeast Regional Office's

interpretation of regulations requiring the restoration or replacement of water supplies affected by

releases from underground storage tanks.  The document reflects how Southeast Regional Office

staff *actually implemented* a regulatory provision at issue in this case.  The document is not

pre-decisional because it relates to how regional staff acted based on decisions (about how to

interpret Commonwealth regulations) made prior to the creation of this document.  *See* Ex. G (S.

Kennedy Depo Tr. at 110:9–113:12).

This document goes to issues the Commonwealth raised in this case, namely, alleged

damages to address drinking water supplies affected by releases of gasoline containing MTBE.  As

has been the case in other MTBE litigation, Defendants expect that Plaintiff will hire an outside

expert to calculate Plaintiff's alleged damages.  Documents demonstrating how DEP actually

measures those damages and addresses affected water supplies are highly relevant, especially to

---

[24] During the meet-and-confer, outside counsel for the Commonwealth relied on the Pennsylvania Right-to-Know Law ("RTKL"), 65 P.S. §67.708(b)(10)(i), for the proposition that the deliberative process privilege applies not only to matters of law and policy, but to proposed courses of action. As a preliminary matter and as discussed above (*see* Sec. I.A, *supra*), the Commonwealth fails to distinguish requests for government records under the RTKL from discovery demands in cases filed by the Commonwealth.  Moreover, the subject at issue here – responding to a questionnaire – can hardly be described as a "course of action."  The questionnaire is a routine inter-governmental communication, and counsel's desire to withhold the document suggests that it contains statements that are either favorable to Defendants or cast the Commonwealth in a negative light.  At a minimum, Defendants' interests in discovering DEP personnel's opinions and attitudes toward addressing MTBE in groundwater with the U.S. EPA outweighs the Commonwealth's interest in concealing those statements.

The Honorable Debra C. Freeman
January 4, 2019
Page 20

the extent they suggest that what the Commonwealth is asking for in its capacity as Plaintiff in this

action goes well beyond what it requires in its regulatory capacity.

4.   MTBE Ban Testimony (CMW-PA-0756165)

Document CMW-PA-0756165 relates to PADEP's response to a proposed MTBE ban in

Pennsylvania; it was introduced as an exhibit during the deposition of a former high-ranking DEP

official before the Commonwealth clawed it back.  *See* Ex. H (J. Powers Depo Tr. at

103:1-104:16).  The document reflects what the Commonwealth knew about the adequacy of the

potential ethanol supply to Pennsylvania, relative risks and benefits of using ethanol versus

MTBE, and the effect of an MTBE ban on the gasoline market in Pennsylvania.  These are topics

the Commonwealth put at issue in its Second Amended Complaint, and are highly relevant to the

reasonableness of Defendants' conduct (using MTBE as an octane enhancer and oxygenate in

gasoline) given the supply and logistical limitations on increased ethanol use at the time.  To the

extent the document reflects the Commonwealth's knowledge, it reveals facts, not deliberations,

and therefore must be produced.  To the extent it contains opinions of DEP personnel, the balance

of factors clearly favors disclosure as Defendants are entitled to explore the opinions of

Commonwealth personnel regarding alternatives to MTBE and the risks associated with them, as

well as whether views expressed in this document are at odds with positions the Commonwealth

takes in this litigation.

5.   Rulemaking Briefing – Changes to MTBE Standards (CMW-PA-0758399,
     CMW-PA-1186867, CMW-PA-1195132)

On December 10, two days before the scheduled deposition of DEP's former Executive

Deputy Secretary, Barbara Sexton, Plaintiff clawed back several documents, including three

documents concerning changes to the Statewide Health Standard ("SHS") for MTBE, on

deliberative process grounds.  The SHS is the concentration of MTBE in groundwater to which

The Honorable Debra C. Freeman
January 4, 2019
Page 21

release sites generally must be remediated; it also dictates when drinking water supplies must be

treated.  Defense counsel had reviewed these documents prior to the clawback and had intended to

question Ms. Sexton about them.  See Ex. J (Email from L. Gerson to T. Wren (Dec. 10, 2018)).

Specifically, Documents CMW-PA-1195132 and CMW-PA-0758399 are detailed agendas for two

different meetings with the DEP Secretary regarding the proposed change to the SHS for MTBE.

They include lists of attendees, topics to be discussed, and talking points.  Document

CMW-PA-1186867 appears largely to be a duplicate of CMW-PA-1195132, except that it is

contained in an email forwarding the agenda and listing the dates and times of both meetings.

