UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION<br><br>**This document relates to:**<br><br>*Commonwealth of Pennsylvania, etc. v. Exxon Mobil Corporation, et al*,<br><br>Case No. 1:14-cv-06228 | Master File No. 1:00-1898<br><br>MDL 1358<br><br>Hon. Vernon S. Broderick<br>Hon. Debra C. Freeman |

## PETITION TO CONFIRM ATTORNEYS' FEE AND EXPENSES

1. To prosecute its claims for MTBE damage and cost recovery, Plaintiff Commonwealth of Pennsylvania in 2010 retained three outside law firms — Cohen, Placitella & Roth, P.C.; Berger Montague, P.C.; and Miller & Axline, P.C. (the "Firms") — as special counsel under the supervision of the Office of the Attorney General of Pennsylvania ("OAG"). The Firms are counsel of record for the Commonwealth in this case and have been vigorously prosecuting the matter since its filing in 2014.

2. On behalf of the Commonwealth, the Firms have achieved to date settlements in this case totaling $1,525,000 with three defendants: Duke Energy Merchants, LLC ("Duke"); Vitol S.A., Inc. ("Vitol"); and Western Refining Yorktown, Inc. ("Yorktown").

3. These settlements did not require court approval under any law or rule of court. The monies from these settlements have been received and are ready for distribution to the Commonwealth and the Firms in the manner provided in the Legal Services Agreement between the parties dated December 17, 2019 ("Agreement").

4. The Agreement provides the Firms are to be compensated for their services per a set percentage schedule and reimbursed for their advanced expenses contingent upon securing recoveries by way of settlement or judgment in the case.

5. Pursuant to the Agreement, the Firms are entitled to compensation in the amount of $274,500 and reimbursement of expenses in the amount $488,000, with respect to these $1,525,000 in settlements.

6. The Commonwealth, through the OAG, has reviewed the proposed fee and reimbursable expenses for reasonableness, accuracy and lodestar totals, and accepts them as properly due under the Agreement.

7. The Agreement provides that, prior to payment, the Firms will petition this Court to review any proposed fees and reimbursable expenses with respect to any recoveries "to ensure they conform to Pennsylvania Rule of Professional Conduct 1.5 (a) and (c)." In order not to unduly burden the Court with this request, the Agreement provides that, if the Court declines to rule or has not ruled on the petition within 90 days of submission, the petition will be withdrawn and the Commonwealth will pay the Firms the requested fee and expenses.

8. The Firms request, and the Commonwealth supports, confirmation by this Court that the proposed fee and expense reimbursements conform to Pennsylvania Rules of Professional Conduct 1.5 (a) and (c).

9. As demonstrated below, the requested distributions fully conform to Pennsylvania Rules of Professional Conduct 1.5(a) and (c).

## I. THE PROPOSED FEE AND REIMBURSABLE EXPENSES CONFORM TO PA RPC 1.5 (a)

10. RPC 1.5(a) provides "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

11. The Firms' fee due here under the Agreement is clearly not illegal or excessive. Rule 1.5 lays out a number of factors to be considered in determining the propriety of a fee:

- **RPC 1.5(a)(1): "whether the fee is fixed or contingent"**

12. The initial factor to be considered in determining conformance to these Rules is "whether the fee is fixed or contingent[.]"

13. This is a purely contingent fee case where the Firms have assumed the great risk of receiving no fee or expense reimbursement should there be no recoveries.

14. Pennsylvania courts generally uphold contingency fee agreements voluntarily entered into by the parties so long as they are not excessive and do not take "inequitable advantage of the payer." *Richette v. Solomon*, 187 A.2d 910, 919 (Pa. 1963).

15. The Agreement was voluntarily entered into by parties of equal competency after extensive arms-length negotiations.

- **RPC 1.5(a)(2): "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"**

16. The second factor to be considered in this review is "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[.]"

17. This multi-layered factor is easily fulfilled here, as significant time, labor and skill have been required in the performance of the legal services in this litigation to date and which have contributed to these first three settlements. This case, like all MTBE litigation by states, also involves novel and difficult questions of law and fact requiring the services of highly skilled counsel like the Firms.

18. During their 10 years as counsel for the Commonwealth in this matter, the Firms have devoted more than 44,000 hours to engaging in complex, intensely contested, broad in

3

scope, expensive, and time-consuming litigation, requiring extensive investigation, document and file reviews, pleadings, motion practice and discovery.

19. The Firms identified nearly 6,000 MTBE release sites in Pennsylvania through a massive one-year review of hard copy case files and electronic data from various Commonwealth agencies.

20. More than 16 million pages of Commonwealth documents, many of them hard copy which required scanning, have been gathered by the Firms and produced to the defendants, with additional and equally massive quantities of electronic data and databases. Overall, more than 40 million pages of electronic documents have been collected and managed in the case to date. The Firms have incurred extensive charges to successfully host, process and search this electronic data.

