

mwe.com

James Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

August 19, 2020

**VIA ECF**

The Honorable Vernon S. Broderick, U.S.D.J.
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Commonwealth of Pennsylvania, et al. v. Exxon Mobil Co., et al.*, Case No.: 1: 14-cv-06228

Dear Judge Broderick:

Defendants write in response to Plaintiff the Commonwealth of Pennsylvania's August 10, 2020 letter informing the Court of supplemental authority purportedly dispositive of Defendants' pending Motion to Dismiss the Second Amended Complaint ("SAC"). Specifically, Plaintiff's letter directs the Court to the decision in *Commonwealth v. Golden Gate National Senior Care LLC*, 194 A.3d 1010 (2018), which addresses claims brought under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiff's reliance on *Golden Gate* is misleading and misplaced, and the opinion is far from dispositive.[1]

Plaintiff's letter characterizes the *Golden Gate* opinion as new and controlling case law bearing directly on the precise issue supposedly determinative of Defendants' pending motion to dismiss Plaintiff's UTPCPL claims. Plaintiff's characterization is misleading, as an initial matter, because *Golden Gate* is not new; it is two years old.

Plaintiff's characterization also is misleading because neither *Golden Gate* nor Plaintiff's letter addresses Defendants' principal *and dispositive* argument for dismissal of Plaintiff's UTPCPL claims – *i.e.*, the claims fail because Plaintiff has not and cannot plead that defendants are—note the tense—"*using or [are] about to use* any method, act or practice declared by [the Act] to be unlawful." *See* ECF No. 238 at 2-6 (quoting 73 P.S. § 201-4) (emphasis added). It is a timing issue. Plaintiff has not and cannot plead the ongoing or imminent conduct required by the UTPCPL because the basis for Plaintiff's claims is Defendants' alleged actions with respect to the sale and marketing of a product—gasoline containing MTBE—that has not been sold or marketed in Pennsylvania for *almost 15 years. See, e.g.*, *id.* at 4.

---

[1] Plaintiff suggests both that the *Golden Gate* opinion is dispositive of only "certain issues" in Defendants' pending motion to dismiss and that Defendants' motion to dismiss should be denied "in its entirety." *See Pl.'s Ltr.* at 1, 3. Plaintiff's request that the motion to dismiss be denied "in its entirety" is untenable not only for the reasons explained below, but also because Plaintiff ignores the fact that Defendants' motion to dismiss targets claims other than Plaintiff's UTPCPL claims. *See* ECF No. 238 (also moving to dismiss Counts III and IX).



340 Madison Avenue   New York NY 10173-1922   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

The Honorable Vernon S. Broderick, U.S.D.J.
August 19, 2020
Page 2

To the extent *Golden Gate* says anything about Defendants' motion to dismiss argument, it is only to reiterate the basic requirement that the Attorney General must show ongoing or imminent conduct before the question of a restoration remedy—the focus of Plaintiff's letter—may be considered. *See Golden Gate*, 194 A.3d at 1031 ("Section 4 of the UTPCPL gives the Attorney General … the authority to seek an injunction against any person it believes *is engaging in or is about to engage in*, any of the conduct prohibited under the UTPCPL. … Section 4.1 provides for a remedy where an injunction has been entered pursuant to section 4." (emphasis added)). In short, the question of whether Plaintiff is entitled to restoration damages under Section 4.1 of the UTPCPL is irrelevant where, as here, the plaintiff fails to plead an ongoing or imminent violation of the Act. *Id.*

Instead of addressing the real merits of Defendants' argument, Plaintiff's letter focuses on an issue referenced by Defendants only as a footnote to their motion to dismiss – *i.e.*, whether the Commonwealth is eligible to receive the statutory remedy of restoration under Section 4.1 of the UTPCPL. *See* ECF No. 238 at 3 n.3. Judge Scheindlin previously held that the Commonwealth was not so entitled because the restoration remedy is available only to "persons," which is elsewhere in the UTPCPL defined to exclude public entities. *In re MTBE Prods. Liab. Litig.*, 2015 WL 4092326, at *6 (S.D.N.Y. July 2, 2015). The *Golden Gate* court clarified that the remedy of restoration is available to "persons in interest," a phrase that is not defined in the statute. *Golden Gate*, 194 A.3d at 1033. Considering the General Assembly's intent behind the UTPCPL, the court held that "person of interest" refers to "those who lost money or property because of the enjoinable conduct that was found to violate the UTPCPL." *Id.* at 1034.

But *Golden Gate* does not help Plaintiff in this case because Plaintiff does not plead "lost money or property" as a result of Defendants' alleged UTPCPL violations, except in perhaps the most conclusory terms. *See, e.g.*, SAC ¶ 402(c) (requesting an order under UTPCPL section 4.1 "requiring [] Defendants to restore to all persons in interest (which includes the Commonwealth) any moneys or property, real or personal, which [Defendants] may have been acquired [sic] by means of [Defendants'] violations of the UTPCPL"); *see also generally id.* ¶¶ 392-410. That failure is not surprising, because the costs allegedly incurred by Plaintiff on its other claims—costs allegedly incurred to "investigat[e], monitor[], treat[], remediat[e] and otherwise address[] releases of MTBE into the waters of the Commonwealth"—are not costs actually incurred by the Plaintiff. (SAC ¶ 258.)

