UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE")<br>Products Liability Litigation | Master File No. 1:00-1898 (DLC) |
| **This document pertains to:** | MDL 1358 |
| *Commonwealth of Pennsylvania v. Exxon Mobil*<br>*Corporation, et al.*, Case No. 14-cv-06228 (DLC) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR**
**<u>LACK OF DEFENDANT IDENTIFICATION AT FOCUS SITES</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

RELEVANT BACKGROUND .........................................................................................3

LEGAL STANDARD.......................................................................................................8

ARGUMENT ...................................................................................................................8

    I.     SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR
         OF MOVING DEFENDANTS AT SITES WHERE THERE IS
         NO EVIDENCE THAT A DEFENDANT HAS AN
         IDENTIFIABLE CONNECTION TO A FOCUS SITE.........................................8

         A.     Consistent with prior MTBE cases, summary judgment is
               warranted where Plaintiff has no evidence of a Defendant's
               presence at a focus site................................................................................10

         B.     Pennsylvania law does not support liability based on
               speculation or claims of "possible" causation ...........................................13

    II.    PLAINTIFF CANNOT DEFEAT SUMMARY JUDGMENT BY
         RELYING ON ALTERNATIVE THEORIES OF LIABILITY ...........................17

CONCLUSION................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1077 Madison St., LLC v. Daniels,*
  954 F.3d 460 (2d Cir. 2020) ................................................................................ 8

*Atl. Richfield Co. v. Cnty. of Montgomery,*
  294 A.3d 1274 (Pa. Commw. Ct.) ........................................................................ 18

*Bly v. Tri-Cont'l Indus., Inc.,*
  663 A.2d 1232 (D.C. 1995) ................................................................................ 21

*Bortell v. Eli Lilly & Co.,*
  406 F. Supp. at 1 (D.D.C. 2005) ........................................................................ 18

*Brandimarti v. Caterpillar Tractor Co.,*
  527 A.2d 134 (Pa. Super. Ct. 1987) .................................................................... 16

*Burger v. Owens Ill., Inc.,*
  966 A.2d 611(Pa. Super. Ct. 2009) ..................................................................... 10

*City of Philadelphia v. Lead Indus. Ass'n,*
  994 F.2d 112 (3d Cir. 1993) ............................................................................ 9, 18

*Conley v. Boyle Drug Co.,*
  570 So. 2d 275 (Fla. 1991) ................................................................................ 21

*Cummins v. Firestone Tire & Rubber Co.,*
  495 A.2d 963 (Pa. Super Ct. 1985) ...................................................................... 9

*DeWeese v. Anchor Hocking Consumer & Indus. Prods. Grp.,*
  628 A.2d 421 (Pa. Super. Ct. 1993) .................................................................... 14

*Forry v. Gulf Oil Corp.,*
  237 A.2d 593 (Pa. 1968) .................................................................................... 16

*In re Erie Golf Course,*
  992 A.2d 75 (Pa. 2010) ...................................................................................... 23

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
  379 F. Supp. 2d 348 (S.D.N.Y. 2005) ...................................................... 17, 18, 19

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
  591 F. Supp. 2d 259 (S.D.N.Y. 2008) ................................................................ 18

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.* ("*City of Fresno*"),
  980 F. Supp. 2d 425 (S.D.N.Y. 2013) ............................................................ *passim*

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*
("*Orange County Water District*"),
67 F. Supp. 3d 619 (S.D.N.Y. 2014) ............................................................... 12, 23

*Kerzer v. Kingly Mfg.*,
156 F.3d 396 (2d Cir. 1998) ............................................................................... 8

*Lilley v. Johns-Manville Corp.*,
596 A.2d 203 (Pa. Super. 1991) ....................................................................... 10

*Martinez v. Skirmish, U.S.A., Inc.*,
No. CIV.A. 07-5003, 2009 WL 1437624 (E.D. Pa. May 21, 2009) ...................... 10, 14, 15, 16

*Maryland v. Exxon Mobil Corp.*,
406 F. Supp. 3d 420 (D. Md. 2019) ................................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................................... 8

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
455 F. Supp. 2d 391 (W.D. Pa. 2006) ............................................................... 14

*Mellon v. Barre-Nat'l Drug Co.*,
636 A.2d 187 (Pa. Super. Ct. 1993) .................................................................. 9

*Moll v. Telesector Res. Grp., Inc.*,
94 F.4th 218 (2d Cir. 2024) ............................................................................... 8

*Payton v. Pa. Sling Co.*,
710 A.2d 1221 (Pa. Super. Ct. 1998) ................................................................ 14

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002) .............................................................................. 8

*Pettine v. Terex Corp.*,
No. 111200917, 2014 WL 11462715 (Pa. Com. Pl. Aug. 1, 2014) ...................... 18

*Santarelli v. BP America*,
913 F. Supp. 324 (M.D. Pa. 1996) ..................................................................... 15

*Sikkelee v. Precision Airmotive Corp.*,
876 F. Supp. 2d 479 (M.D. Pa. 2012) ............................................................... 9

*Skipworth v. Lead Indus. Ass'n*,
690 A.2d 169 (Pa. 1997) ................................................................................... 18

*Stephens v. Paris Cleaners, Inc.*,
885 A.2d 59 (Pa. Super. Ct. 2005) .................................................................... 9

*Tidler v. Eli Lilly & Co.*,
    851 F.2d 418 (D.C. Cir. 1988) ................................................................. 18

*Warnick v. NMC-Wollard, Inc.*,
    512 F. Supp. 2d 318 (W.D. Pa. 2007) .......................................... *passim*

*Williams v. Charm-Tex,*
    No. 4:20-cv-01776, 2024 WL 3046719 (M.D. Pa. June 18, 2024) ........................... 9

**Statutes & Regulations**

1 Pa. C.S. § 1504 .............................................................................. 23

25 Pa. Code § 245.305 ........................................................................ 22

40 C.F.R. § 80.77, 59 FR 7813 (Feb. 16, 1994) ........................................... 22

Storage Tank and Spill Prevention Act, 35 Pa. Stat. § 6021.101 ............................. 22

**Other Authorities**

Restatement (Second) of Torts § 400 ......................................................... 16

Moving Defendants[1] submit this Memorandum of Law in support of their Motion for Partial Summary Judgment for Lack of Defendant Identification at Focus Sites (the "Motion").

## INTRODUCTION

Black-letter Pennsylvania tort law requires a plaintiff to establish that a defendant caused its injury before that defendant can be held liable. The uncontested factual record demonstrates insufficient evidence of causation for Moving Defendants at focus sites where there is no showing that such Defendants have any identifiable connection to a site. Moving Defendants seek summary judgment for lack of causation in such circumstances.

