

James A. Pardo
Attorney at Law
jpardo@mcdermottlaw.com
+1 212 547 5353

March 9, 2026

VIA ECF

Hon. Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 18B
New York, NY 10007

Re:  **_Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al._**, **No. 14-cv-06228**
 _Defendants' Response to Plaintiff's Update Letter (Feb. 27, 2026)_

Dear Judge Cote,

Defendants respectfully submit this response to Plaintiff's February 27, 2026, update letter to the Court.  ECF No. 1219.

## SUMMARY

As Your Honor is aware, Defendants consistently have taken the position there are categories of sites that should be voluntarily dropped or dismissed based on the Court's prior decisions and/or the opinions of Plaintiff's remediation and damages expert, Anthony Brown.  The removal of these sites would greatly streamline the case, allowing the parties and the Court to focus their efforts on determining if Plaintiff has evidence of ongoing injury and damage at the far smaller, although still significant, number of remaining sites.

To this end, the Court directed Plaintiff to provide Most Recent Maximum ("MRM") and other detailed information about the sites it says should remain in the case, including the identification of sites Plaintiff would agree to remove from the case.  ECF 1216.  The Court also directed Plaintiff to "explain the reason/s to believe that any viable MTBE claims exist" at sites for which most recent maximum detection ("MRM") data was not provided.  ECF No. 1216 at 3.

Plaintiff's response has been, in a word, discouraging.  Other than a small handful of sites (< 10 to date) where MTBE **never** has been detected in soil or groundwater,[1] Plaintiff's position is that it will not drop **any** site at which an MTBE detection has ever occurred.  Plaintiff will not drop sites at which the last detection occurred decades ago.  Plaintiff will not drop sites where the maximum concentration

---

[1] This is hardly a concession because these sites, having zero MTBE impacts, never should have been in the case at all.

Hon. Denise L. Cote
March 9, 2026
Page 2

was at a level its own expert says requires no further remediation. Plaintiff will not even drop sites where existing information makes clear that a site falls squarely within one or more of this Court's prior rulings dismissing claims and damages. Plaintiff's position is that **all** detection sites must stay in the case, and that they should be divided into a Phase 2 for discovery and a "de-prioritized" Phase 3 for some undefined action in the indefinite future.

Plaintiff's proposal for multiple phases flies in the face of what Your Honor made clear months ago ("[t]here's not going to be Phase 2, 3, and 4. There's just going to be Phase 1 and the remainder." *July 17, 2025 Hrg. Tr.* at 36)). For this reason alone, Plaintiff's de-prioritization proposal should be rejected. It is, however, a useful framework because Plaintiff has now clearly identified categories of sites that, Defendants believe, either should be immediately dismissed or **prioritized** for action.

### THE SITES PLAINTIFF PROPOSES FOR "DE-PRIORITIZATION" SHOULD EITHER BE DISMISSED OR PRIORITIZED FOR IMMEDIATE ACTION.

Of the roughly 5,300 sites remaining in this case, to date[2] Plaintiff has proposed that about one-third be set aside and deferred indefinitely for some undisclosed action in the future. These "de-prioritized" sites fall into three categories:

1. Sites with no MTBE groundwater detection at all **and** that never have had a soil detection at or above 2,000 ppb (currently 461 sites);

2. Sites where **all** MTBE groundwater detections have been below 20 ppb (currently 685 sites);[3] and

3. Sites where the most recent MTBE groundwater detection was below 20 ppb **and** that have never had a USTIF claim (currently 607 sites).[4]

Defendants acknowledge that the Court referred several times to "removal or de-prioritization" in its February 24, 2026, Order. ECF 1216. Defendants have no objection to prioritizing some Phase II sites for discovery, provided that any de-prioritized sites are not kicked indefinitely to what essentially would become a third phase of the case. Such a result would not only conflict with Your Honor's prior directive (*July 17, 2025 Hrg. Tr.* at 36), it would defy common sense. Plaintiff's own expert has opined that sites with MTBE groundwater detections below 20 ppb require no further remediation. *See Brown Dep. Tr.* at 943 (Apr. 29, 2022) ("ultimately, to achieve restoration, the groundwater would need to be remediated to

---

[2] Plaintiff is continuing to work through the site list and, as of this letter, has stated its position on approximately 4,000 of the 5,300 sites.

