

Y. **MICHAEL TWERSKY**/*SHAREHOLDER*
**p.** 215.875.3052 **m.** 267.559.1436 | mitwersky@bm.net

May 11, 2026

<u>VIA ECF</u>

The Honorable Denise L. Cote
United States District Judge
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 18B
New York, NY 10007-1312

**Re:**  ***Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al., No. 1:14-cv-06228***
***Response to Order to Show Cause Regarding DEP Site File Production***

Dear Judge Cote,

The Commonwealth of Pennsylvania respectfully submits this letter in response to the Court's Order directing it to show cause by May 11, 2026, why it should not be barred from seeking restoration damages for any Phase II Site for which it has not produced a Pennsylvania Department of Environmental Protection ("DEP") file by July 31, 2026. Dkt. 1242. The Commonwealth takes its production obligations seriously and appreciates the Court's continued focus on moving this important litigation forward. For the reasons set forth below, and as supported by the accompanying Declaration of E. Alex Eckman, an Environmental Program Manager at DEP ("Eckman Decl." or "Ex. A"), and the cost estimate of Reliable Document Services ("Ex. B"), the Commonwealth respectfully shows cause why the July 31, 2026 deadline cannot be met in full, why a two-month extension to September 30, 2026 is warranted, and why barring restoration damages would be a severe and disproportionate sanction wholly unrelated to any fault of the Commonwealth.

## I.  The History of this Case Explains Why DEP Site Files Were Never Previously Gathered

Although this litigation has been pending since 2014, the Commonwealth has proceeded expeditiously at every stage, and any delay in reaching Phase II is attributable to the structure and scheduling of the case—not to any inaction by the Commonwealth.

Most important to the question before the Court, for the vast majority of this litigation, site-specific discovery was expressly limited, at Defendants' insistence, to a finite set of Focus Sites. Discovery was bifurcated from the outset: Phase I addressed non-site-specific issues



and a limited set of Focus Sites, while Phase II site-specific discovery for the remaining sites was expressly deferred. *See, e.g.*, Dkts. 291, 397, 400, 428, 432, 557. The Court's April 3, 2026 Phase II Pretrial Scheduling Order (Dkt. 1235) is the first order in this litigation to require production of complete DEP site files. That Order was entered only five weeks ago and set a production deadline of July 31, 2026—less than four months from issuance. In other words, until the recent commencement of Phase II discovery, no discovery request had ever sought DEP site files for the non-Phase I sites.

Defendants cannot fairly contend that the Commonwealth has been dilatory in producing records that no prior discovery request ever sought.

## II.   The Scale of DEP Site File Production Makes the July 31 Deadline Impossible

As the Commonwealth reported to this Court in its April 14, 2026 letter (Dkt. 1240), the logistics of DEP site file production are multifaceted, complex, and multi-staged. Before files could be located and retrieved, DEP validated site-identifying information for each Phase II site and determined whether the relevant records exist in paper form, electronically in OnBase, or both. In addition, DEP only began to implement its OnBase electronic document management system in approximately August 2020, with adoption varying across regional offices. Moreover, certain documents sought by Defendants are generally not maintained in DEP remediation enforcement site files at all, but instead reside in separate compliance or inspection files, further complicating the scope and volume of production.

The Commonwealth has diligently complied with every obligation this Court has imposed since Your Honor took assignment of this MDL in March 2025. It has completed the Phase II MTBE Release Site List containing over 5,000 sites, identified deprioritized sites, and produced USTIF expenditure data—all on the schedules this Court established. The Commonwealth has further agreed not to pursue claims with respect to sites where MTBE groundwater detections *never* exceeded 20 ppb or where contamination is soil-only, reducing the Phase II site universe to just over 3,100 sites. The Commonwealth's inability to produce all DEP Site Files by July 31 reflects not any delinquency, but rather the objective physical and logistical realities of a large, multi-tasked state agency's records system.

Following the April 3 Order, DEP undertook an immediate and thorough assessment of the Phase II site files. As detailed in the Eckman Declaration, of the Primary Facility Id(s) on the Phase II Site List:

- 1,416 Primary Facilities (45%) have files fully digitized in DEP's OnBase system, comprising an estimated 3,761,013 pages. Eckman Decl. ¶¶ 8–9.



May 11, 2026
Page 3 of 7

- 1,721 Primary Facilities (55%) have records that exist only in hard-copy form and must be scanned before production can occur. Eckman Decl. ¶ 8.

