James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

October 14, 2026

VIA ECF

Hon. Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 18B
New York, NY 10007

Re: ***Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*, No. 14-cv-06228**
Response to Plaintiff's October 9, 2026, Submission

Dear Judge Cote:

I write briefly on behalf of Defendants in advance of the October 19, 2026, conference and in response to Plaintiff's October 9th submission.

As outlined in Defendants' October 5, 2026, letter, Plaintiff previously represented to the Court and Defendants that it has only two site-specific Phase 2 experts – Mr. Moreau and Mr. Brown – and, at least for Mr. Brown, confirmed that he would be presenting opinions "per site based on his review of data within the [site files]." *See Apr. 2, 2026, Hrg.* at 65:10-14 (previously filed at ECF No. 1278-1). In its October 9 letter, Plaintiff reveals two troubling positions that conflict with its prior representations (and the law) and that are fundamentally at odds with the approach embodied by the Court's scheduling order.

First, despite its prior representation, Plaintiff apparently intends to use at least one, and up to three (or possibly five), new and unidentified Phase 2 experts.[1] *See Pl.'s Ltr.* at 3. Notably, had Defendants not pressed this issue with the Court, we would not have known of Plaintiff's intention until Plaintiff served reports for its new experts in January, with only four months to retain new experts *and* produce responsive reports.[2] But Plaintiff's cryptic disclosure now does not solve the problem because the Court instructed the parties to begin working on their experts' site-specific reports six months ago. Defendants have been doing so with respect to Plaintiff's disclosed experts, but obviously did not and could not do so for these undisclosed experts. Moreover, fact discovery is set to close in less than two months, and Defendants do not yet know whether Plaintiff's forthcoming disclosures will necessitate additional fact discovery. Given that Defendants are still waiting for a complete production in response to our June 2026 Phase 2 Requests

[1] Plaintiff's letter refers to "a statistical expert," "experts on other subjects, including DEP oversight costs and USTIF damages," and possibly "two additional experts relating to the Commonwealth's costs[.]" It is unclear whether the latter two categories overlap.

[2] Notably, when Plaintiff's counsel found out that its supply expert, Bruce Burke, had withdrawn from his MTBE engagements, it took them over three months to identify a new expert—on a known, well-developed topic in this litigation—and the new expert merely adopted Burke's existing report. Conversely, there have not previously been statisticians disclosed in this MDL, and it still is not clear what expertise the other vaguely referenced new experts may have.

for Production, it is unlikely that new requests would be complete by the Court's fact discovery deadline. For these and the reasons outlined in Defendants' October 5 letter, Plaintiff should not be permitted to belatedly expand its cadre of Phase 2 experts.

Second, contradicting numerous prior representations, Plaintiff no longer intends to produce site-specific reports for each site it is pursuing in Phase 2. *Pl.'s* Ltr. at 3. Rather, Plaintiff states that Mr. Brown will produce reports for only 95 sites out of the "hundreds" it intends to pursue, and Mr. Moreau may submit even fewer than that. *Id.* at 3 n.2. This is improper for several reasons:

(1) The Court's scheduling order requires that Plaintiff's expert reports "must be served … for *any Site for which the Plaintiff seeks damages* that include USTIF damages" and likewise includes a deadline for Plaintiff's Non-USTIF Site expert reports. ECF No. 1235 ¶¶ 7-8 (emphasis added). This portion of the Order is consistent with the Court's question to Plaintiff—and its counsel's confirmation—that its experts' opinions would be presented "per site."

(2) Plaintiff states, for the first time, that "[i]t is not feasible to prepare full site-specific reports for every Site with available restoration damage[.]" *Id.* If that is true now, it was also true in April, when Plaintiff represented to the Court that it was doing exactly that.

(3) Plaintiff repeatedly has argued—including most recently in opposition to Defendants' May 29, 2026, motion for partial summary judgment—that sites must be considered on an individual basis and that Brown's opinions could not be extrapolated to all sites in a given category. *See, e.g.*, ECF No. 1260 at 11. Mr. Brown has likewise testified that his opinions require a site-by-site analysis. *See e.g.*, Brown Dep. Tr. at 4367 (testifying, "I think most definitely any type of contaminant and the resulting contaminant plume in groundwater is going to be dependent – or the fate and transport of such is going to be dependent on site-specific factors, that is definitely the case.").

(4) The Court—crediting Mr. Brown's testimony regarding site-specific conditions—denied Defendants' summary judgment motion as to 642 sites with most recent maximum detections between 20-70 ppb and gave Mr. Brown the opportunity in Phase 2 "to determine whether such site-specific conditions [requiring additional remediation] exist for any of these [] Sites." *In re MTBE Prods. Liab. Litig.*, 2026 WL 2212844, at *8 (S.D.N.Y. July 31, 2026). In the same opinion, but with respect to the "Less than 20 PPB Sites," the Court rejected Plaintiff's attempt to rely on another expert's "general observations about the potential movement of plumes" because that "is not evidence that unremediated contamination *actually exists at any particular Site, and therefore, that an award of remediation damages is appropriate for that Site.*" *Id.* at *7 (granting Defendants' motion as to the Less than 20 PPB Sites) (emphasis added). The need for site-specific reports has been made abundantly clear by Plaintiff's own expert and the Court.

(5) Finally, Plaintiff's proposal sounds eerily like a "statewide" aggregate proof proposal, which raises a host of substantive and procedure issues. In 2018, Plaintiff's counsel agreed that these concerns were "certainly worth[y] of briefing" in this case, and Plaintiff was invited to do so by Magistrate Freeman but never did. *Magistrate Freeman Hrg.* (Oct. 23, 2018), at 37, 46-47. Any use of statistical extrapolation to prove the elements of Plaintiff's claims would, thus, need to be fully briefed before such an approach is implemented—further upsetting the case schedule. However, Defendants submit we will never get there because the record is clear, and Plaintiff's expert agrees, that site-specific evidence and expert reports are necessary to prove Plaintiff's case.

***

Accordingly, Defendants respectfully request that the Court hold Plaintiff to the current deadlines to issue site-specific expert reports for any site for which Plaintiff is seeking damages. Plaintiff has had a long history with these sites. It oversaw their cleanup (and closure) and as a result had all the site-specific information needed to evaluate its restoration and USTIF damages claims for years, if not decades. It is incredulous that it now contends it cannot meet the schedule this Court issued in consultation with the parties.

We appreciate the Court's attention to these matters and look forward to meeting with Your Honor next week.

Sincerely,



James A. Pardo
Enclosures

cc: All counsel of record via ECF