These documents are largely factual and, therefore, not deliberative.  In any event, even if

the facts contained in these documents are "inextricably intertwined" with DEP's deliberations –

as Plaintiff contends – Plaintiff has waived any privilege attaching to its deliberations regarding its

treatment of MTBE by putting the topic at issue in this litigation.  Specifically, Defendants are

aware from other documents and testimony that, in 2009, Plaintiff was considering raising the SHS

for MTBE from 20 parts per billion ("ppb") to 190 ppb.  (The higher number represents the level

calculated by applying the required health-based equation contained in state environmental

regulations.)  However, Plaintiff ultimately decided not to apply that health-based equation,

instead claiming the lower standard would minimize aesthetic complaints about water quality.

This decision is contrary to Commonwealth regulations and treats MTBE differently than all other

regulated compounds; Defendants are entitled to full discovery on the details of the

Commonwealth's departure from regulatory requirements regarding MTBE.

In short, because the above documents relate to issues at the heart of the Commonwealth's

allegations and Defendants' defenses, the deliberative process privilege should not apply at all.

However, even if the Court determines that it must apply the balancing test, the exemplar

The Honorable Debra C. Freeman
January 4, 2019
Page 22

documents are not entitled to deliberative process protection because the Defendants' interest in

reviewing these documents outweighs any interest the Commonwealth has in concealing them.

## **CONCLUSION**

The Commonwealth seeks to expand the deliberative process privilege beyond the narrow

boundaries Pennsylvania courts and this MDL court have set for it.  The privilege is not designed

to allow the Commonwealth to selectively shield information detrimental to its litigation position.

The Commonwealth has waived any potentially applicable deliberative process protection here by

filing this action, and by virtue of the claims it has put at issue in its Second Amended Complaint

and the defenses they raise.

Accordingly, Defendants respectfully request that this Court order the Commonwealth to

produce all documents that it has withheld on the basis of deliberative process or, at the very least,

those documents bearing on topics at issue in the litigation (which may well be co-extensive with

those withheld).  In the alternative, Defendants respectfully request that the Court order the

Commonwealth to produce some or all of the withheld documents for *in camera* review.  To the

extent the Court finds that the Commonwealth may properly withhold any documents on

deliberative process grounds, Defendants further request a Court order compelling the

Commonwealth to produce more detailed privilege log entries for any such documents it seeks to

withhold, as well as a declaration of a qualified official who has reviewed each withheld document

and asserts the privilege on behalf of the Commonwealth (including verifying that factual material

has been produced and the documents are redacted or withheld only to the extent necessary).[25]

---

[25] Defendants reserve their rights to challenge the Commonwealth's claims of deliberative process
with respect to any documents or testimony not produced.

The Honorable Debra C. Freeman
January 4, 2019
Page 23

Respectfully submitted,

Daniel M. Krainin

*Counsel for Defendants Sunoco, Inc., Sunoco, Inc.
(R&M), Sun Company, Inc., Sunoco Partners
Marketing & Terminals, L.P., Energy Transfer
Partners, L.P., and ETP Holdco Corp.; and on
behalf of the Defendants listed in the Appendix*

Attachments:  Exhibits A–J
cc:       All Counsel of Record via File &ServeXpress

## APPENDIX

The following Defendants join in this motion:

Atlantic Richfield Company
BP Products North America Inc.
Chevron Corporation
Chevron U.S.A. Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company
   L.P.
Coastal Eagle Point Oil Company
Conoco Phillips Company
ConocoPhillips
Cumberland Farms, Inc.
Deer Park Refining LP
El Paso Merchant Energy Petroleum
   Company
Energy Transfer Partners, L.P.
Equilon Enterprises LLC (d/b/a Shell Oil
   Products US)
ETP Holdco Corp.
Exxon Company, U.S.A.
Exxon Mobil Corporation
Exxon Mobil Refining & Supply Company
ExxonMobil Oil Corporation
Gulf Oil Limited Partnership
Hess Corporation
Hess Oil Virgin Islands Corp.
Kinder Morgan Transmix Company LLC
Lukoil Americas Corporation
Lukoil North America LLC
Lukoil Pan Americas, LLC
Marathon Oil Corporation

Marathon Petroleum Company LP
Marathon Petroleum Corporation
Mobil Oil Corporation
Motiva Enterprises LLC
Pennzoil-Quaker State Company (d/b/a/
   SOPUS Products)
Petroleum Products Corporation
Phillips 66
Phillips 66 Company
PJSC Lukoil
Premcor Refining Group, Inc.
Premcor USA, Inc.
Shell Oil Company
Shell Oil Products Company LLC
Shell Trading US Company
Sun Company, Inc.
Sunoco Partners Marketing & Terminals,
   L.P.
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
TMR Company
Total Petrochemicals & Refining USA, Inc.
TransMontaigne Product Services, LLC
TRMI-H LLC
United Refining Company
Valero Energy Corp.
Valero Marketing and Supply Co.
Valero Refining and Marketing Co.