21. The complex nature and structure of the Commonwealth government has required complicated and lengthy discovery into the practices and records of DEP's regional and central offices. More than 100 depositions have been taken in numerous locales throughout the Commonwealth, as well as in states outside of Pennsylvania.

22. Special skills on the part of the Firms have been required to properly perform the legal services in this matter. Environmental litigation is a specialized area of law, and natural resource damage litigation, even more specialized. The particularized knowledge and experience of the Firms who have been litigating the case and their litigation skills were important factors in the settlements reached.

23. In addition to their particularized legal knowledge, the Firms have had to work with complex scientific and economic issues including hydrogeology, statistics, toxicology,

engineering, and resource economics. The volume of documents and data required superior skill sets in administering data, document analysis and technology assisted review techniques.

24.     The quantity and quality of defense counsel in this matter also required special skill and attention of the Firms.  Defending the 52 defendants in this case are 28 law firms, including many of the top defense firms in the United States.

25.     The good work of the Firms was an important factor in the favorable settlements with Defendants Duke, Vitol, and Yorktown, as well as generating current interest from other defendants in settlement.

- **RPC 1.5(a)(3): "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer"**

26.     The next factor be considered is "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer[.]"  The Commonwealth has been fully aware since the inception of the representation that a considerable amount of the Firms' available time would be spent on this case.  Indeed, at this point, more than 44,000 hours ha been spent collectively by the Firms in the representation of the Commonwealth.  While this has not precluded all other legal work by the Firms, this matter obviously has consumed a substantial amount of time for the individual attorneys involved, thereby substantially precluding or limiting their work on other matters.

- **RPC 1.5(a)(4): "the fee customarily charged in the locality for similar legal services"**

27.     The fourth factor to consider is "the fee customarily charged in the locality for similar legal services[.]"  Under the Agreement, the Firms are to receive an 18% contingent fee on the first $300 million recovered in the case.  This is considerably less than the 33 1/3 % and greater fees customarily charged in Pennsylvania for plaintiffs' contingent representation.  In addition, the Agreement provides that in no circumstance shall the Firms' payments (including

expenses) be more than 50% of the amount of any Recovery.  In entering into the Agreement after protracted arms-length negotiations, the Commonwealth recognized and recited in the Agreement that the fee schedule (and the categories of reimbursable expenses) set forth therein are "reasonable."

- **RPC 1.5(a)(5): the amount involved and the results obtained**

28. The next factor is "the amount involved and the results obtained."  The gross recoveries from the Duke, Vitol, and Yorktown settlements are $1,175,000, $250,000, and $100,000, for a total of $1,525,000.  These settlements — the first in this litigation — are from relatively minor defendants and represent the relative culpability of these defendants in creating the injuries to the Commonwealth that led to this litigation.  These results are clearly excellent first settlements.

- **RPC 1.5(a)(6): "the time limitations imposed by the client or by the circumstances"**

29. The sixth factor is the "time limitations imposed by the client or by the circumstances."  In beginning the representation of the client in this matter, the Firms embarked on a multi-year investment of time and resources with an expected return only far down the road.  The Firms have devoted significant resources to successfully comply with the Court-imposed time limitations for discovery and motions.

- **RPC 1.5(a)(7): "the nature and length of the professional relationship with the client"**

30. The seventh factor — "the nature and length of the professional relationship with the client — is also easily satisfied as the initial agreement for legal services in this case was entered into between the Commonwealth and the Firms more than 10 years ago and the parties have worked closely together for the duration of the case.  In addition, Berger Montague, P.C.

and Cohen Placitella & Roth, P.C. have previously represented the Commonwealth in other complex litigation matters

- **RPC 1.5(a)(8): "the experience, reputation, and ability of the lawyer or lawyers performing the services"**

31.     The eighth and final factor to consider in this review is "the experience, reputation, and the ability of the lawyer or lawyers performing the services."

32.     Miller & Axline, P.C. is the principal pioneer in plaintiffs' MTBE litigation. The firm tried the first MTBE case to a jury in 2001 and has been involved in MTBE litigation for almost two decades. The primary attorneys in this matter for the Firm are Duane Miller and Michael Axline, who together have over 60 years of experience in environmental and toxic torts litigation.

33.     Berger & Montague, P.C. is one of the premier plaintiffs' litigation firms in the United States. The primary attorneys in this matter, Daniel Berger and Tyler E. Wren, are experienced environmental litigators with more than 90 years combined legal experience.