First, such costs are primarily incurred directly by entities, like many Defendants here, who own(ed) the sites at which releases of MTBE occurred. Those owners must investigate, monitor, treat and remediate MTBE releases according to the Commonwealth's well-defined environmental regulatory procedures. *See, e.g.*, *generally* 25 Pa. Code 245 *et seq.* (Administration of the Storage Tank and Spill Prevention Program).

Second, to the extent Plaintiff is referring to funds paid out of the Underground Storage Tank Indemnification Fund ("USTIF") to remediating parties, those funds also are not Commonwealth funds. USTIF is an independent, privately funded insurance program supported *solely* by fees paid by owners of underground storage tanks (again, including many of the Defendants here). *See* 35 P.S. § 6021.704 ("This fund shall consist of the fees assessed by the board under section 705(d).… The fund shall be the sole



The Honorable Vernon S. Broderick, U.S.D.J.
August 19, 2020
Page 3

source of payments under this act, and the Commonwealth shall have no liability beyond the amount of the fund."); 35 P.S. § 6021.705(d) ("The board, by regulation, shall establish fees to be paid by the owner … of underground storage tanks.  Fees shall be set on an actuarial basis in order to provide an amount sufficient to pay outstanding and anticipated claims against the Underground Storage Tank Indemnification Fund in a timely manner. Fees shall also include an amount sufficient to meet all other financial requirements of the board.").  In other words, any funds paid by USTIF to its Claimants come from private parties, not taxpayer money appropriated by the legislature and not from other Commonwealth revenue.

And, third, to the extent Plaintiff may be referring to funds paid directly by the Department of Environmental Protection ("DEP"), those funds also are provided by USTIF.  *See* 35 P.S. § 6021.710.  The proof is in the pudding.  Of the 75 Focus Sites (release sites randomly selected by the Parties on which to conduct discovery), Plaintiff's discovery responses, including the thousands of documents produced, do not indicate that any investigation or remediation costs incurred at those sites were paid for by DEP.  None. Zero.  Plaintiff by law and in practice has not spent any tax payer money to investigate, monitor, treat and remediate releases of MTBE gasoline at the Focus Sites.  In sum then, regardless of whether the UTPCPL permits restoration to "persons" or "persons of interest", Plaintiff's pleading is still deficient because, among other reasons, it has not and cannot sufficiently plead "lost money or property" as a result of Defendants' alleged UTPCPL violations.

Finally, Plaintiff contends that Defendants' motion to dismiss should be denied because *Golden Gate* clarified that claims brought under UTPCPL subsections 2(v) and (xxi)—sections cited in the SAC—are not limited to claims of false advertising.  Plaintiff again ignores that this was only one of several arguments Defendants raised against the claim.  *See, e.g.*, ECF No. 238 at 9-12 (arguing that Count VI must be dismissed because Defendants' Material Safety Data Sheets ("MSDSs") did not contain false statements and the SAC fails to plead that the MSDS were likely to cause confusion).  Moreover, the materials found actionable in *Golden Gate* are readily distinguishable from Defendants' MSDSs.  The former contained affirmative "false representations regarding the extent and quality of services to be provided" to nursing home residents (*Golden Gate*, 194 A.3d at 1028), whereas the latter report *facts* about a product's chemical properties, their content largely is dictated by the U.S. Occupational Safety and Health Administration and, if anything, Plaintiff alleges only omissions, not false representations.  *See, e.g.*, ECF No. 238 at 7, 10.[2]

*\*\*\**

Contrary to Plaintiff's assertions, the *Golden Gate* decision is far from dispositive of Defendants' Motion to Dismiss.  In fact, the decision is irrelevant to the merits of Defendants' Motion to Dismiss

---

[2] Plaintiff also incorrectly contends that Defendants objected to Plaintiff's failure to "identify in the SAC the specific MSDSs which [Plaintiff] claims to be actionable." *Pl.'s Ltr.* at 3.  Plaintiff misstates Defendants' argument.  Defendants did not argue a failure to identify allegedly actionable MSDSs.  Indeed, Defendants acknowledged that Plaintiff included a list of MSDSs in the SAC.  *See* ECF No. 238 at 7.  Rather, Defendants' objected that, for all but two defendants, the SAC fails to allege in anything other than conclusory terms whether or how the other defendants' MSDSs were false or misleading. *Id.*



The Honorable Vernon S. Broderick, U.S.D.J.
August 19, 2020
Page 4

arguments.  For the reasons set forth in Defendants' 2016 briefing, as well as those outlined above, the Court should grant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.

Respectfully Submitted,

*James Pardo*

James Pardo

*Counsel for Exxon Mobil Corporation
and on Behalf of Defendants*

cc:     All Counsel Record by ECF

DM_US 171627762-6.037771.0286