At most focus sites, Plaintiff seeks to establish causation as to nearly every Defendant, relying on three fact patterns: (1) a Defendant's identifiable connection to a focus site, meaning that such Defendant owned, operated, branded, or supplied gasoline to the site, or that such Defendant's manufactured gasoline was delivered to the site, (2) a Defendant's refined gasoline or neat MTBE having been supplied to what Plaintiff describes as the "local gasoline market," which Plaintiff defines to include any terminal within 100 miles of a focus site (so-called "Refiner Defendants"), and/or (3) a Defendant's purchase, sale, exchange or distribution of gasoline from terminals within 100 miles of a focus site without regard to where it was actually delivered (so-called "Local Terminal Defendants").

Where there is evidence of the first fact pattern—Defendants' ownership, operation, branding or supply of a focus site, or its refined product having been delivered to the site (as laid out by focus site in Defendants' Rule 56.1 Statement)—such Defendants do not move for summary judgment. Exhibit 2 to the Motion is a focus site matrix that indicates for each site (1) Non-Moving

---

[1] The Moving Defendants are identified on Exhibit 1. Exhibits cited herein are identified in and filed with the Declaration of Lisa S. Meyer (May 2, 2025).

Defendants (Exhibit 2 (Column 2))—which the parties agree have an identifiable connection to a focus site;[2] and (2) Moving Defendants (*id.* (Columns 3 & 4))—which have no identifiable connection to a site or, in eight instances (out of 96 instances where Plaintiff has purported to make a direct connection), where Defendants contend there is no genuine issue of material fact that the evidence Plaintiff references fails to connect a Defendant to a site as an owner, operator, brander, supplier, or manufacturer.

The second and third fact patterns, however, which purport to be based on supply into or from terminals within 100 miles of a focus site, fail as a matter of law. Plaintiff first disclosed its "Local Terminal Defendant" and "Refiner Defendant" theory in July of 2023, well after fact and expert discovery had closed, in an amended set of responses to Defendants' contention interrogatories.[3] But these discovery responses point to no evidence—circumstantial or otherwise—that any of the so-called Refiner Defendants' gasoline was delivered to the focus sites or that any of the Local Terminal Defendants actually distributed gasoline to the focus sites. Mere presence at a terminal somewhere within 100 miles of a focus site simply does not suffice. Pennsylvania law does not support liability premised on speculation that a defendant might have supplied the product alleged to have caused injury.

---

[2] Non-Moving Defendants do not concede that Plaintiff ultimately can establish causation as to each such Defendant. However, they acknowledge disputed facts that will not be resolved on this Motion. Further, these Defendants—*i.e.*, those with an identifiable connection to the site—have other defenses to liability. With the dismissal of Plaintiff's strict liability claims, ECF No. 1063, Plaintiff must prove negligence as to every Defendant it seeks to hold liable. And even where a Defendant has an identifiable connection to a particular focus site, that connection may have been only for a limited time before or after the relevant release(s) occurred, or the Defendant may not have supplied gasoline containing MTBE. These and other defenses are expressly reserved and are not the subject of this Motion.

[3] *See, e.g.*, Exhibit 33 (Pl.'s Am. Focus Site Contention Rog. Resp. Regarding Focus Site 01 (July 31, 2023) (hereinafter "July 31 FS01 Contention Rog. Resp."), Rog. No. 1 at 7–8); *see also* Exhibit 13 (Pl.'s Am. Focus Site Contention Rog. Resp., Rog. No. 5 (July 27, 2023) (hereinafter "July 27 Contention Rog. Resp.") at 17 (explaining that "gasoline distribution terminals typically supply service stations located within 100 miles" when responding to interrogatory about which Defendants' refined gasoline was supplied to focus sites)).

No doubt because Plaintiff's 100-mile theory of liability is based on conjecture rather than fact, Plaintiff attempts to support liability against "Refiner Defendants" with reference to an alternative theory of liability: the commingled product theory of market share liability (Exhibit 33 (July 31 FS01 Contention Rog. Resp., Rog. No. 1 at 7–8)), which Judge Scheindlin created for some MTBE cases (and later refused to apply in others). However, only Pennsylvania's highest state court is authorized to adopt alternative theories of liability—and it has not done so. Indeed, there is no indication that the Pennsylvania Supreme Court, which has *refused* to bypass traditional causation requirements in the market share liability context, would apply any alternative theory of liability here, much less the commingled product theory. Moreover, even if Pennsylvania law recognized such a theory (which it does not), the facts of this case do not support its application here. And even in jurisdictions where alternative theories are available, they are not applied where, like here, traditional methods of proof are available.

Failures of proof on defendant identification and causation are appropriately raised at summary judgment. The MDL Court has previously relied on the summary judgment process to narrow the scope of MTBE cases by dismissing claims against defendants that have not been sufficiently linked to focus sites after discovery. Defendants request that the Court do so again.

## RELEVANT BACKGROUND

This case concerns alleged groundwater impacts purportedly caused by Defendants' use of MTBE as a blending component in gasoline. MTBE was added to gasoline to: (1) boost octane when lead was phased out of gasoline; and (2) oxygenate gasoline so that it burned cleaner in compliance with the 1990 federal Clean Air Act Amendments. Plaintiff's alleged injuries stem from unintended releases of gasoline containing MTBE into the environment from "gasoline storage and delivery systems" (mostly retail service stations). ECF No. 173, Second Amended Complaint ("SAC"), ¶ 144.

Different types of gasoline formulations were required at different times in different parts of Pennsylvania. Rule 56.1 Statement of Uncontested Material Facts ("SUMF") ¶ 15. Federal law required the use of MTBE in gasoline distributed to the Philadelphia metropolitan area during the winter months from November 1992 until March 15, 1996. *Id.* Starting in January 1995, the federal reformulated gasoline ("RFG") program required the use of MTBE in gasoline year-round in Bucks, Chester, Delaware, Montgomery, and Philadelphia Counties. *Id.* The Pittsburgh area was required to use "low RVP" gasoline[4] beginning in 1998. *Id.* The rest of the Commonwealth used conventional gasoline, which may or may not have contained MTBE. *Id.* MTBE has not been used in any gasoline sold in Pennsylvania since 2006. *Id.* ¶ 21.

Retail service station owners and operators could acquire gasoline containing MTBE through several different supply channels. Gasoline supplied to Pennsylvania retail stations was usually refined (*i.e.*, manufactured) in the southeast and northwest regions of Pennsylvania, in adjacent states, or to some extent in the Gulf Coast. SUMF ¶¶ 7–9. MTBE, when it was used, was typically blended into gasoline at the refinery. *Id.* ¶ 2. Whether terminals sourced gasoline directly from refineries or through pipelines, barges, and/or trucks varied based on their location. *Id.* ¶¶ 4, 9, 10. In the case of refineries found in northwest Pennsylvania, product was distributed only via truck. SUMF ¶ 12; Exhibit 4 (Scott Carr, Ph.D. Expert Report (May 24, 2021) (hereinafter "Carr Report") at 44–45).