[3] This number includes sample results recorded as less than 20 ppb as well as results labeled "ND" (non-detect), "less than" the detection limit, or with a lab qualifier indicating the concentration reported is only an estimated detection.

[4] Of these 607 sites, approximately 176 overlap with category two. For the ExxonMobil defendants, against whom all USTIF claims were dismissed, the number of sites in this category increases to 2,328.

**McDermott Will & Schulte**

that standard, 20 micrograms per liter"). By that standard, each of the three categories of sites Plaintiff proposes to "de-prioritize" indefinitely require no future remediation and, absent a USTIF claim, also present no cognizable past damages under this Court's prior decisions. In short: these are "no injury or damage" sites that should be dismissed immediately.

But if Plaintiff insists on keeping its proposed "de-prioritized" sites in the case, it should be required to immediately proffer the site-specific expert opinion evidence it is relying on for doing so. Tellingly, in nearly every MTBE case to date, including this one,[5] sites meeting one or more of these three criteria have been voluntarily *dropped* by the plaintiff when it was required to present this expert evidence.

In short: the sites Plaintiff proposes for "de-prioritization" should, in fact, be *prioritized* for scrutiny because doing so is very likely to lead to their dismissal either voluntarily or for lack of evidence.

### PLAINTIFF SHOULD BE REQUIRED TO PROFFER THE EVIDENCE IT IS RELYING ON FOR THE CONTINUED INCLUSION OF SITES THAT OTHERWISE COULD BE DISMISSED UNDER ONE OR MORE OF THE COURT'S OPINIONS.

The two-thirds of sites Plaintiff proposes for discovery in Phase 2 include thousands falling into these five categories:

1. Sites where the only MTBE detection was in soil and the concentration exceeded 2,000 ppb (currently 154 sites);

2. Sites where the most recent MTBE detection in groundwater was greater than 20 ppb but less than or equal to 70 ppb (currently 523 sites);

3. Sites where the historical maximum MTBE detection in groundwater was greater than 20 ppb but less than or equal to 70 ppb (478 sites);

4. Sites where the most recent MTBE detection in groundwater was less than or equal to 20 ppb and where a USTIF claim has been made (currently 1,731 sites); and

5. Sites with no affiliated Defendant(s) (via ownership, operation, or supply) (currently 3,485 sites).[6]

For reasons briefly discussed in the following section, Defendants' position is that a significant number of these sites have been addressed by Mr. Brown's existing expert opinions and/or the Court's prior decisions granting summary judgment and, therefore, also should be dismissed voluntarily or by order. Plaintiff has made clear that it disagrees with this position. Before the parties and the Court devote significant time and resources to site-specific discovery and motion practice on these sites, Plaintiff should be required to proffer the site-specific facts and expert opinion evidence it believes justify each site's continued inclusion in this case.

---

[5] Focus Sites 2, 9 and 27, for example, met one or more of these criteria and were dropped by Plaintiff.

[6] Plaintiff has represented it intends to make a substantial update to this category by March 20.

**McDermott Will & Schulte**

Hon. Denise L. Cote
March 9, 2026
Page 4

## PLAINTIFF'S INTERPRETATION OF THE COURT'S PRIOR RULINGS, AND ITS POSITION ON WHICH CLAIMS REMAIN VIABLE, IS WRONG.

The Court directed Plaintiff to "explain the reason/s to believe that any viable MTBE claims exist" at sites for which most recent maximum detection ("MRM") data has not been provided. ECF No. 1216 at 3. In response, Plaintiff argues that the subset of MRM data already provided demonstrates the "continued presence of MTBE at a substantial portion of the sites already reviewed." ECF No. 1219 at 1.

Not so. First, this Court already has held that "[t]he fact that MTBE was once identified as a contaminant on the site is not sufficient" to prove an ongoing injury from MTBE. *In re: Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2025 WL 1270541, at *4 (April 30, 2025). Moreover, the MRM data already provided by Plaintiff demonstrates that there is no evidence of MTBE in groundwater at nearly 1,200 sites. That includes 304 "soil only" sites[7] and 884 sites where the most recent sample was "non detect" for MTBE or "less than" the method detection limit. All these sites should be dismissed.