The 1,721 hard-copy facilities present an extraordinary logistical challenge. Scanning these files will require processing approximately 1,500 archive boxes containing millions of pages, distributed across multiple DEP regional offices statewide. Eckman Decl. ¶¶ 10–12. Reliable Document Services has confirmed in its proposal that a project of this magnitude— even for a subset of 1,329 sites—requires six months to one year to complete at a baseline cost of approximately $644,460 (Ex. B).[1] Simply put, the scanning, review, and production of hard-copy records across multiple state offices by July 31 is not physically achievable. No amount of reasonable good-faith effort can compress a six-to-twelve-month industrial-scale scanning project into eleven weeks.

As for the 1,416 fully digitized facilities, the Commonwealth anticipates that it can substantially complete production of those OnBase files by mid-August 2026. While the Commonwealth is hopeful that these files can be transferred to Special Counsel well before July 31, their volume is significant, and time will be required to review and prepare them for production. The Commonwealth will produce these materials on a rolling basis and respectfully requests a modest two-week extension for those electronic files as well.

## III.  Good Cause Exists for an Extension, and Barring Restoration Damages Would Be a Disproportionate Sanction

The Court's show cause order contemplates barring the Commonwealth from seeking restoration damages at sites for which it cannot produce DEP files by July 31. Respectfully, that sanction would be neither proportionate nor just under these circumstances. The Second Circuit has made clear that precluding a party from presenting its claims—a remedy akin to dismissal— "is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (applying same standard to a sanction striking damages and reasoning that dismissing a claim for damages is "akin to dismissing the action altogether" and thus that the court should assess "whether a tactical benefit was sought by the [misconduct]" (citation omitted)). No such extreme circumstance exists here. There has been no bad faith, no willful non-compliance, and no tactical advantage sought. The Commonwealth identified the production challenge as soon as it undertook the required assessment and reported it promptly

---

[1] This estimate includes all file types set forth in Paragraph 6 of the Eckman Declaration, although the Parties are still discussing the scope of documents with Retention Code 902.



to this Court. The Commonwealth further aims to produce the DEP Site Files as soon as possible.

Restoration damages are among the Commonwealth's most significant claims in this litigation. Eliminating those claims because the Commonwealth cannot compress a six-to-twelve-month physical scanning project into four months would effectively strip the Commonwealth of relief it has litigated for over a decade—not due to any failing by the Commonwealth, but because of the sheer scale of records that were never previously requested and that no prior order ever required it to digitize.

The Federal Rules of Civil Procedure require a proportionality analysis. A court must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality focuses on the marginal utility of the discovery sought," *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016), and courts must determine that burden "in a realistic way," Fed. R. Civ. P. 26, Advisory Committee Note for 2015 Amendment. When assessing proportionality, relevant factors include the importance of the issues at stake, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs the benefit. *Averback v. Cairo Amman Bank*, 2026 WL 865682, at *4 (S.D.N.Y. Mar. 30, 2026). Even where relevance is established, a court must independently assess whether the cost and burden of production is proportionate to the needs of the case. *See In re OpenAI, Inc., Copyright Infringement Litig.*, 800 F. Supp. 3d 602, 612 (S.D.N.Y. 2025).

The Commonwealth acknowledges that DEP site files may contain some materials not fully duplicated in the USTIF files. But the possibility of marginal benefit does not entitle Defendants to every document in every DEP file for every Phase II site, *on a truncated timeline* and at the Commonwealth's sole expense. The governing question is not whether the DEP files contain relevant materials, but whether the marginal utility of requiring immediate production of millions of hard-copy pages outweighs the extraordinary burden—and huge expense—on the Commonwealth. For the 2,384 sites with USTIF claims, the DEP files overlap with the USTIF files. Requiring full DEP file production for those sites on an accelerated timeline would impose a burden grossly disproportionate to any incremental benefit.

The stakes of the Court's ruling cannot be overstated. As the Court emphasized at the April 2, 2026 hearing, Phase II represents "the final discovery period for any claims the plaintiff wishes to pursue. This is it." Apr. 2, 2026 Tr. at 6:14–7:1. The Court further confirmed that "[t]hat's the only discovery we're undertaking." *Id.* at 64:3–4. There will be no future opportunity for the Commonwealth to develop its restoration damages case. Moreover, the July 31 deadline was set at that same hearing—at which the Commonwealth expressly advised the



Court that complete DEP file production for all Phase II sites is "not going to be able to be done by July 31." *Id*. at 59:24–60:11. The Court responded by requesting a production plan. Under these circumstances, setting a date before counsel had fully assessed the scope of the project and then treating that date as an automatic bar to some of the Commonwealth's most significant claims would constitute an unwarranted sanction.