34.     Cohen, Placitella & Roth, P.C. is a leader in complex, aggregate plaintiffs' litigation in all its forms, including environmental, toxic tort and class action cases. The primary firm attorneys responsible for this litigation — Stewart L. Cohen, Michael Coren, and Robert L. Pratter — have together nearly a century of complex litigation experience, including many years representing this Commonwealth in high stakes environmental and mass tort matters.

35.     The expenses which the Firms have incurred in this case and to which they are entitled to reimbursement under the Agreement total $8,486,402.65 as of December 31, 2019. These expenses, which were categorized and presented in detail to the client for its review and approval, are the kind of costs that are necessarily incurred in today's complex litigation setting, including significant charges for the electronic document hosting and management of the more

7

than 40 million electronic documents and other data which have been collected in this case. The $488,000 expense reimbursement at issue here is but a tiny portion of these expenses which the Firms have incurred to date. This small payment is obviously fair and appropriate here.

## II. THE PROPOSED FEE AND ASSOCIATED EXPENSES CONFORM TO PA RPC 1.5 (c)

36. The proposed fee and the associated expenses comply with RPC 1.5 (c). That Rule allows contingent agreements "except where a contingent fee is prohibited by paragraph (d) or other law." In pertinent part, Paragraph 1.5(d) prohibits such arrangements only where the agreed fee "is clearly excessive for all legal services they rendered the client." As demonstrated above, the fee requested here of $274,500 is clearly not excessive. The Firms have spent more than 44,000 hours and $8,486,000 in advanced expenses in securing to date $1,525,000 in settlements from which they seek a fee of merely $278,000.

## III. CONCLUSION

37. For all these reasons, the fee and reimbursable expenses requested here fully comply with Pennsylvania Rule of Conduct 1.5.

**ACCORDINGLY**, the Firms respectfully request, and the Commonwealth supports, that the Court enter the attached Order confirming that the proposed fee and expense reimbursements set forth herein conform to Pennsylvania Rules of Professional Conduct 1.5(a) and (c) with respect to the current recoveries of $1,525,000 in this case.

[*Signatures follow on the next page*]

DATED:  May 19, 2020

Respectfully submitted:

| **BERGER & MONTAGUE, P.C.** | **COHEN, PLACITELLA & ROTH, P.C.** |
|---|---|
| By: /s/ Tyler E. Wren<br>　　Daniel Berger, Esquire<br>　　Tyler E. Wren, Esquire | By: /s/ Stewart L. Cohen<br>　　Stewart L. Cohen, Esquire<br>　　Robert L. Pratter, Esquire<br>　　Michael Coren, Esquire |
| Special Counsel to the<br>Commonwealth of Pennsylvania<br>1622 Locust Street<br>Philadelphia, Pennsylvania 19103<br>(215) 875-3000<br>Email: twren@bm.net<br>　　　danberger@bm.net | Special Counsel to the<br>Commonwealth of Pennsylvania<br>Two Commerce Square<br>Suite 2900, 2001 Market St.<br>Philadelphia, Pennsylvania 19103<br>(215) 567-3500<br>Email: scohen@cprlaw.com |

**MILLER & AXLINE, P.C.**

By: /s/ Duane Miller
　　Duane Miller, Esquire
　　Michael Axline, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
1050 Fulton Avenue, Suite 100
Sacramento, California 95825-4225
(916) 488-6688
Email: dmiller@toxictorts.org

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION<br><br>**This document relates to:**<br><br>*Commonwealth of Pennsylvania, etc. v. Exxon Mobil Corporation, et al*,<br><br>Case No. 1:14-cv-06228 | **Master File No. 1:00-1898**<br><br>**MDL 1358**<br><br>Hon. Vernon S. Broderick<br>Hon. Debra C. Freeman |

## ORDER GRANTING PETITION TO CONFIRM ATTORNEYS' FEE AND EXPENSES

The Petition to Confirm Attorneys' Fee and Expenses ("Petition") is granted and this Court confirms that the fee and expense reimbursements set forth in the Petition conform to Pennsylvania Rules of Professional Conduct 1.5(a) and (c) with respect to the current recoveries of $1,525,000 from settlements in this case with Defendants Duke Energy Merchants, LLC, Vitol S.A., Inc., and Western Refining Yorktown, Inc.

IT IS SO ORDERED:

_____
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE

DATED: _____

*OR*

IT IS SO ORDERED:

_____
HON. DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE

DATED: _____

**PROOF OF SERVICE VIA FILE & SERVEXPRESS**

*Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*,
United States District Court, Southern District of New York Case No. 14-cv-06228 (VSB)

  I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225.

  On the date below, I served the following document on all counsel in this action electronically through File & ServeXpress:

**PETITION TO CONFIRM ATTORNEYS' FEE AND EXPENSES**

  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

  Executed on May 19, 2020, at Sacramento, California.

     */s/ Kathy Herron*
     KATHY HERRON