Service stations received gasoline from nearby terminals and refineries via truck. SUMF ¶¶ 4, 12. Station operators could buy gasoline directly from refiners or from independent distributors. *Id.* ¶ 5. If a station operator had an agreement with a refiner, it could sell that refiner's branded gasoline. *Id.* Otherwise, station operators would sell unbranded gasoline. *Id.*

---

[4] RVP, or Reid Vapor Pressure, is a "measure of a liquid's propensity to evaporate." SUMF ¶ 16.

Regardless of the original refiner(s) of the gasoline, the entities that supplied gasoline into bulk terminals are identifiable, as are the suppliers from a terminal to distributors and retailers.[5] *See id.* ¶ 28; Exhibit 4 (Carr Report at 56) ("[B]ulk terminals, retail stations, and other locations involved in gasoline distribution were each supplied by a finite and discrete set of suppliers that varied over time."). Distributors' and station owners' delivery records identify the terminals from which gasoline was supplied and the entities from which the distributors and station owners purchased the gasoline. SUMF ¶ 6.

In discovery, Defendants produced information about their connections to the focus sites, specifically identifying:

- the focus sites at which they owned the property and/or owned or operated the retail gasoline stations;

- the focus sites at which they owned or operated underground storage tanks ("USTs");

- the focus sites that they supplied with gasoline;

- the focus sites that were authorized to sell their branded gasoline; and

- the relevant time periods during which these actions occurred.

*See* SUMF ¶¶ 30–116 (identifying for focus sites supply and distribution agreements, UST owners and operators, and suppliers). Defendants' Rule 56.1 Statement—and Exhibit 2—provide a description of each Defendant's undisputed ownership, operational, and supply relationships to the focus sites. *Id.*

In Plaintiff's responses to contention interrogatories, Plaintiff also identified the specific subset of Defendants that it claims "owned, operated, branded, supplied or were otherwise

---

[5] In instances where supply to a station is via truck directly from a refinery, as was the case for Defendant United Refining's refined product, both the supplier and the refining source of the gasoline are identifiable. *See, e.g.*, SUMF ¶ 11.

affiliated with the delivery of" gasoline with MTBE to each of the individual focus sites, based in part on discovery provided by Defendants. *See* Exhibit 33 (July 31 FS01 Contention Rog. Resp., Rog. No. 1 at 7–8) (naming subset of Defendants that Plaintiff claims had immediate connection to the delivery of gasoline containing MTBE to the relevant focus sites).[6] Plaintiff identified specific Defendants for approximately 75% (53 of 70) of the focus sites. For example, Plaintiff contends "that the Chevron Defendants, Cumberland Farms, Inc., Gulf Oil Ltd. Partnership and the Sunoco Defendants…owned, operated, branded, supplied or were otherwise affiliated with the delivery of gasoline containing MTBE" at Focus Site 01.[7] *Id.*, Rog. No. 1 at 7. And Plaintiff contends that "the BP Defendants" had such identifiable connection to Focus Site 04. Exhibit 40 (July 31 FS04 Contention Rog. Resp., Rog. No. 1 at 7).

Defendants do not dispute that there is evidence showing that they owned, operated, branded, supplied, or manufactured gasoline at certain focus sites. In fact, for the most part, Defendants agree with Plaintiff on the identity of owners, operators, branders, manufacturers, and suppliers of the focus sites. What Defendants dispute is Plaintiff's contention that even without such evidence, claims against Defendants can nevertheless be sustained.

Plaintiff's legal theory of causation has shifted over time. At first, Plaintiff implied that *all* Defendant-refiners, no matter where in the U.S. their gasoline was refined, could be liable at *all* sites, despite a lack of evidence tying each such Defendant to a specific site. Exhibit 14 (Pl.'s Focus Site Contention Rog. Resp. (Dec. 23, 2022), Rog No. 5). Plaintiff then presented the expert opinions of Bruce Burke, a purported expert on the gasoline supply chain. However, Mr. Burke's

---

[6] Plaintiff served a separate contention interrogatory response for each focus site. All such responses are formatted similarly, and Defendants use Focus Site 01 as an example here and elsewhere.

[7] Plaintiff regularly grouped Defendants as corporate families; Defendants have opposed such group pleading. *See infra* note 13.

deposition testimony undermined Plaintiff's pursuit of all Defendant-refiners at all sites when he candidly acknowledged that *all* Defendants' refined molecules of gasoline would "not necessarily" be present at *all* sites. SUMF ¶ 28. Moreover, while Mr. Burke examined how gasoline was supplied *into* Pennsylvania generally, he admitted he did not analyze the supply of gasoline *within* Pennsylvania, did not attempt to analyze how product was supplied to the focus sites or by whom, and offered no opinion as to whether a specific Defendant's gasoline was present at any focus site. *Id.*

After Mr. Burke's deposition, and when all fact and expert discovery was closed, Plaintiff proffered a new theory of causation: that Defendants should be liable at sites based on (1) whether their refined gasoline or neat MTBE was supplied to a terminal within 100 miles of a focus site ("Refiner Defendants") or (2) whether they purchased, sold, exchanged, or distributed gasoline from terminals within 100 miles of a focus site ("Local Terminal Defendants")—regardless of where that gasoline may ultimately have gone. This theory is supported by no facts that link any Defendant to a focus site—not as suppliers, branders, owners, operators, or manufacturers. The closest Plaintiff comes is to speculate about possible activity at terminals purportedly within 100 miles of a focus site, which is insufficient evidence of causation.

This Motion was initially prepared to seek summary judgment on both Plaintiff's strict liability and negligence causes of action. In light of the Court's April 22, 2025 Order granting Defendants' motion for summary judgment on Plaintiff's strict product liability claims, ECF No. 1063, only Plaintiff's negligence cause of action remains. Accordingly, this Motion is focused on Plaintiff's negligence claim, although, as described elsewhere in the brief, Plaintiff's inability to establish causation would be a separate and independent ground to grant summary judgment on its strict liability claims, as well.

## LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *1077 Madison St., LLC v. Daniels*, 954 F.3d 460, 463 (2d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). If the movant demonstrates the absence of evidence supporting the nonmoving party's claim, the burden shifts to the nonmoving party to identify specific facts showing a genuine issue for trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Conclusory allegations, conjecture and speculation … are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998); *accord Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227–28 (2d Cir. 2024) (observing that "reliance upon conclusory statements or mere allegations" cannot defeat summary judgment). Summary judgment will be granted if "after adequate time for discovery, the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Moll*, 94 F.4th at 228 (citation omitted).