For many sites where MRM groundwater results have been provided, the MRM concentration is so low and dated as to make the alleged presence of MTBE today implausible. Specifically, at 1,338 sites the most recent groundwater MRM was less than 20 ppb—*i.e.*, the level at which Mr. Brown opines no remediation needs to be done. At nearly 70% of those same sites, the MRM detection occurred more than 10 years ago. In short: Plaintiff's contention that it somehow could incur damage for **future** remediation at these 1,338 sites is contradicted by its own expert's opinions and common sense. And establishing otherwise would require Plaintiff to perform an investigation the Court already has held is insufficient to support Plaintiff's claims. *Id*. These sites also should be dismissed.

The Court already has held that Plaintiff may only recover future damages at sites where Mr. Brown opines that additional remediation is necessary. But Mr. Brown has opined that active remediation is ***not*** necessary where MTBE is less than 70 ppb. *See Brown Dep. Tr.* at 945-46 (Apr. 29, 2022) ("And I've actually even gone beyond that and said … if you do active remediation, you really only need to go to 70 [ppb] because … monitored natural attenuation could address those residual concentrations in a reasonable period of time."). Future damages, therefore, should be dismissed at every site where the MRM concentration in groundwater was below 70 ppb. And even where the MRM was above 70 ppb at one time, future remediation may not be necessary given the staleness of the data and Mr. Brown's opinions and testimony about how natural attenuation functions to reduce the concentration of MTBE in groundwater over time.

---

[7] It is Plaintiff's burden to prove the actual **presence** of MTBE in groundwater, not the mere possibility that it may not be absent. *In re: Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2025 WL 1270541, at *2 (S.D.N.Y. Apr. 30, 2025). At a "soil only" site there is no evidence that the "waters of the Commonwealth" have been impacted and, therefore, no evidence that any interest of Plaintiff at the site has been impaired. Plaintiff's retort that MTBE's presence in soil means it also *could be* present in groundwater (*M. Twersky Ltr.* (Feb. 27, 2026), at 1) is pure speculation and would require exactly the "investigation" this Court already has ruled insufficient to support a cognizable claim. *Id.*

**McDermott Will & Schulte**

Finally, Plaintiff argues it will have past damages at some number of sites, including "loss-of-use damages." ECF No. 1219 at 2. In support, Plaintiff cites Judge Broderick's May 2024 decision about the Commonwealth's ability to recover natural resource damages generally but relegates to a footnote Your Honor's decision holding that Plaintiff lacked the expert opinions necessary to support its claim for such damages. *See, e.g.*, *In re: Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2025 WL 1658427 at *9 (June 11, 2025).[8]

For the foregoing reasons, Plaintiff should be required to make an initial proffer of the site-specific evidence and expert opinions necessary to satisfy its burden of showing ongoing injury, liability and damages (including purported loss-of-use damages) at each of the sites it contends should remain in this case.

*\*\*\**

Defendants look forward to detailing these issues further in its March 27 submission regarding Phase 2 discovery. ECF No. 1216 at 3. Until then, or at any time convenient for the Court, we can be available to discuss or elaborate on these points in person or by further submission.

As always, we appreciate Your Honor's time and attention to this matter.

Respectfully,

James A. Pardo
*Counsel for Exxon Mobil Corporation, ExxonMobil Oil Corporation,
and as liaison counsel on behalf of Defendants.*

cc: All Counsel of Record via ECF

---

[8] While Defendants dispute that the purpose of Phase 2 is to give the Commonwealth a "do over" on its evidentiary decisions, it cannot be disputed that Plaintiff's opportunity for *non-site-specific* expert opinions, including natural resource damages, has passed. *See, e.g.*, ECF No. 557 (CMO No. 126) at 7-8 (setting deadlines for non-site-specific expert discovery; ECF No. 852; *Dec. 2, 2025 Hrg. Tr.* at 5 ("THE COURT: …There's also no dispute, as I understand it, that all non-site-specific discovery, fact and expert, has been concluded.").

**McDermott Will & Schulte**