For all of these reasons, the Commonwealth has more than demonstrated good cause for a short, two-month extension. The Court has repeatedly expressed its intention to reach a result that is "fair to the plaintiff and fair to the defendants." Apr. 2, 2026 Tr. at 46:7–13. The Commonwealth respectfully submits that barring restoration damages would not satisfy that goal.

The Commonwealth therefore respectfully requests that the Court: (1) find that good cause exists to extend the DEP site file production deadline; (2) extend the deadline for digitized (OnBase) files to mid-August 2026 to permit rolling production and pre-production review; and (3) set a deadline for paper files no earlier than September 30, 2026.

## IV.    The Commonwealth's Proposed Compromise

In a further effort to reduce the burden on all parties and the Court, the Commonwealth has proposed a compromise to Defendants: the Commonwealth is willing to forgo restoration damages at sites where the most recent maximum MTBE reading is below 70 ppb and where maximum contamination never exceeded 5,000 ppb, in exchange for limiting production at those sites—for which the Commonwealth would seek only USTIF damages—to just the USTIF files alone, without requiring DEP site file production.

Under this proposed compromise, the Phase II site list would reduce to approximately 1,640 sites requiring DEP file production, of which only approximately 899 would involve paper files. Although the Commonwealth would still require additional time beyond July 31 even under this reduced scope, a September 15, 2026 deadline would likely be achievable. The Commonwealth respectfully urges Defendants to accept this compromise and respectfully urges the Court to consider it in any event as part of a proportionate and workable resolution of the production issue.

## V.    If Production of All Paper Files Is Ordered, Cost-Sharing Is Warranted

If the Court determines that the Commonwealth must produce paper DEP files, even for sites with USTIF claim files on a truncated timeline, the extraordinary cost of that production warrants consideration of cost-shifting. Under *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003), cost-shifting is appropriate when discovery imposes an "undue burden or



expense" on the responding party. A burden is undue when it "outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* (citation omitted). Critically, whether production is unduly burdensome "turns primarily on whether it is kept in an accessible or inaccessible format." *Id.* (emphasis omitted). Documents stored haphazardly in quantities that make page-by-page searches impracticable, or records not easily accessible—such as hard-copy files distributed across multiple regional offices—exemplify inaccessible materials warranting cost consideration. *See id.* at 318–20.

The *Zubulake* seven-factor test weighs in favor of cost-sharing here. The two most important factors—(1) the extent to which the request is specifically tailored to relevant information, and (2) the availability of such information from other sources—both cut against requiring the Commonwealth to bear the full cost. *Id.* at 322–23. The demand for complete DEP files for every Phase II site (including those with USTIF claims files) is a categorical request for an agency's entire archive, not a tailored request. And the most probative information within those files (for many sites) is likely substantially available through the USTIF files, which the Commonwealth has or will shortly produce. The remaining factors—total production cost, the contrast between Commonwealth resources and those of multiple defendant petroleum companies, and the incremental benefit of paper-only files over already-produced USTIF files—all confirm that cost-sharing is justified and appropriate here.

The Commonwealth accordingly requests that, to the extent the Court orders production of paper DEP files, the Court order Defendants to share the reasonable costs of scanning, digitizing, and processing those files for sites with a USTIF claim file, given that it is their demand for complete production that drives those costs.

## VI.   Conclusion

The Commonwealth has complied with every obligation this Court has imposed in this litigation. The DEP file production challenge is not the product of delay, neglect, or foot-dragging. Rather it arises from the sheer magnitude of a state-agency records system that was never required to be marshaled and digitized for litigation until five weeks ago. The governing principles of sanctions law, the proportionality requirements of Rule 26, and the realities reflected in the Court's own April 2 scheduling colloquy all confirm that the Commonwealth has more than demonstrated good cause why restoration damages should not be barred. The Commonwealth respectfully requests the relief set forth above. It remains committed to producing responsive DEP site files as expeditiously as possible and to providing the Court with regular progress reports.



May 11, 2026
Page 7 of 7

Respectfully,

Y. Michael Twersky

Counsel for the Commonwealth of Pennsylvania