## ARGUMENT

I.    **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF MOVING DEFENDANTS AT SITES WHERE THERE IS NO EVIDENCE THAT A DEFENDANT HAS AN IDENTIFIABLE CONNECTION TO A FOCUS SITE.**

At all 70 focus sites currently at issue,[8] Plaintiff claims to have suffered injuries from releases of gasoline containing MTBE that was manufactured, supplied, branded, and/or released

---

[8] Seventy-five focus sites were originally selected in this case. As directed by the Court, four of these sites were removed from the Commonwealth's focus site list and master site list after the parties determined that MTBE had never been detected at these locations. *See* Exhibit 15 (Ltr. from M. Axline to W. Stack, Exs. M & N (Feb. 10, 2021)); Exhibit 16 (Joint Ltr. to Mag. J. Freeman, ECF No. 602 (Feb. 26, 2021) at 2); Exhibit 17 (Status Conference Tr. (Mar.

by Defendants. To prove causation for negligence claims against any given defendant,[9] Pennsylvania law requires that the plaintiff identify a defendant as either "the manufacturer, distributor, or seller of the offending product before the injuries suffered by the plaintiff may be found to be proximately caused by some negligent act or omission of the defendant. Absent such identification, there can be no allegations of duty, breach of duty, or legal causation, and hence there can be no liability." *Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191–92 (Pa. Super. Ct. 1993) (citation omitted), *appeal denied*, 648 A.2d 789 (Pa. 1994).[10] To survive summary judgment, a "plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier." *Stephens v. Paris Cleaners, Inc.*, 885 A.2d 59, 63 (Pa. Super. Ct. 2005) (affirming summary judgment for lack of causation, where plaintiff could not identify which manufacturer's product he was wearing when injured); *see Williams v. Charm-Tex,* No. 4:20-cv-01776, 2024 WL 3046719, at *6 (M.D. Pa. June 18, 2024) (holding that, "in the absence of any evidence identifying [defendant] as the seller or supplier of the allegedly defective [product] that caused [plaintiff] to fall and be injured, [defendant] cannot be held liable for selling or

---

3, 2021) at 104:14–106:22). Plaintiff has stated that it is not prosecuting any claims with respect to one additional site (Focus Site 72). Exhibit 18 (ExxonMobil Corp. and ExxonMobil Oil Corp.'s Site-Specific Contention Rog. Resp. (Dec. 23, 2022), ¶ 24.

[9] The causation standard under Pennsylvania law is the same for "causes of action sound[ing] in negligence and strict liability." *Sikkelee v. Precision Airmotive Corp.*, 876 F. Supp. 2d 479, 485 (M.D. Pa. 2012); *accord City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993). Accordingly, in addition to the reasons the Court previously granted summary judgment on Plaintiff's strict liability claims (ECF No. 1063), Moving Defendants are entitled to summary judgment on those claims for the reasons stated in this brief, as well. Because the causation requirements are the same in both types of claims, Moving Defendants rely on both strict liability and negligence case law.

[10] *See also Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967–68 (Pa. Super Ct. 1985) ("requiring identification of [a defendant] as the manufacturer or seller of the particular offending product, before [a plaintiff's] injuries may be found to be proximately caused by some negligence of [a defendant]. Absent such identification, there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability"); *accord Sikkelee*, 876 F. Supp. 2d at 485.

supplying a defective product that caused the plaintiff's injury").[11] To carry its burden on causation here, Plaintiff at a minimum must proffer evidence identifying the Defendant(s) that manufactured, supplied, or sold the MTBE gasoline that was released at each focus site.[12] At most focus sites, as to most Defendants, it cannot do so. And, contrary to Plaintiff's contentions, there is no focus site at which the evidence supports a finding that *most* (much less all) Defendants are connected to the site.

### A. Consistent with prior MTBE cases, summary judgment is warranted where Plaintiff has no evidence of a Defendant's presence at a focus site.

During discovery, each Defendant disclosed evidence of supply to, and branding of the focus sites, as well as evidence concerning each Defendant's ownership and operation of the service stations, underground storage tanks, and property at the focus sites. *See supra*, at 5. Plaintiff too has identified what it believes to be Defendants' identifiable connections to the focus sites. *See supra*, at 5–6. Based on Defendants' evidence and Plaintiff's assertions, between one and ten Defendants have been identified as owners, operators, branders, manufacturers, and/or suppliers at 53 of the 70 focus sites resulting in 88 instances where the parties agree on direct Defendant identification at a given focus site. Exhibit 2 (Column 2). In eight instances, Plaintiff says it has proof that a Defendant is connected to a site and the respective Defendant disagrees. *Id*. (Column

---

[11] *See also Martinez v. Skirmish, U.S.A., Inc.*, No. CIV.A. 07-5003, 2009 WL 1437624, at *4 (E.D. Pa. May 21, 2009) (granting summary judgment for lack of causation where plaintiff could not identify which paintball gun caused injury, even though a majority of the paintball guns used at the injury site were manufactured by a single company) (collecting cases and citations); *Burger v. Owens Ill., Inc.*, 966 A.2d 611, 623–24 (Pa. Super. Ct. 2009) (affirming entry of summary judgment for manufacturer where plaintiff injured by brake shoes was unable to identify which of numerous manufacturers' brake shoes he purchased).

[12] Establishing a connection to a Defendant is necessary but not sufficient to establish causation. Plaintiff would also have to establish that such Defendant's product or conduct was a substantial factor in causing Plaintiff's alleged harm. *E.g.*, *Lilley v. Johns-Manville Corp.*, 596 A.2d 203, 207–09 (Pa. Super. 1991); *id.* at 215 (Olszewski, J., concurring) (describing requirements to establish legal and proximate causation). In moving for summary judgment for want of causation based on failure to identify Defendants at certain sites (and in *not* moving at sites where Plaintiff has adduced evidence of a Defendant's connection to a site), Defendants do not concede that Plaintiff can meet the other elements of its tort claims, including proving the existence of a duty or breach of that duty, and whether any Defendant's product or conduct was a "substantial factor" causing purported harm to Plaintiff.

3). And for some Defendants, Plaintiff still insists on asserting liability against all related corporate entities in a corporate family, even where there is no evidence to connect each entity to a focus site.[13]

Defendants with no identifiable connection to a particular focus site are entitled to summary judgment with respect to that site.[14] *See id.* (Column 3) (identifying for each focus site Defendants for which there is no evidence or no genuine dispute of material fact that they owned, operated, or supplied the site). For example, Plaintiff and Defendants have identified Cumberland Farms, Inc., Gulf Oil Ltd. Partnership, Chevron U.S.A., Inc., and four Sunoco entities as Defendants that owned, operated, or supplied Focus Site 01. *Id.* (Column 2). Because Plaintiff has proffered no evidence that any Defendant other than these seven supplied gasoline to that site or owned or operated that site, all other Defendants (the Moving Defendants for that site) are entitled to summary judgment as to the claims at that site. *See id.* (Column 3).

Granting summary judgment for lack of causation is nothing new. Defendants have secured summary judgment in these circumstances in prior MTBE cases. In *City of Fresno*, certain defendants successfully moved for summary judgment for lack of causation because the plaintiff failed to present evidence that any product supplied by those defendants was delivered to or released from the specific sites at issue. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.* ("*City of Fresno*"), 980 F. Supp. 2d 425, 429, 458–60 (S.D.N.Y. 2013). The MDL Court

---

[13] Through the meet and confer process, Plaintiff has argued that it is Defendants' burden to identify which member(s) of a Defendant family is potentially liable at each site. Exhibit 19 (Letter from M. Han to L. Gerson (Apr. 29, 2025) at 3–4). Defendants' Rule 56.1 statement lays out Defendants' relationships to the individual focus sites. Where an individual Defendant is not mentioned it is because there is no evidence that such Defendant owned, operated, supplied, branded, or was otherwise involved in the delivery of gasoline to that site. Defendants do not accept Plaintiff's effort to now lump separate Defendants together under corporate familial umbrellas, shift their burden of causation onto Defendants, or casually disregard corporate separateness.

[14] At some sites, the only Defendants identified by Plaintiff as having had a direct relationship to the site have settled. *See, e.g.*, Focus Site 30 (Marathon); Focus Site 71 (Crown). All remaining Defendants are therefore Moving Defendants at those sites.

determined that the plaintiff was capable of "directly connecting" the moving defendants' "product to the limited number of stations at issue"—*e.g.*, by obtaining evidence that the defendants' gasoline was delivered to the stations during the relevant time period—but failed to do so. *Id.* at 457 (emphasis in original). Because the plaintiff "ha[d] no record evidence tying" the moving defendants' "product to the stations at issue," the MDL Court granted summary judgment on plaintiff's negligence and strict liability claims associated with those stations. *Id.* at 456–57.

Similarly, in *Orange County Water District*, the MDL Court granted certain defendants summary judgment for specific gasoline stations because the plaintiff "lack[ed] 'reasonably probable' evidence that the gasoline of *any* [moving] defendant was delivered to *any* station at issue." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.* ("*Orange County Water District*"), 67 F. Supp. 3d 619, 631 (S.D.N.Y. 2014). The plaintiff had "ample opportunity to pursue discovery" that would have shown how the stations at issue were supplied. *Id.* at 632. As in this case, the defendants in *Orange County* produced information "regarding [their] jobbers and suppliers at the outset of this litigation [that] gave the District a good starting point from which to gather evidence tracing suppliers to the stations at issue." *Id.* And as in this case, the plaintiff "failed to pursue such evidence." *Id.* Because the plaintiff did not "provide[] evidence showing that the [moving] defendants' gasoline was delivered to the relevant stations at the relevant times," the Court dispensed with the plaintiff's claims against the moving defendants for those stations. *Id.* at 631–32. The Court should follow this path and grant Moving Defendants summary judgment at sites where Plaintiff has not met its burden to establish causation.

Granting summary judgment for Moving Defendants where there is *no* dispute between the parties regarding Defendant identification requires no review by this Court of the underlying evidence. Exhibit 2 (Column 3; non-highlighted entries). For the eight instances in which the

parties disagree, Moving Defendants have provided the Court with the information necessary to determine that no *genuine* dispute of material fact exists regarding such Defendant's lack of identifiable connection to the site. *Id*. (Column 3) (highlighting eight instances in yellow, including footnotes describing the reason no issue of fact remains, and citing to evidence in Rule 56.1 Statement in support). In *City of Fresno*, the Court reviewed evidence in similar disputes and granted summary judgment where the plaintiff failed to present evidence sufficient to generate a triable issue of fact. 980 F. Supp. 2d at 458–60. Defendants request that the Court do the same here.

**B.**    **Pennsylvania law does not support liability based on speculation or claims of "possible" causation.**

Plaintiff contends that it is not enough to be able to sue the actual suppliers, owners, and/or operators of the sites and that it is also entitled to hold Defendants liable at sites based on rank speculation that Defendants *may* have supplied a focus site because they did business at a terminal within 100 miles (the "Refiner Defendants" and "Local Terminal Defendants" described above, *supra* at 2 & n.3). Such hypothetical suggestions of causation are not sufficient to establish liability under Pennsylvania law. *E.g.*, *Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 331 (W.D. Pa. 2007) (granting summary judgment to manufacturer where circumstantial evidence of causation "insufficient to show which of several manufacturers who *could* have made the [offending product] that allegedly caused [plaintiff's] injury, actually *did* so") (emphasis in original). Rather, Pennsylvania law requires a plaintiff to concretely identify the defendant whose product caused the harm at issue, rejecting expansions of causation where the offending product could have been manufactured by any number of different manufacturers, and even where it seems *probable* that a given defendant's product caused the harm. *See id.* at 332 ("Showing that a defendant's product was among several [manufacturers'] products which *could* have caused the injury is simply 'too

speculative to be submitted to a jury.'" (emphasis in original) (citing *Payton v. Pa. Sling Co.*, 710 A.2d 1221, 1226 (Pa. Super. Ct. 1998))); *DeWeese v. Anchor Hocking Consumer & Indus. Prods. Grp.*, 628 A.2d 421, 424 (Pa. Super. Ct. 1993) (affirming summary judgment for defendant manufacturer where plaintiff submitted no evidence that the defendant was manufacturer of defective product and evidence viewed in the light most favorable to the plaintiff showed only that the plaintiff's employer had purchased several of defendant's products); *accord Meadows v. Anchor Longwall & Rebuild, Inc.*, 455 F. Supp. 2d 391, 398 (W.D. Pa. 2006) (granting summary judgment to the alleged supplier-defendant of malfunctioning mine shield valve in a products liability action where another supplier also supplied valves to the mine and "there was no way to distinguish between" the suppliers' valves); *Martinez*, 2009 WL 1437624, at *3–6 (granting summary judgment on strict liability claim to defendant and third party where plaintiff could not identify the specific manufacturer whose product injured him, despite proving that a *majority* of potentially offending products were manufactured by the third party and that a majority of the potentially offending products were in the defendant's chain of distribution) (collecting Pennsylvania cases).

A mere probability that a defendant may have supplied the product at issue is not enough. For example, in *Warnick*, the court granted summary judgment to defendants on a plaintiff's negligence and products liability claims because the plaintiff was unable to identify the manufacturer of a luggage belt loader that caused his injury. 512 F. Supp. 2d at 329–35. Recognizing that Pennsylvania law requires identification of the *specific* manufacturer to prove causation, the court concluded that the circumstantial evidence plaintiff provided was "insufficient to show which of several manufacturers who *could* have made the belt loader that allegedly caused [plaintiff's] injury, actually *did* so" and "too speculative to be submitted to a jury." *Id.* at 330–32

(discussing Pennsylvania case law) (emphasis in original). This was fatal to the plaintiff's claims. In *Warnick*, the universe of potential manufacturers was limited, but the court concluded that it would be inappropriate for a jury to "spread liability among multiple defendants according to the relative probability that their product was involved"—citing case law in Pennsylvania rejecting market share liability. *Id.* at 334 & n.26.

Likewise, in *Martinez*, the court granted summary judgment to a paintball facility because the plaintiff could not identify the manufacturer of the paintball gun that harmed him or whether the facility had rented to the assailant the gun used to injure the plaintiff. 2009 WL 1437624, at *5–6. The court observed that "identification of the manufacturer or distributor of the product" is a "crucial part[] of claims of strict liability" and even the "probability that [defendant] supplied the paintball gun used to injure [plaintiff] is not sufficient to create a jury issue." *Id.* at *5. The defendant could not be held liable "unless it can be placed somewhere in the chain of distribution of the paintball gun that was used to shoot [plaintiff]."[15] *Id.* at *6; *cf. Santarelli v. BP America*, 913 F. Supp. 324, 329 (M.D. Pa. 1996) (holding that three defendants could not be held liable as suppliers of a defective product because the plaintiff could not "link each defendant to the product which allegedly caused her injury," but allowing claims against the store from which the plaintiff undisputedly purchased the product to proceed). The same logic applies here: unless Plaintiff can produce non-speculative evidence to connect a specific Defendant to the MTBE gasoline at a specific focus site, it cannot pursue a claim against that Defendant at that site.

---

[15] The court also granted summary judgment to the paintball gun manufacturer (Tippmann) whose products accounted for the majority of guns on the field at the time of injury. The paintball gun facility had sought contribution and indemnification against Tippmann, but summary judgment was awarded because not *all* of the guns on the field had been manufactured by Tippmann. Failure by the facility to "identify the defective product that caused" the plaintiff's injury was dispositive. *Martinez*, 2009 WL 1437624, at *3.

Pennsylvania jurisprudence compels that, even if a Defendant's inclusion in the "Refiner" or "Local Terminal" Defendant category marginally increases the probability that the Defendant's gasoline ended up at any given focus site (which Defendants do not concede), that is insufficient to establish causation. Pennsylvania courts have refused to assign liability based on much higher probabilities. *See Martinez*, 2009 WL 1437624, at *3–6. To prove causation under Pennsylvania law, Plaintiff must identify a defendant's actual, rather than probable, role in causing an injury. *See Warnick*, 512 F. Supp. 2d at 329–35. Plaintiff's 100-mile theory fails to do so.[16] As such, summary judgment is appropriate for all "Refiner" or "Local Terminal" Defendants.[17]

Notably, being unable to rely on speculation to hold *manufacturers* liable does not leave Plaintiff without a remedy because Plaintiff can identify (and has) *suppliers, spillers, and others*. *See* Restatement (Second) of Torts § 400 ("One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."); *Forry v. Gulf Oil Corp.*, 237 A.2d 593, 599 (Pa. 1968) (adopting same); *Brandimarti v. Caterpillar Tractor Co.*, 527 A.2d 134, 140 (Pa. Super. Ct. 1987). Thus, it is of no moment if the actual manufacturer of the molecules of gasoline containing MTBE that were released at a site cannot be identified.

---

[16] Plaintiff's 100-mile theory is *at best* speculative, and in certain instances directly contrary to record evidence. *See e.g.*, Exhibit 33 (July 31 FS01 Contention Rog. Resp., Rog No. 1 at 11–13) (supplying a list of Defendants with terminals within "trucking distance" of the focus site, but failing to explain how Plaintiff is measuring the mileage between terminal and focus site, to offer a citation or other proof for the distance, or, indeed, to positively assert that the terminals are less than 100 miles from the relevant focus site); *id*. at 13 (naming United Refining as a Local Terminal Defendant on the basis of the ability to take product from third-party terminals, notwithstanding the undisputed fact that United used such terminals almost exclusively to supply only *affiliated* stations); SUMF ¶ 11 (testimony demonstrating that United Refining's use of third-party terminals was to supply affiliated stations and thus, contrary to Plaintiff's unsupported contentions, United Refining would not be a source of supply to the focus sites where United Refining is allegedly a "Local Terminal Defendant.").

[17] Defendants reserve the right to challenge Plaintiff's factual basis for including any given Defendant as a "Refiner Defendant" or "Local Terminal Defendant."

## II.    PLAINTIFF CANNOT DEFEAT SUMMARY JUDGMENT BY RELYING ON ALTERNATIVE THEORIES OF LIABILITY.

Although suppliers of gasoline to focus sites are readily identifiable, *see supra*, it is not always possible to identify the refiner(s) of molecules of gasoline sold to a station or released at a site.[18] Plaintiff seeks to benefit from this lack of proof by arguing that it should be allowed to hold Defendants liable at a focus site in their capacities as U.S. refiners (the so-called "Refiner Defendants") without making an actual connection to the focus site. To do so, Plaintiff instead relies on an alternative theory of liability devised by Judge Scheindlin in MTBE litigation years ago dubbed the "'commingled product theory' of market share liability." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377 (S.D.N.Y. 2005); Exhibit 33 (July 31 FS01 Contention Rog. Resp., Nos. 1, 4 at 7–8, 23–24) (citing commingled product theory as basis for holding "Refiner Defendants" liable). The Court should reject Plaintiff's attempt to circumvent traditional proof of causation because (1) application of the commingled product theory would contravene Pennsylvania law given the Pennsylvania Supreme Court's rejection of market share liability, (2) the theory is inapplicable to the facts of this case, (3) Plaintiff has remedies via traditional causation and/or the Restatement of Torts, and (4) even if such theory were acceptable in other situations it is *entirely unavailable* where, as here, traditional methods of proof are available.

As an initial matter, this Court should not adopt alternative theories of liability of any kind without approval from the Commonwealth's highest court. *See City of Philadelphia v. Lead Indus.*

---

[18] In some instances, product can be traced from a refiner to a terminal or retail station. Exhibit 4 (Carr Report at 44–45) (discussing traceability, in certain instances, of product refined by United Refining, ConocoPhillips, and Sunoco); *supra* note 5 (explaining that Defendant United Refining directly supplied its refined product to stations). Where Plaintiff has been able to do so, Exhibit 2 reflects as much and the relevant Defendant does not seek summary judgment on causation grounds through this Motion. *See* SUMF ¶ 73; Exhibit 2 (Column 2, Focus Site 28).

*Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993) (declining to adopt market share liability under Pennsylvania law and observing: "Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law."); *Tidler v. Eli Lilly & Co*., 851 F.2d 418, 425 (D.C. Cir. 1988) (rejecting novel theories of alternative liability because "[i]t is decidedly not the business of the federal courts to alter or augment state law to meet the felt necessities of the case").

There is no reason to believe the Pennsylvania Supreme Court would give such approval here. At its inception, the theory was expressly described by Judge Scheindlin as the "'commingled product theory' *of market share liability*." *MTBE*, 379 F. Supp. 2d at 377 (emphasis added). The Pennsylvania Supreme Court explicitly rejected market share liability[19] in *Skipworth v. Lead Industries Ass'n*, 690 A.2d 169, 172 (Pa. 1997), and all Pennsylvania state and federal courts have declined to apply it since. *E.g., Warnick*, 512 F. Supp. 2d at 334 & n.26; *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d at 1, 7 (D.D.C. 2005); *Atl. Richfield Co. v. Cnty. of Montgomery*, 294 A.3d 1274, 1286–88 (Pa. Commw. Ct.), *appeal denied*, 307 A.3d 1205 (Pa. 2023); *Pettine v. Terex Corp.*, No. 111200917, 2014 WL 11462715, *3 (Pa. Com. Pl. Aug. 1, 2014).[20] Given Pennsylvania courts' refusal to bypass traditional causation requirements in favor of market share liability, they also

---

[19] Plaintiff's contention interrogatories do not identify market share liability as a theory of causation Plaintiff intends to pursue in this case. If Plaintiff were to change course and try to apply that theory, Pennsylvania's Supreme Court has rejected it and the Court should grant summary judgment to Defendants on any effort to invoke such theory.

[20] Although Judge Scheindlin once predicted Pennsylvania would adopt market share liability, *MTBE*, 379 F. Supp. 2d at 436–37, Pennsylvania courts—including the Pennsylvania Supreme Court—have held the opposite. And Judge Scheindlin later questioned the viability of market share liability in MTBE cases. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 275 (S.D.N.Y. 2008) ("[M]arket share liability need not be applied in this [Suffolk County, New York] case to prove plaintiffs' claims, and indeed the theory *may not even be applicable on these facts*." (emphasis added)). Further, Judge Scheindlin's 2005 decision was made in the context of a Rule 12(b)(6) motion and assumed that the plaintiffs' allegations were true without the benefit of any evidentiary record.

would not endorse the judicially created "commingled product theory." *See MTBE*, 379 F. Supp. 2d at 377–78 (endorsing under law of several states, but not Pennsylvania).

Even if it were a viable theory of liability under Pennsylvania law, Plaintiff does not meet the commingled product theory's requirements. As explained by Judge Scheindlin:

> *when a plaintiff can prove* that certain gaseous or liquid products (e.g., gasoline, liquid propane, alcohol) of many refiners and manufacturers were present in a completely commingled or blended state *at the time and place that the harm or risk of harm occurred*, and the commingled product caused plaintiff's injury, each refiner or manufacturer is deemed to have caused the harm. Each defendant is then given the opportunity to exculpate itself by proving that its product was not present at the relevant time or in the relevant place, and therefore could not be part of the commingled or blended product.

*City of Fresno,* 980 F. Supp. 2d at 452 (emphasis added); *see also id.* at 452, 457–58 (explaining that plaintiff cannot invoke the commingled product theory unless it shows "that the defendants' products were at the stations at issue when the releases occurred").

Thus, to invoke the commingled product theory, Plaintiff would have the burden to demonstrate that Refiner Defendants' refined product was "completely commingled or blended *at the time and place that the harm or risk of harm occurred*"—*i.e.*, in the MTBE gasoline releases at the focus sites that give rise to Plaintiff's claims. *Id.* at 452 (emphasis added). The evidence— which merely purports to show which Defendants' refined product made it to terminals within 100 miles of a focus site—simply cannot meet this burden.

Plaintiff's own expert on gasoline supply issues, Bruce Burke, admitted he had not analyzed the supply of gasoline within Pennsylvania (only up to its borders), and conceded that "every batch of gasoline . . . [is] not going to include supply from every defendant." SUMF ¶ 27 (Exhibit 11 (Burke Dep. Tr. (Nov. 8, 2021) (hereinafter "Nov. 8 Burke Dep. Tr.") at 263:24– 265:7)). As explained by Defendants' expert Scott Carr (and unrefuted by Mr. Burke), Pennsylvania is not a single gasoline market in which all gas stations are supplied by a single

stream of gasoline into which all refiners place their product. SUMF ¶¶ 7–19 (Exhibit 4 (Carr Report at 17–58)). To the contrary, it is a large state with dozens of terminals supplying different regions, and an array of suppliers delivering product to each of those terminals. SUMF ¶¶ 7–11. Not all Defendants participate in the same way. Some refine gasoline or supply it in bulk to distribution terminals; some are distributors that buy gasoline from suppliers at terminals and sell it to retail stations; others own or operate gas stations. Nor do all Defendants do business in all areas of Pennsylvania. *Id.* ¶¶ 15–19, 25–27. United Refining, for example, operated in northwest Pennsylvania and its refined product would not have been supplied to focus sites in other regions. *Id.* ¶¶ 11, 27 (Exhibit 4 (Carr Report at 44–45); Exhibit 11 (Nov. 8 Burke Dep. Tr. at 114:22–115:10; 128:10–19)). And not all Defendants were supplying gasoline containing MTBE during the time that the alleged risk of harm occurred at the focus sites. *See* SUMF ¶ 21 (explaining that Sunoco, Inc. (R&M)'s Toledo refinery supplied portions of western Pennsylvania with ethanol gasoline starting in 2000, after multiple Sunoco terminals converted to ethanol); *id.* (Chevron's Philadelphia refinery did not add MTBE to gasoline until September 1992, and used it only during certain, legally required months until it sold the refinery in August 1994). Nor did all Defendants participate in the Pennsylvania gasoline market for the entire 37-year period covered by Plaintiff's allegations. *Id.* ¶¶ 18–19.

The fact that certain gasoline products are fungible, and that different refiners' gasoline can at times be commingled in the distribution chain, simply does not equate to *all (or even most)* Refiner Defendants' gasoline being at *any* (much less nearly *every*) focus site. Even if some Defendants designed, manufactured, refined and/or blended MTBE or MTBE gasoline that was supplied to *distribution terminals* within 100 miles of a focus site, it does not mean that gasoline was delivered to that focus site. Indeed, Plaintiff's expert Mr. Burke admitted at his deposition

both that (1) he had not investigated how gasoline was supplied to the focus sites[21] and (2) which refiners' molecules were present in a given release, at a given site, would vary, given that a release of gasoline will "not necessarily" contain gasoline supplied or refined by all Defendants.[22] Thus, even if the Pennsylvania Supreme Court were inclined to adopt it, Plaintiff fails to meet an essential requirement of the "commingled product theory" because no evidence demonstrates that these Defendants' products were *at the stations at issue at the time the releases occurred*. *See City of Fresno*, 980 F. Supp. 2d at 452, 457–58.

Even if alternative liability theories like market share or the commingled product theory of market share are acceptable in some jurisdictions in other factual situations, they are *entirely unavailable* where, as here, traditional methods of proof are available. *E.g.*, *id.* at 456 (holding that "commingled product theory of proof" is unavailable where "traditional proof of causation is not impossible"); *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 458 (D. Md. 2019) (same); *accord Bly v. Tri-Cont'l Indus., Inc.*, 663 A.2d 1232, 1243 (D.C. 1995) ("A prerequisite to applying [market share] theory has been the inability to trace to any specific producer *or supplier* the hazardous product." (emphasis added)); *see also Conley v. Boyle Drug Co.*, 570 So. 2d 275, 285 (Fla. 1991) (alternative theories of liability "are generally looked upon as a theory of last resort" and were "developed to provide a remedy" to injured plaintiffs that otherwise could not be compensated at all).

---

[21] *See* SUMF ¶ 29 (Exhibit 12 (Burke Dep. Tr. (Nov. 9, 2021) (hereinafter "Nov. 9 Burke Dep. Tr.") at 475:6–7 (stating he was not asked to look at supply to specific sites); Exhibit 11 (Nov. 8 Burke Dep. Tr. at 162:18–163:4) (admitting he made no effort to trace product from refinery to retail station or vice versa)).

[22] SUMF ¶ 28 (Exhibit 11 (Nov. 8 Burke Dep. Tr. at 263:1–265:7)); *see also id.* ¶ 29 (Exhibit 12 (Nov. 9 Burke Dep. Tr. at 519:16–21; 232:4–233:22 (stating that he cannot say the degree to which gasoline in Pennsylvania is commingled); 506:8–509:5) (admitting that he had not done any analysis to identify which Defendants were "major gasoline suppliers" whose gasoline allegedly was present in any release)).

As demonstrated by the 88 entries in Column 2 of Exhibit 2: Traditional proof of causation is available. To the extent Plaintiff lacks evidence that given Defendants supplied certain focus sites, that is either because such Defendants did not do so, or it is a product of Plaintiff's belated, half-hearted effort to pursue discovery against third-party owners and operators of focus sites, which could have allowed Plaintiff to identify companies that supplied those sites. Plaintiff had easy access to these entities' identities, given that each focus site is a station where owners or operators reported releases *to Plaintiff*. 25 Pa. Code § 245.305. Aside from ordinary document retention protocols, under federal regulations, distributors were required to provide station owners and operators with documentation regarding the source and composition of reformulated gasoline delivered to their stations. 40 C.F.R. § 80.77, 59 Fed. Reg. 7813 (Feb. 16, 1994). Yet Plaintiff waited until November 2017—more than a decade after MTBE was last used in Pennsylvania gasoline—to issue subpoenas to an incomplete roster of third parties seeking such records.[23] Exhibit 3 (Gerson Decl.) ¶¶ 2–3. Plaintiff apparently failed to follow up on these subpoenas; Defendants have never received any documents or declarations from the subpoenaed third parties or notice of depositions for the same. *See id.* ¶¶ 15–16.

Finally, the availability of a statutory remedy—instead of the common law claims Plaintiff elected to pursue—further forecloses reliance on alternative theories. Here, the Storage Tank and Spill Prevention Act, 35 Pa. Stat. § 6021.101, *et seq.*, would have provided Plaintiff with the ability to pursue claims for investigation, remediation and harm to natural resources caused by gasoline releases from USTs against owners, operators, landowners and occupiers. 35 Pa. C.S. § 6021.1301,

---

[23] Plaintiff has been aware of USTs' potential to leak since at least 1984 (SUMF ¶ 149), has tested for the presence of MTBE in Pennsylvania since at least 1985 (*id.* ¶ 150), has detected MTBE at remediation sites since at least 1985 (*id.* ¶ 151), and has required MTBE testing at gasoline release sites since at least 1996 (*id.* ¶ 152). Plaintiff contemplated filing suit against Defendants by at least September 2004 (*id.* at ¶ 154) but waited an additional ten years to file its complaint. Had Plaintiff diligently pursued its claims, it would have had access to more data allowing it to trace gasoline to focus sites.

*et seq.* In Pennsylvania, "statutory relief is favored over common law redress." *In re Erie Golf Course*, 992 A.2d 75, 83 (Pa. 2010) (citing 1 Pa. C.S. § 1504). Having chosen to forgo an adequate and available statutory remedy, Plaintiff should not be heard to argue for adoption of alternative liability theories that are foreign to Pennsylvania law.

* * *

In short, courts are clear: alternative liability theories were not developed to provide evidentiary shortcuts or to insulate plaintiffs from the consequences of poor strategic decisions about what discovery to pursue (and when). *See City of Fresno,* 980 F. Supp. 2d at 457 ("Alternate theories of proof are justified not when evidence is lacking, but when gathering evidence is, for practical purposes, impossible[.]"); *Orange Cnty. Water Dist.*, 67 F. Supp. 3d at 632 (granting summary judgment to defendants where plaintiff's failure to pursue discovery from entities downstream in the supply chain foreclosed use of commingled product theory). As demonstrated by this Motion, Pennsylvania law does not support reliance on speculation, or adoption of novel theories to bypass traditional proof of causation. And even if Pennsylvania law did support alternative theories of liability, the facts here do not align with the commingled product theory of market share liability Judge Scheindlin intermittently applied. Nor is such a theory necessary: Defendant identification at focus sites is possible. The Court should not permit Plaintiff's claims premised on such theories of liability to proceed any further.

## CONCLUSION

For the reasons stated herein, Moving Defendants respectfully request partial judgment in their favor.


Dated: May 2, 2025                                    Respectfully submitted,


                                                     By: */s/ Lisa S. Meyer*
                                                         Nathan P. Eimer
                                                         (New York Bar No. 1976067)
                                                         (neimer@eimerstahl.com)
                                                         Lisa S. Meyer
                                                         (lmeyer@eimerstahl.com)
                                                         Susan M. Razzano
                                                         (srazzano@eimerstahl.com)
                                                         Gregory M. Schweizer
                                                         (gschweizer@eimerstahl.com)
                                                         Clare Chiodini
                                                         (cchiodini@eimerstahl.com)
                                                         EIMER STAHL LLP
                                                         224 South Michigan Avenue, Suite 1100
                                                         Chicago, IL 60604
                                                         Ph. 312-660-7600
                                                         Fax  312-692-1718

                                                         *Counsel for Defendants*
                                                         *CITGO Petroleum Corporation and CITGO*
                                                         *Refining and Chemicals Company L.P. and on*
                                                         *Behalf of Moving Defendants*

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Memorandum of Law in Support of Moving Defendants' Motion for Partial Summary Judgment for Lack of Defendant Identification at Focus Sites complies with the "Length of Memoranda of Law" requirements pursuant to Local Civil Rule 7.1 (c) of the United States District Courts for the Southern and Eastern Districts of New York. The brief contains 8,330 words.

*/s/ Lisa S. Meyer*